EDMUND G. BROWN JR., State Bar No. 37100
Attorney General of California
STEPHEN P. ACQUISTO, State Bar No. 172527
Supervising Deputy Attorney General
ANTHONY R. HAKL, State Bar No. 197335
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-9041
 Fax: (916) 324-8835
 E-mail: Anthony.Hakl@doj.ca.gov

*Attorneys for Defendant Wilfredo Cid*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN PEÑA, ROY VARGAS, DOÑA CROSTON, BRETT THOMAS, SECOND AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WILFREDO CID,<br><br>Defendant. | 2:09-cv-01185-FCD-KJM<br><br>**DEFENDANT CID'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:           October 2, 2009<br>Time:          10:00 a.m.<br>Dept:           No. 2, 15th Floor<br>Judge:         Frank C. Damrell, Jr.<br>Trial Date:   None<br>Action Filed: April 30, 2009 |

### INTRODUCTION

A group of individual plaintiffs and organizations promoting the right to bear arms have brought this action against Wilfredo Cid, Chief of the Bureau of Firearms of the California Department of Justice, to invalidate California's Unsafe Handgun Act ("UHA", or "the Act"). They primarily assert a Second Amendment claim. But the UHA has nothing to do with the possession of a handgun for self-defense in the home, which is the core of the Second Amendment right recognized last year in the landmark decision of *District of Columbia v. Heller*, --- U.S. ----, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). Moreover, the Act is a law that imposes conditions and qualifications on the commercial sale of handguns, the kind of law which *Heller*

1

expressly indicated is constitutional. Contrary to plaintiffs' apparent assertion, there is no constitutional right to purchase any handgun of one's choice.

Plaintiffs also assert an equal protection claim that has no merit. The UHA does not treat similarly situated people differently, and it withstands rational basis review in any event.

Accordingly, the Court should grant Cid's motion and dismiss the amended complaint without leave to amend.

## LEGAL AND FACTUAL BACKGROUND

### I. CALIFORNIA'S UNSAFE HANDGUN ACT

The UHA prohibits the manufacture or sale of any "unsafe handgun" in California, making a violation punishable by imprisonment in a county jail for not more than one year. Cal. Penal Code § 12125(a).[1] The California Legislature enacted the UHA in 1999 "in response to the proliferation of local ordinances banning low cost, cheaply made handguns known as 'Saturday Night Specials,' which called to the Legislature's attention the need to address the issue of handguns sales in a more comprehensive manner." *Fiscal v. City and County of San Francisco*, 158 Cal. App. 4th 895, 912 (Ct. App. 2008) (citation omitted). According to its legislative history, the Act was aimed at reducing handgun crime as well as promoting handgun consumer safety. *Id.* at 913-14. The Act took effect on January 1, 2001. § 12125(a).

#### A. Definition of "unsafe handgun"

Under the Act, an unsafe handgun is "any pistol, revolver, or other firearm capable of being concealed upon the person" which does not have a specified safety device, fails to meet certain firing criteria, or does not meet drop safety requirements. § 12126. *See Fiscal,* 158 Cal. App. 4th at 912 ("[T]he UHA requires that all models of handguns meet certain quality assurance tests and other standards before being approved for sale in this state, including specified standards relating to the safe firing of the handgun and the ability to drop the handgun without it firing accidentally."). The required safety devices for revolvers and pistols are specified at sections

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

2

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

12126(a)(1) and 12126(b)(1), respectively. The firing requirements of the Act are set forth at section 12127. The drop safety requirements appear at sections 12128.

Additionally, as of January 1, 2006, an unsafe handgun includes a center fire semiautomatic pistol not already listed on the California Department of Justice (DOJ) roster of approved firearms, which is discussed below, that "does not have either a chamber load indicator, or a magazine disconnect mechanism."[2] § 12126(b)(4). As of January 1, 2007, it includes a center fire semiautomatic pistol not already listed on DOJ's roster that "does not have both a chamber load indicator and if it has a detachable magazine, a magazine disconnect mechanism." § 12126(b)(5). As of January 1, 2006, an unsafe handgun includes a rimfire semiautomatic pistol not already on the roster that "does not have a magazine disconnect mechanism, if it has a detachable magazine." § 12126(b)(6).[3]

There are exceptions to the definition of an unsafe handgun. *See* §§ 12125(b), 12132, 12133. For example, firearms sold to police departments and certain curios or relics are exempt. § 12125(b)(4). Firearms delivered for consignment sale or as collateral for a pawnbroker loan are also exempt, *see* § 12132(f), as are certain single action revolvers and single shot pistols, *see* § 12133.

///

///

---

[2] A "chamber load indicator" is "a device that plainly indicates that a cartridge is in the firing chamber." § 12126(c). A "magazine disconnect mechanism" is "a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol." § 12126(d).

[3] A "semiautomatic pistol" is defined as "a pistol . . . the operating mode of which uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger." § 12126(e). With respect to the "center fire" and "rimfire" distinction, in center fire ammunition, the primer that ignites the gunpowder and causes the cartridge to fire is located in the center of the base of the cartridge. In rimfire ammunition, the primer is located inside a soft outer rim around the edge at the base of the cartridge. Center fire firearms are generally more powerful since center fire cartridges are stronger and can withstand higher pressures than rimfire cartridges. See *generally United States v. Tribunella*, 749 F.2d 104, 107 (2d Cir. 1984) (describing center fire weapons); Allen Rostron, *High-Powered Controversy: Gun Control, Terrorism, and the Fight Over .50 Caliber Rifles*, 73 U. Cin. L. Rev. 1415, 1469 n.12 (2005)(explaining rimfire and center fire design).

3

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

**B.     The Roster of Handguns Certified for Sale**

The UHA directs that DOJ "shall compile, publish, and thereafter maintain a roster listing all of the pistols, revolvers, and other firearms capable of being concealed upon the person that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this title." § 12131(a). *See Fiscal,* 158 Cal. App. 4th at 912; § 12130 (mandatory testing of handguns to determine if they meet safety device, firing, and drop safety standards).

The Act also allows DOJ to collect an annual fee from manufacturers or sellers to cover the costs of maintaining the roster and other costs necessary to implement the Act. § 12131(b)(1). DOJ may exclude a firearm from the roster if the manufacturer or seller fails to pay the annual fee. § 12131(b)(2).

Under the Act, a firearm shall be deemed to satisfy the roster requirements if a similar firearm is already listed. Specifically, a firearm shall satisfy the requirements if another firearm made by the same manufacturer is already listed and the unlisted firearm differs from the listed firearm only in one or more of the following features: (1) finish; (2) the material from which the grips are made; (3) the shape or texture of the grips, so long as the difference "does not in any way alter the dimensions, material, linkage, or functioning of the magazine well, the barrel, the chamber, or any of the components of the firing mechanism of the firearm"; and (4) "[a]ny other purely cosmetic feature" that does not result in such an alteration. § 12131.5.

**II.     ALLEGATIONS OF THE AMENDED COMPLAINT**

Plaintiffs initiated this action under 42 U.S.C. § 1983 by filing a complaint on April 30, 2009. They filed an amended complaint on May 11, 2009. *See* Fed. R. Civ. P. 15(a)(1)(A) (allowing plaintiff to file amended complaint "once as a matter of course" before defendant files responsive pleading).

The amended complaint names two organizational plaintiffs. Second Amendment Foundation, Inc. is a Washington non-profit corporation concerned with "education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control." (Am. Compl. ¶ 5.) The Calguns Foundation,

4

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

1  Inc. is a California non-profit corporation.  (*Id.* ¶ 6.)  Calguns "support[s] the California firearms
2  community by promoting education for all stakeholders about California and federal firearm laws,
3  rights and privileges, and defending and protecting the civil rights of California gun owners."
4  (*Id.*)

5  There are also four individual plaintiffs.  Ivan Peña, Roy Vargas, Doña Croston, and Brett
6  Thomas are each "a natural person and a citizen of the United States and of the State of
7  California."  (Am. Compl. ¶¶ 1-4.)  Each is a member of Second Amendment Foundation.  (*Id.*)
8  Peña and Thomas are Calguns board members.  (*Id.* ¶¶ 1 & 4.)  Vargas and Croston are Calguns
9  supporters.  (*Id.* ¶¶ 2 & 3.)

10  Cid is the sole defendant.  (Am. Compl. ¶ 7.)  The amended complaint alleges that he "is
11  responsible for formulating, executing and administering the State of California's laws, customs,
12  practices, and policies at issue in this lawsuit; and is in fact presently enforcing the challenged
13  laws, customs and practices against plaintiffs."  (*Id.*)   Plaintiffs have sued Cid in is individual
14  and official capacities.  (*Id.*)

15  The amended complaint describes selected provisions of the Act and its implementing
16  regulations, as well as some of the exceptions under the Act.  (Am. Compl. ¶¶ 12-25, 32-36.)  It
17  also argues that the handgun roster scheme is "narrow and counter-productive."  (*Id.* at 6.)

18  Regarding the enforcement of the roster scheme against the individual plaintiffs, the
19  amended complaint alleges that Peña cannot purchase a "Para USA (Para Ordnance) P1345SR/
20  Stainless Steel .45 ACP 4.25" " from "a willing seller" because, while the handgun was listed on
21  California's Handgun Roster until December 31, 2005, "it was discontinued and its listing not
22  renewed."  (Am. Compl. ¶¶ 37-38.)

23  The amended complaint alleges that Vargas wants to buy a "Glock 21 SF with an
24  ambidextrous magazine release" from a willing seller, but that he cannot because the handgun is
25  not on the roster.  (Am. Compl. ¶ 39.)  It alleges that the "Glock 21 SF-STD is listed on the
26  California Handgun Roster," but that the Glock 21-SF with an ambidextrous magazine release "is
27  better suitable" for left-handed shooters like Mr. Vargas, who "was born without an arm below
28  the right elbow."  (*Id.* ¶¶ 40-42.)  While the roster does not list a new Glock 21SF with an

5

1  ambidextrous magazine release, according to the amended complaint, "Defendant permits Glock
2  customers to have their SF21-STD handguns fitted with an ambidextrous release at the Glock
3  factory." (*Id.* ¶ 44.)

4  Croston wants to buy a "Springfield Armory XD-45 Tactical 5" Bi-Tone stainless
5  steel/black handgun in .45 ACP, model number XD9623" but cannot because it is not on the
6  roster. (Am. Compl. ¶ 45.) According to the amended complaint, "[o]ther models of this
7  identical gun - but in different colors - are listed on the handgun roster and are thus available to
8  Ms. Croston[.]" (*Id.* ¶ 46.) The stainless steel and black one "was not released until after
9  California required newly-listed guns to have a chamber load indicator and magazine disconnect
10 device. While the identical handguns with a different finish were grandfathered, Springfield
11 Armory could not get the XD-45 in .45 ACP and Bi-Tone finish registered given the new listing
12 requirements." (*Id.* ¶ 48.)

13 Finally, Thomas wishes to purchase a "High Standard Buntline style revolver" but cannot
14 because it is not on the roster. (Am. Compl. ¶ 50.)

15 **III.   CAUSES OF ACTION AND PRAYER FOR RELIEF**

16 The amended complaint contains two 42 U.S.C. § 1983 causes of action. The first is a
17 Second Amendment claim, which reads, in relevant part: "By maintaining and enforcing a set of
18 laws banning access to handguns whose possession is protected by the Second Amendment,
19 Defendant is propagating customs, policies, and practices that violate the Second Amendment to
20 the United States Constitution, facially and as applied against the individual plaintiffs in this
21 action[.]" (Am. Compl. ¶ 57.)

22 The second cause of action alleges that the handgun roster program violates equal
23 protection in that "Defendant allows some people access to handguns barred to plaintiffs, and
24 otherwise make[s] arbitrary, capricious, irrational, and otherwise unjustifiable distinctions among
25 the handguns that Defendant deigns to allow Plaintiffs in their exercise of fundamental Second
26 Amendment rights." (Am. Compl. ¶ 59.) The equal protection claim is also a facial and as
27 applied challenge. (*Id.*)

28 / / /

6

The amended complaint prays for an order permanently enjoining Cid from enforcing the Act, declaratory relief consistent with such an injunction, as well as costs and attorney fees. (Am. Compl. at 10.)

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS FOR RULE 12(B)(6) MOTIONS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint or of any claim within it "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (*citing Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

In considering a motion to dismiss for failure to state a claim, the court accepts as true all material allegations in the complaint and the reasonable inferences that can be drawn from them. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A court generally cannot consider materials outside of the complaint (e.g., briefs, affidavits, or discovery materials), except for materials submitted with the complaint or the contents of which are alleged in the complaint. *Hal Roach Studios, Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court may also consider matters subject to judicial notice. *Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988).

### II. THE SECOND AMENDMENT DOES NOT INVALIDATE THE UNSAFE HANDGUN ACT.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Last year, in *Heller*, the Supreme Court undertook a thorough analysis of the Second Amendment. In *Heller*, a District of Columbia special police officer sued to invalidate a District

7

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

law completely banning the possession of a handgun in the home and requiring that any other lawfully owned firearm in the home, such as a registered long gun, be disassembled or otherwise rendered inoperable for immediate use. 128 S. Ct. at 2788.

The Court held that the Second Amendment protects an individual right, not a collective one: "There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Heller*, 128 S. Ct. at 2799. But the Court further held that "[l]ike most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 2816 (citations omitted). The Court cautioned that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, *or laws imposing conditions and qualifications on the commercial sale of arms*." *Id.* at 2816-2817 (italics added). The Court further explained: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 2817 n.26.

Key to *Heller*'s analysis of the District's regulations was the observation that "the law totally bans handgun possession in the home. It also requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." *Heller*, 128 S. Ct. at 2817. In finding the total ban on handguns unconstitutional, the Court explained:

> [T]he inherent right of self-defense has been central to the Second Amendment right. The handgun ban amounts to a prohibition of an entire class of "arms" that is overwhelmingly chosen by American society for that lawful purpose. The prohibition extends, moreover, to the home, where the need for defense of self, family, and property is most acute. Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family," would fail constitutional muster.

*Id*. at 217-2818 (footnote and citation omitted). Addressing the requirement that firearms in the home be rendered and kept inoperable at all times, the Court similarly explained that the

8

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

1 requirement was unconstitutional because "[t]his makes it impossible for citizens to use them for
2 the core lawful purpose of self-defense[.]" *Id.* at 2818.

3     Because the District's law was unconstitutional under any level of constitutional scrutiny,
4 *Heller* declined to indicate precisely what standard of review would apply to Second Amendment
5 challenges. *Id.* at 2817 n.27. Nor did *Heller* reach the issue of whether the Second Amendment
6 is incorporated by the Fourteenth Amendment and therefore applicable to the States, *id.* at 2813
7 n.23, although the Ninth Circuit addressed that issue earlier this year. In *Nordyke v. King*, 563
8 F.3d 439, 457 (2009), the Ninth Circuit held "that the Due Process Clause of the Fourteenth
9 applies the protections of the Second Amendment to state and local governments[.]"[4]

10     *Nordyke* is instructive because, beyond the incorporation issue, it addressed whether a local
11 gun-control ordinance violated the Second Amendment. The Alameda County ordinance at issue
12 made it a misdemeanor to bring onto or possess a firearm or ammunition on county property.
13 *Nordyke*, 563 F.3d at 443. *Nordyke*'s analysis of the ordinance was guided by *Heller*, which "did
14 not announce any standard of review," but "evaluated the regulation at issue against the kind of
15 conduct the Second Amendment protected from infringement." *Id.* at 458. As the Ninth Circuit
16 put it, "*Heller* tells us that the Second Amendment's guarantee revolves around armed self-
17 defense. If laws make such self-defense impossible in the most crucial place - the home - by
18 rendering firearms useless, then they violate the Constitution." *Id.*

19     *Nordyke* found the law at issue in *Heller* distinct from the Alameda County ordinance.
20 More specifically, the county ordinance "does not directly impede the efficacy of self-defense or
21 limit self-defense in the home. Rather, it regulates gun possession in public places that are
22 County property." *Nordyke*, 563 F.3d at 458. *Nordyke* rejected the argument that the ordinance,

---

[4] At this time, therefore, the instant case does not present an incorporation issue. But a judge of the Ninth Circuit has called for a vote to determine whether *Nordyke* should be re-heard en banc. (Order filed May 18, 2009 (Doc. No. 87), *Nordyke v. King*, No. 07-15763 (9th Cir.).) Also, finding that the Second Amendment does not apply to the states or municipalities, the Second and Seventh Circuits have come to a different conclusion than the one in *Nordyke*, and a petition for certiorari is pending in the Seventh Circuit case. *See Maloney v. Cuomo*, 554 F.3d 56, 58 (2d Cir. 2009); *National Rifle Ass'n of America, Inc. v. City of Chicago*, --- F.3d ----, 2009 WL 1515443, *1 (7th Cir. 2009), *petition for cert. filed*, 77 U.S.L.W. 3679 (U.S. June 3, 2009) (No. 08-1497).

9

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

1  the effect of which was the preclusion of gun shows on county property, burdened effective self-
2  defense because it made the purchase of guns more difficult, explaining that "'not every law
3  which makes a right more difficult to exercise is, *ipso facto*, an infringement of that right.'" *Id.* at
4  459 (*quoting Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 873 (1992) (joint opinion of
5  O'Connor, Kennedy & Souter, JJ)).   Finally, *Nordyke* relied on the passage in *Heller* counseling
6  that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on . . .
7  laws forbidding the carrying of firearms in sensitive places such as schools and government
8  buildings[.]" *Id.* at 459.  This is the same passage that also makes "laws imposing conditions and
9  qualifications on the commercial sale of arms" presumptively valid.  *Heller*, 128 S.Ct. at 2817.
10 *Nordyke* thus concluded that the Second Amendment did not invalidate the Alameda County
11 ordinance.

12       This Court's analysis should proceed like *Nordyke*'s analysis of the Alameda County
13 ordinance.  The Unsafe Handgun Act is completely distinguishable from the sweeping ban at
14 issue in *Heller*.  The UHA does not totally ban an entire class of weapons.  It is not aimed at
15 possession of handguns in the home, or the possession of handguns anywhere.  It therefore does
16 not "meaningfully impede," or impede in any fashion, a person's ability to defend himself or
17 herself in the home, the right central to the Second Amendment.  *Nordyke*, 563 F.3d at 460.
18 Indeed, the roster makes more than 1300 handguns available for purchase in California.[5]  It
19 hardly "makes it impossible for citizens to use them for the core lawful purpose of self defense[.]"
20 *Heller*, 128 S.Ct. at 2817.

21       Moreover, as set forth above, one of the aims of the California Legislature in enacting the
22 UHA was to promote handgun safety.  *Fiscal,* 158 Cal. App. 4th at 913.  By requiring safety

---

[5] The complete roster of handguns certified for sale is available at http://certguns.doj.ca.gov/.  The roster is updated regularly based on the addition of new models and the removal of others. At the time of the drafting of this brief the number of handgun models exceeded 1300. At this stage of the proceedings, the Court can consider the roster so long as its authenticity is not contested, which there is no reason to believe that it is, and the complaint necessarily relies on it, which it does here. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). The Court may also take judicial notice of the roster as a public record, and it is hereby requested that the Court do so. *See* Fed. R. Evid. 201; *Intri-Plex Technologies, Inc. v. Crest Group, Inc.* (9th Cir. 2007) 499 F.3d 1048, 1052 (court may properly consider matters of public record not subject to reasonable dispute).

10

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

1  devices, setting firing and drop safety criteria, and establishing chamber load indicator and
2  magazine disconnect mechanism requirements, the Act is a law that simply "impos[es] conditions
3  and qualifications on the commercial sale of arms." *Heller*, 128 S. Ct. at 2817. It is therefore the
4  kind of regulation *Heller* was careful to expressly characterize as a valid under the Second
5  Amendment. *Id.* at 2816. Indeed, a finding by this Court that the UHA comes within this
6  exception would be consistent with findings by at least two other district courts affirming this
7  valid limit on the Second Amendment right. *See United States v. Marzzarella*, 595 F. Supp. 2d
8  596, 601 (W.D. Pa. 2009) (rejecting *Heller* challenge to federal provision prohibiting possession
9  of firearm with obliterated serial number because it was "one aspect of a broad statutory scheme
10  designed both to regulate the commercial sale of firearms *and* to keep them out of the hands of
11  those individuals who are considered dangerous"); *The City of New York v. Bob Moates' Sport*
12  *Shop, Inc.*, 253 F.R.D. 237, 241-43 (E.D.N.Y. 2008) (holding that *Heller* did not invalidate
13  federal and state laws applicable to the sale and marketing of firearms and therefore subject
14  matter jurisdiction was proper).

15  While the Second Amendment protects an individual's possession of a handgun in the home
16  for self-defense, there is no constitutional right to purchase in the marketplace any handgun of
17  one's choosing. The Court should dismiss the first cause of action for failure to state a claim upon
18  which relief can be granted.

19  **III.  THE ACT DOES NOT TRIGGER EQUAL PROTECTION REVIEW, MUCH LESS VIOLATE EQUAL PROTECTION.**
20

21  Plaintiffs' equal protection claim has no merit. "'The first step in equal protection analysis
22  is to identify the [defendants'] classification of groups.'" *Freeman v. City of Santa Ana*, 68 F.3d
23  1180, 1187 (9th Cir. 1995) (*quoting Country Classic Dairies, Inc. v. State of Montana, Dep't of*
24  *Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988)). "Once the plaintiff
25  establishes governmental classification, it is necessary to identify a 'similarly situated' class
26  against which the plaintiff's class can be compared. The goal of identifying a similarly situated
27  class . . . is to isolate the factor allegedly subject to impermissible discrimination. The similarly
28

11

situated group is the control group." *Nordyke*, 563 F.3d at 463 (*quoting Freeman*, 68 F.3d at 1187).

Here, plaintiffs have not alleged a governmental classification. They have also failed to allege, nor could they allege, a similarly situated class that the Act treats differently. The closest they come is the allegation that "Defendant allows some people access to handguns barred to plaintiffs[.]" (Am. Compl. ¶ 59.) But at any given point in time, the roster of handguns certified for sale either makes a particular handgun available for purchase, or it does not. For example, Peña alleges that he desires to purchase from "a willing seller"[6] a "Para USA (Para Ordnance) P1345SR / Stainless Steel .45 ACP 4.25," but he cannot because, while it was listed on the roster until December 31, 2005, its listing was not renewed. (*Id.* ¶¶ 37-38.) Yet Peña does not allege, nor can he, that someone else in a similar situation is currently able to purchase that handgun. No one similar to Peña can currently purchase the .45 in question. Up until December 31, 2005, any otherwise qualified purchaser, including Peña, could have purchased the handgun. The same can be said with respect to the handgun with an ambidextrous magazine release desire by Vargas (*id.* ¶¶ 39-44), the bi-tonal firearm Croston wants to buy[7] (*id.* ¶¶ 45-49), and the revolver desired by Thomas[8] (*id.* ¶¶ 50-51). A handgun is available for purchase if it is on the roster, or if it is subject to one of the exceptions, or it is not. Because the UHA treats similarly situated people the

---

[6] When the complaint refers to a "willing seller," it presumably refers to someone subject to the Act, such as a licensed firearm dealer, as opposed to someone to whom the Act does not apply, such as a private party (i.e., one who does not hold a dealer's license) seeking to transfer a firearm to another private party. See § 12132(a).

[7] The allegations regarding this particular handgun are somewhat perplexing since a firearm can be deemed to satisfy the roster requirements under section 12131.5, which provides for the listing of a firearm that differs only cosmetically from one already listed, which appear to be the circumstances with Croston's desired handgun. Moreover, if defendant somehow failed to properly discharge some duty regarding any request by Springfield Armory under section 12131.5, the appropriate course would be a state court mandamus action, not a 42 U.S.C. § 1983 action in federal court.

[8] Also, the amended complaint alleges that this revolver is identical to the one owned by the lead plaintiff in *Heller*. (Am. Compl. ¶ 51.) Even if true, that fact is irrelevant. *Heller* simply did not hold that the Second Amendment protects a right to purchase a High Standard Buntline style revolver.

12

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

same, it fails to trigger equal protection review at all. *See Nordyke*, 563 F.3d at 463-64 (rejecting equal protection claim where plaintiffs could not point to similarly situated group).

Moreover, even assuming a classification by the government and different treatment of similarly situated individuals, the UHA survives equal protection review. "[I]f a legislative act neither affects the exercise of a fundamental right, nor classifies persons based on protected characteristics, then that statute will be upheld 'if the classification drawn by the statute is rationally related to a legitimate state interest.'" *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002) (*quoting Schweiker v. Wilson*, 450 U.S. 221, 230 (1981)). There is no allegation or even suggestion that the UHA discriminates on the basis of a suspect class. Nor does the UHA infringe on a fundamental right. Indeed, as shown above, the UHA does not even infringe on the Second Amendment right recognized in *Heller*, which concerned the possession of a handgun in the home for self-defense. Rather, that Act simply involves the regulation of commercial handgun sales. *See City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 440 (1985) ("When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude[.]")

With respect to any rational basis for review, maintaining consumer safety is clearly a legitimate state interest. *See Merrifield v. Lockyer*, 547 F.3d 978, 986 (9th Cir. 2008) ("government's interests in public health and safety and consumer protection" easily satisfied first aspect of rational basis test). So is reducing crime. *See Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted."). The Acts specification of safety devices, firing requirements, and drop safety requirements, as well as chamber load indicator and magazine disconnect mechanism features, are rationally related to those interests. In enacting the UHA, the California Legislature had in mind the connection between cheaply made, unsafe handguns and injuries to firearms operators and crime. *See Fiscal,* 158 Cal. App. 4th at 913 (taking judicial notice of legislative history "showing that one of the goals of the UHA included curbing handgun crime, as well as promoting gun safety"). Therefore, even assuming a governmental classification and different

13

Defendant Cid's Memorandum of Points And Authorities In Support Of Motion To Dismiss Amended Complaint
(2:09-cv-01185-FCD-KJM)

treatment of a similarly situated class, the Act withstands rational basis review and does not run afoul of equal protection.

Accordingly, the second cause of action fails to state a claim upon which relief can be granted.

**CONCLUSION**

For all of these reasons, the Court should grant defendant Cid's motion and dismiss the amended complaint without leave to amend.

Dated: July 6, 2009

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General

/s/ *Anthony R. Hakl*

ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant*

SA2009310413
30801973.docx

14