Alan Gura (Calif. Bar No. 178221)
Gura & Possessky, PLLC
101 N. Columbus St., Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.264.8489/Fax 408.264.8487

Jason A. Davis (Calif. Bar No. 224250)
Davis & Associates
27281 Las Ramblas, Suite 200
Mission Viejo, CA 92691
949.310.0817/Fax 949.288.6894

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ivan Peña, et al., ) | Case No. 2:09-CV-01185-FCD-KJM |
|     Plaintiffs, ) | |
| ) | **EXHIBIT C** |
| v. ) | |
| ) | In Support of Plaintiffs' Motion |
| Wilfredo Cid, ) | For Summary Judgment |
|     Defendant. ) | |

Respectfully Submitted on Sept. 1, 2009

Alan Gura (Calif. Bar No. 178221)        Jason A. Davis (Calif. Bar No. 224250)
Gura & Possessky, PLLC                    Davis & Associates
101 N. Columbus St., Suite 405            27281 Las Ramblas, Suite 200
Alexandria, VA 22314                      Mission Viejo, CA 92691
703.835.9085/Fax 703.997.7665             949.310.0817/Fax 949.288.6894

Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.264.8489/Fax 408.264.8487

By:  /s/ Donald E.J. Kilmer, Jr.
     Donald E. J. Kilmer, Jr., Attorney for Plaintiffs



# State of California
## Secretary of State

I, DEBRA BOWEN, Secretary of State of the State of California, hereby certify: SELECTED PAGES, AUTHOR BILL FILE, (SCOTT), SB 489, 2003

That the attached transcript of __16__ page(s) is a full, true and correct copy of the original record in the custody of this office.



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this day of

APR 10 2009

_Debra Bowen_
**DEBRA BOWEN**
Secretary of State

**SENATE COMMITTEE ON PUBLIC SAFETY**
Senator Bruce McPherson, Chair
2003-2004 Regular Session

S
B
1
9
0

SB 190 (Scott)
As Amended April 10, 2003
Hearing date: April 29, 2003
Penal Code
SAH:mc

SEMIAUTOMATIC FIREARMS:

CHAMBER LOAD INDICATORS/MAGAZINE DISCONNECT MECHANISMS

HISTORY

Source: Brady Campaign to Prevent Violence, United with the Million Mom March; Coalition to Stop Gun Violence (co-sponsors)

Prior Legislation: SB 510 (Scott) – Chapter 608, Statutes of 2002 (provisions deleted prior to enactment dealing with a different subject)
AB 576 – failed passage, Assembly Committee on Public Safety, 1/16/96
AB 1818 – passage refused in Senate, 8/31/94

Support: Legal Community Against Violence; California Chapter of the American College of Emergency Physicians; individual letter

Opposition: California Rifle and Pistol Association; National Rifle Association; Gun Owners of California; National Shooting Sports Foundation, Inc.; California Association of Firearms Retailers; 14 individual communications

---

KEY ISSUES

EXISTING LAW PROVIDES THAT COMMENCING JANUARY 1, 2001, NO "UNSAFE HANDGUN" MAY BE MANUFACTURED OR SOLD IN CALIFORNIA BY A LICENSED DEALER, AS SPECIFIED, AND REQUIRES THAT THE DEPARTMENT OF JUSTICE PREPARE AND MAINTAIN A ROSTER OF HANDGUNS WHICH ARE DETERMINED NOT TO BE UNSAFE HANDGUNS.

(CONTINUED)

---

(More)

SHOULD, COMMENCING JANUARY 1, 2005, A CENTER-FIRE SEMIAUTOMATIC PISTOL THAT IS NOT ALREADY DETERMINED NOT TO BE AN UNSAFE HANDGUN, BE DEEMED AN "UNSAFE HANDGUN" IF IT DOES NOT HAVE A CHAMBER LOAD INDICATOR <u>OR</u> A MAGAZINE DISCONNECT MECHANISM, AS SPECIFIED (THUS ALLOWING A TWO-YEAR WINDOW FOR HANDGUNS PREVIOUSLY DEEMED NOT "UNSAFE" TO BE SOLD NEW IN CALIFORNIA WITHOUT EITHER DEVICE)?

SHOULD, COMMENCING JANUARY 1, 2007, A CENTER-FIRE SEMIAUTOMATIC PISTOL BE DEEMED AN "UNSAFE HANDGUN" IF IT DOES NOT HAVE BOTH A CHAMBER LOAD INDICATOR <u>AND</u> A MAGAZINE DISCONNECT MECHANISM IF IT HAS A DETACHABLE MAGAZINE, AS SPECIFIED?

SHOULD, COMMENCING JANUARY 1, 2007, A RIMFIRE SEMIAUTOMATIC PISTOL BE DEEMED AN "UNSAFE HANDGUN" IF IT DOES NOT HAVE A MAGAZINE DISCONNECT MECHANISM IF IT HAS A DETACHABLE MAGAZINE, AS SPECIFIED?

SHOULD THE FOLLOWING DEFINITIONS BE ADDED TO THE "UNSAFE HANDGUN" LAW:

- A "CHAMBER LOAD INDICATOR" MEANS A PLAINLY VISIBLE DEVICE IN A CONTRASTING COLOR THAT CLEARLY INDICATES TO A PERSON WHO IS UNFAMILIAR WITH THE OPERATION OF A SEMIAUTOMATIC PISTOL THAT A CARTRIDGE IS IN THE FIRING CHAMBER?

- A "MAGAZINE DISCONNECT MECHANISM" MEANS A MECHANISM THAT PREVENTS A SEMIAUTOMATIC PISTOL THAT HAS A DETACHABLE MAGAZINE FROM OPERATING TO STRIKE THE PRIMER OF AMMUNITION IN THE FIRING CHAMBER WHEN A DETACHABLE MAGAZINE IS NOT INSERTED IN THE PISTOL?

SHOULD SEMIAUTOMATIC PISTOLS BE PROHIBITED FROM BEING SUBMITTED FOR TESTING PURSUANT TO THE "UNSAFE HANDGUN" LAWS UNLESS THEY MEET THE FOLLOWING REQUIREMENTS:

- COMMENCING JANUARY 1, 2005, IF IT IS A CENTER-FIRE SEMIAUTOMATIC PISTOL, IT HAS <u>EITHER</u> A "CHAMBER LOAD INDICATOR" <u>OR</u>, IF IT HAS A DETACHABLE MAGAZINE, IT HAS A MAGAZINE DISCONNECT MECHANISM, BOTH AS SPECIFIED?

- COMMENCING JANUARY 1, 2007, IF IT IS A CENTER-FIRE SEMIAUTOMATIC PISTOL, IT HAS <u>BOTH</u> A "CHAMBER LOAD INDICATOR" <u>AND</u>, IF IT HAS A DETACHABLE MAGAZINE, IT HAS A MAGAZINE DISCONNECT MECHANISM, BOTH AS SPECIFIED?

(CONTINUED)

(More)

> - COMMENCING JANUARY 1, 2005, IF IT IS A RIMFIRE SEMIAUTOMATIC PISTOL AND HAS A DETACHABLE MAGAZINE IT HAS A MAGAZINE DISCONNECT MECHANISM, AS SPECIFIED?
>
> SHOULD RELATED CHANGES IN LAW BE MADE?

## PURPOSE

*The purpose of this bill is to add to the existing "unsafe handgun" law requirements for semiautomatic pistols, as specified.*

Existing law provides that commencing January 1, 2001, no "unsafe handgun" may be manufactured or sold in California by a licensed dealer, as specified, and requires that the Department of Justice prepare and maintain a roster of handguns which are determined not to be unsafe handguns. Private party sales and transfers of handguns through a licensed dealer or sheriff in smaller counties are exempted from those restrictions. (Penal Code §§ 12125-12133.)

Existing law provides that for purposes of the "unsafe handgun" law, new models of previously tested handguns must be submitted for testing, as follows:

> Penal Code section 12131.5. (a) A firearm shall be deemed to satisfy the requirements of subdivision (a) of Section 12131 [listed on Department of Justice roster as not an "unsafe handgun"] if another firearm made by the same manufacturer is already listed and the unlisted firearm differs from the listed firearm only in one or more of the following features:
> (1) Finish, including, but not limited to, bluing, chrome-plating, oiling, or engraving.
> (2) The material from which the grips are made.
> (3) The shape or texture of the grips, so long as the difference in grip shape or texture does not in any way alter the dimensions, material, linkage, or functioning of the magazine well, the barrel, the chamber, or any of the components of the firing mechanism of the firearm.
> (4) Any other purely cosmetic feature that does not in any way alter the dimensions, material, linkage, or functioning of the magazine well, the barrel, the chamber, or any of the components of the firing mechanism of the firearm.
> (b) Any manufacturer seeking to have a firearm listed under this section shall provide to the Department of Justice all of the following:
> (1) The model designation of the listed firearm.
> (2) The model designation of each firearm that the manufacturer seeks to have listed under this section.

(More)

(3) A statement, under oath, that each unlisted firearm for which listing is sought differs from the listed firearm only in one or more of the ways identified in subdivision (a) and is in all other respects identical to the listed firearm.

(c) The department may, in its discretion and at any time, require a manufacturer to provide to the department any model for which listing is sought under this section, to determine whether the model complies with the requirements of this section.

Existing law provides that:

All firearms sold or transferred in this state by a licensed firearms dealer, including private transfers through a dealer, and all firearms manufactured in this state, shall include or be accompanied by a firearms safety device that is listed on the Department of Justice's roster of approved firearms safety devices and that is identified as appropriate for that firearm by reference to either the manufacturer and model of the firearm, or to the physical characteristics of the firearm that match those listed on the roster for use with the device, as specified. (Penal Code § 12088.1.)

Existing law provides that:

Every one is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself. The design, distribution, or marketing of firearms and ammunition is not exempt from the duty to use ordinary care and skill that is required by this section. (Civil Code § 1714.)

This bill makes the following changes to the definition of an "unsafe handgun" that may not be sold "new" in California:

- Commencing January 1, 2005, for a center fire automatic semiautomatic pistol that is not already determined not to be an unsafe handgun listed on the roster pursuant to Section 12131 (Department of Justice roster of handguns found to not be "unsafe" and therefore available for sale new in California), it does not have either a chamber load indicator, or if it has a detachable magazine, a magazine disconnect mechanism.

- Commencing January 1, 2007, for all center fire automatic semiautomatic pistols, it does not have both a chamber load indicator and if it has a detachable magazine, a magazine disconnect mechanism.

- Commencing January 1, 2005, for all rimfire semiautomatic pistols that are not already listed on the Department of Justice roster it does not have a magazine disconnect mechanism, if it has a detachable magazine.

(More)

- Commencing January 1, 2007, for all rimfire semiautomatic pistols that have a detachable magazine, it does not have a magazine disconnect mechanism.

This bill adds the following definitions to the "unsafe handgun" law:

- a "chamber load indicator" means a plainly visible device in a contrasting color that clearly indicates to a person who is unfamiliar with the operation of a semiautomatic pistol that a cartridge is in the firing chamber.

- a "magazine disconnect mechanism" means a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol.

- a "semiautomatic pistol" means a pistol, as defined in subdivision (a) of Section 12001, the operating mode of which uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of the trigger.

This bill prohibits semiautomatic pistols from being submitted for testing pursuant to the "unsafe handgun" law unless they meet the following requirements:

- Commencing January 1, 2005, no center fire semiautomatic pistol may be submitted for testing pursuant to this chapter if it does not have either a "chamber load indicator" or a magazine disconnect mechanism if it has a detachable magazine.

- Commencing January 1, 2007, no center-fire semiautomatic pistol may be submitted for testing pursuant to this chapter it if does not have both a "chamber load indicator" and a magazine disconnect mechanism.

- Commencing January 1, 2005, no rimfire semiautomatic pistol may be submitted for testing if it has a detachable magazine and does not have a magazine disconnect mechanism.

This bill makes related changes in law.

## COMMENTS

1. Need for This Bill

Background provided by the author includes the following:

> From 1987 to 1996, nearly 2,200 American children 14 years of age and younger died from unintentional shootings. For every child who dies after being shot, an estimated 4 children are treated in U.S. hospitals for nonfatal gunfire injuries. In 1995 and 1996, 8,832 Californians were killed as a result of gunfire. According to data reported by hospitals to the California Department of Health Services, there were 13,153 nonfatal

(More)

injuries which required hospitalization during the same period. About 10% of the injuries during that period of time were determined to be the result of unintentional shootings.

Many of these injuries and deaths were the result of unintentional shootings by users who thought that the guns they fired were not loaded. Gun users are often unaware that semiautomatic weapons can be fired when their loading mechanism – the magazine – Is removed or emptied. A live round of ammunition may remain in the chamber of the firearm after the magazine is removed. When the trigger of a semiautomatic firearm with a live round in its chamber is pulled, it will fire, even though it does not have a magazine inserted, unless the gun has a magazine disconnect mechanism.

A 1997 survey by the Johns Hopkins Center for Gun Policy and Research and the National Opinion Research Center found that almost 35% of respondents (who were all *adults)* either did not know that a gun could be fired, or believed that a gun *could not be fired* with the magazine removed. 28% of those respondents lived in households where guns were present. Undoubtedly, many of those households also included children.

Teaching children how to "safely handle guns" is not the answer. Study after study has shown that gun safety programs for children are ineffective and may even increase the risk of unintentional firearm injury to children. In two recent experiments (one by the University of North Carolina and one by ABC News), guns were hidden in rooms where children were playing. Both studies found that children who previously had been taught not to touch guns and to instead immediately notify an adult are just as likely to handle guns than those who have not been so instructed. Another study released in July 2002 by the David and Lucille Packard Foundation found that parents overestimate the ability of their children to deal safely with guns. The report found that the easiest way to save lives is to make guns more "childproof" with built-in safety devices.

One such safety device is a chamber load indicator. A chamber load indicator alerts the gun user when there is a bullet in the firing chamber of the gun. Currently, chamber load indicators are installed on only about 11% all semiautomatic handguns. Chamber load indicators are effective safety devices. A 1991 General Accounting Office (GAO) study of shootings in 10 randomly selected cities across the nation found that 23% of the accidental shootings could have been prevented by chamber load indicators. The GAO report explained that "[a]lthough we cannot project to the country as a whole, were there actually to be the same ratio nationwide as in the 10 cities we studied, that would mean there were approximately 157,600 such injuries each year."

Magazine disconnect mechanisms prevent a semiautomatic weapon from being fired when its ammunition magazine is removed. They are passive safety devices, which require no training on the part of the user to be effective, which is particularly important to prevent accidents involving children. Magazine disconnect devices are currently installed on only about 14% of the semiautomatic handguns on the market.

(More)

Like chamber load indicators, magazine disconnect mechanisms are effective safety devices. Although there is no statistical data at this time about how many deaths the devices could prevent, a 1999 report by the Johns Hopkins Center for Gun Policy and Research concluded that magazine disconnect mechanisms are inexpensive and effective safety devices.

2. <u>Difference Between This Bill as First Heard by the Committee on March 18, 2003 and as Now Amended</u>

When testimony was first taken on this bill in committee on March 18, the bill required that all semiautomatic firearms manufactured and sold in California after January 1, 2005, have a chamber load indicator and, if the firearm has a detachable magazine, a magazine disconnect mechanism, as specified. Those requirements were added in a new title of the Penal Code.

As now amended, this bill amends the current "unsafe firearms law" and requires that any center-fire semiautomatic pistol added to the Department of Justice roster of firearms not found to be "unsafe" from January 1, 2005, to December 31, 2006, shall have either a chamber load indicator or a detachable magazine disconnect, as specified, and that any new rimfire semiautomatic pistol added during that time must have a magazine disconnect if the firearm has a detachable magazine. Only centerfire semiautomatic pistols with both devices and rimfire semiautomatic pistols with a magazine disconnect mechanism may be listed on the roster and available for sale new in California commencing January 1, 2007. The submission of semiautomatic pistols for testing purposes is similarly "phased in."

3. <u>The Addition of Either or Both Devices to a Pistol Previously Approved Would Require a New "unsafe handgun" Testing Procedure</u>

The addition of either or both a chamber load indicator and/or a magazine disconnect would require that any previously tested handgun model approved as not an "unsafe handgun" would require retesting pursuant to Penal Code section 12131.5, cited in the Purpose section above. The current "unsafe handgun" law only allows "cosmetic" changes to a handgun model without requiring a retest. That code section mentions finish (color or plating, for example), grip material, general shape or texture of grips if not affecting dimensions and function, and other purely cosmetic features.

IS IT APPROPRIATE TO REMOVE ALL PREVIOUSLY TESTED SEMIAUTOMATIC FIREARMS FROM THE APPROVED ROSTER AFTER JANUARY 1, 2007, IF THEY DO NOT HAVE THE DEVICES MANDATED BY THIS BILL, AS SPECIFIED?

(More)

4. <u>Evolution of the Definition of "chamber load indicator"</u>

As introduced on February 22, 2001, SB 510 contained the following definition:

> As used in this article, "chamber load indicator" means a device that plainly indicates to an untrained user that a cartridge is in the firing chamber.

As subsequently amended, that SB 510 definition went through the following evolution:

- As used in this article, "chamber load indicator" means a plainly visible device in a contrasting color that clearly that a cartridge is in the firing chamber. (as amended April 5, 2001)

- As used in this article, "chamber load indicator" means a plainly visible device in a contrasting color that clearly indicates to a person who has not been formally trained in handgun safety and is unfamiliar with the operation of that handgun that a cartridge is in the firing chamber. (as amended June 20, 2001)

- As used in this article, "chamber load indicator" means a plainly visible device in a contrasting color that clearly indicates to a person who is unfamiliar with the operation of a semiautomatic pistol that a cartridge is in the firing chamber. (as amended July 3, 2001)

This bill uses the last definition from SB 510 as amended on July 3, 2001. It also now requires chamber load indicators on only center-fire pistols. This bill, as amended, does add the new requirements for a chamber load indicator to the existing "unsafe handgun" law so that the Department of Justice will be involved through regulations in defining an indicator that meets the testing requirements.

IS IT FEASIBLE TO REQUIRE CHAMBER LOAD INDICATORS ON NEW CENTER-FIRE SEMIAUTOMATIC HANDGUNS BY JANUARY 1, 2007, BEYOND THOSE CURRENTLY AVAILABLE ON THE MARKET?

One may contrast the potential difficulty of defining "chamber load indicator" in an arguably - and necessarily - "subjective" way with the definition of a "magazine disconnect mechanism" which "means a mechanism that prevents a semiautomatic pistol from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol." The magazine disconnect definition is essentially self-enforcing. Does a firearm "fire" with a live round in the chamber and the magazine "disconnected" or not although it may not be entirely clear whether or not "disconnected" means fully inserted or totally removed from the pistol altogether or simply not fully inserted and engaged.

(More)

5. <u>Additional Information About "chamber load indicator"</u>

Background provided by the author last year regarding SB 510 does indicate that there have been patents on file in the United States for chamber load indicators for handguns since the late 1800's. ("I didn't know the gun was loaded" . . . Venick et al; Journal of Public Health Policy, Vol. 20, No. 4, pp. 427-440.) Such indicators may be a metal protrusion or a colored-indicator which is flush with the surface of the semiautomatic firearm but which is visible and shows that a round is in the firing chamber. The background provided indicated that a 1988 patent was issued to Colt for a "light-emitting diode." Some semiautomatic handguns currently are sold with a chamber load indicator.

There is also an ongoing discussion about what could, should, or would be an "appropriate" chamber load indicator. For example, how does one construct a chamber load indicator which is sufficient to make its purposes and true indication known to a person who is both familiar with the weapon as well as to a person who is not familiar with the weapon or with firearms in general–or to a child? It may be possible in the not too distant future to have a device, similar to the car seatbelt warning voice that was popular in some cars, announce that a firearm is loaded. There are times when that might prove inopportune, but the technology of the future is not yet known. (There is also an ongoing discussion about the future sale of "smart guns" which would only fire when used by their owner or a person with the ability to enable the firearm.)

Regardless, it is arguable that a requirement in California would "drive" the technology of chamber load indicators. The background provided by the author last year also indicates a review of semiautomatic new handguns available in 1998 indicated that around 11% had some chamber load indicator mechanism. While those indicators were more likely to be available on more expensive firearms, there were some less expensive handguns with such devices, as well.

IS THE DEFINITION OF "CHAMBER LOAD INDICATOR" CONTAINED IN THIS BILL APPROPRIATE AND IF NOT IS THERE ANY BETTER DEFINITION?

6. <u>Magazine Disconnect Mechanisms</u>

This bill as currently amended requires <u>either</u> a chamber load indicator <u>or</u> a magazine disconnect mechanism for center-fire semiautomatic pistols to be listed as not an unsafe handgun in California commencing January 1, 2005, and <u>both</u> those features commencing January 1, 2007, as specified. It also now requires a magazine disconnect mechanism on any rimfire semiautomatic pistol after January 1, 2007, as specified.

This bill defines a magazine disconnect mechanism as:

> a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol.

(More)

As with chamber load indicators, such devices are currently available on semiautomatic handguns. Committee staff knows of no such devices on long guns. The background provided by the author suggests the availability in 1998 of such devices on 14% of the handguns reviewed. Price again was a factor in availability, although not exclusively. In addition, there is some mention of peace officer concern that if they needed to fire their weapon and accidentally pushed a magazine release, they would still want to be able to fire the last round in the chamber. Patent issues are also pertinent to the mandate to include a magazine disconnect device. It might also be assumed that a mandate in California would drive technology in the market for magazine disconnect devices.

IS IT FEASIBLE TO REQUIRE SUCH DEVICES ON NEW CENTER-FIRE AND RIMFIRE SEMIAUTOMATIC HANDGUNS BY JANUARY 1, 2007, BEYOND THOSE CURRENTLY AVAILABLE ON THE MARKET?

NOTE: Committee staff does not know how many of the new semiautomatic handguns which are currently available in California, i.e., those approved by the Department of Justice as not "unsafe handguns," have either or both a chamber load indicator and a detachable magazine with magazine disconnect device. Any new model semiautomatic handgun with one or the other of the mandated items sold after January 1, 2005, which have not previously been tested by the Department of Justice and designated as not unsafe handguns, would have to re-tested and designated as not unsafe before it could be sold in California. See Penal Code section 12131.5 cited in the Purpose section, above. Any new model with the items added as required after January 1, 2007, would have to be re-tested before it could be sold new in California

There were 244,569 handguns sold in 1999 in California legally through licensed dealers and sheriff's in smaller counties (that number includes both new and used handguns). It is not possible for Committee staff to discern how many of those handguns had either or both of the items mandated by this bill. However, recent news accounts indicate that 70% of those handguns were semi-automatic pistols. (See Ascribe Newswire September 20, 2002, "California Handgun Study to Fortify Crime Prevention")

7. <u>Change Effective January 1, 2003, Pertaining to Liability and Firearms and Ammunition</u>

Prior to January 1, 2003, the following applied to liability lawsuits pertaining to firearms:

> (a) In a products liability action, no firearm or ammunition shall be deemed defective in design on the basis that the benefits of the product do not outweigh the risk of injury posed by its potential to cause serious injury, damage, or death when discharged. The potential of a firearm or ammunition to cause serious injury, damage, or death when discharged does not make the product defective in design. Injuries or damages resulting from the discharge of a firearm or ammunition are not proximately caused by its potential to cause serious injury, damage, or death, but are proximately caused by the actual discharge of the product. This section shall not affect a products liability cause of action

(More)

based upon the improper selection of design alternatives. (This section, enacted in 1983, is stated to be declaratory of existing law.) (Civil Code § 1714.4.)

Effective January 1, 2003, Civil Code section 1714.4 was deleted from law and Civil Code section 1714 was amended to read (underline indicates new language effective at the first of this year):

> Every one is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself. <u>The design, distribution, or marketing of firearms and ammunition is not exempt from the duty to use ordinary care and skill that is required by this section.</u> (Civil Code § 1714.)

That change in liability law could arguably change the legal scrutiny applied to determine whether or not the requirements of this bill are met in the future. For historical reference, SB 1818 (Gotch) in 1994 and SB 576 (Villaraigosa) from 1995 which both required a loaded chamber indicator on semi-automatic pistols included specific language about liability for damages caused by the failure to comply with that requirement and neither contained a definition of the required indicator.

8. <u>Massachusetts AG Regulations Pertaining to Handguns</u>

The Attorney General of the Commonwealth of Massachusetts has adopted the following regulations that apply to the sale of handguns in that state:

> 16.01: Definitions
>
> Load indicator: shall mean a device which plainly indicates that a cartridge is in the firing chamber within the handgun.
>
> Magazine safety disconnect: shall mean a device that prevents the firing of the handgun when the magazine is detached from the handgun. (940 CMR 16.01 (2001))
>
> 16.05: Sale of Handguns Without Childproofing or Safety Devices
>
> (3) It shall be an unfair or deceptive practice for a handgun-purveyor to transfer or offer to transfer to any customer located within the Commonwealth any handgun which does not contain a load indicator or magazine safety disconnect.
> (4) ... 16.05(3) applies only to handguns that have a mechanism to load cartridges via a magazine. (940 CMR 16.05 (2001))

(More)

It should be noted first that the Massachusetts " Handgun Performance Test" does not mention either a "load indicator" or a "magazine safety disconnect" and that the restrictions on the sale of handguns in 16.05 uses the conjunctive "or" so that the handgun shall have at least one or the other but both are not required for sale. In addition, those requirements are for sales, not manufacture in that state.

Questions raised about the Massachusetts law during the committee hearing on March 18, 2003, have resulted in inquiries about the Massachusetts law with the following now provided after telephone calls made between Attorney General staff of both states:

*3/20/03 - Questions asked by CA DOJ staff of MA DOJ staff with answers provided:*

*1. Are there regulations that define exactly what a chamber load indicator is?*

No. The definition is extremely limited. The definition simply says, "the load indicator shall mean a device which plainly indicates that a cartridge is in the firing chamber within the handgun." MA DOJ is working on a new definition that has more specific details, but that will be for prosecutorial discretion BECAUSE, in MA, the responsibility is on the dealer to determine whether or not a gun meets the standard. The AG's office is developing that regulation. It is in their bureaucratic process right now. It has to do with color, size and other characteristics.

*2. How do you enforce your law?*

In MA, the state police do records checks at gun dealers (like what our DOJ field reps do). The AG's office will also go in and purchase guns undercover to make sure all the laws or being followed (including MSD and CLI). They have done that with over one half their dealers. They only have 300 dealers in MA. 3 years ago, they had over a thousand dealers. Presumably, the new laws have caused more than a 66% decrease in gun dealers in MA.

*3. How many handguns were sold in MA last year, 2001, 2000, 1999? When did the law come into effect?*

[not available at time of call] ... It is about 40 to 50 thousand a year. The number had gone down; however, it is on its way back up.

*4. How many makes/models are on the approved list of handguns that have:*

a. magazine safety disconnects; b. chamber load indicators; c. both

They have 360 handguns on their roster; however, they currently do not test for the magazine safety disconnect OR the load indicator. So, they cannot say definitively which have the devices. They estimate that only a couple dozen have either a MSD or CLI.

(More)

It is incumbent upon the dealer to certify that one or the other are present. HOWEVER, they are moving towards the laboratories certifying existence of a CLI or MSD. But, the new definition of a CLI has to be complete before they can do that.

Guns manufactured on or before October 1998 are exempt from the CLI/MSD law. MA tracks serial numbers as part of its enforcement activities to determine when a gun was manufactured. They subpoenaed the serial numbers from gun manufacturers.

*5. Did gun manufacturers have to redesign firearms?*

Yes, that is why there are so few new guns on the list when compared to California.

*6. Does MA require guns manufactured in MA to meet the requirements of CLI's or MSD's?*

No. Only sales.

*7. Can we have a copy of their regulations?*

Regulations:
http://www.ago.state.ma.us/con_pro/cmr2.pdf?section=17&head2=Handguns&head3=Regulations

More info:
http://www.ago.state.ma.us/con_pro/guns.asp

Mass. Roster:
http://www.state.ma.us/eops/publications/approved_roster2002.pdf

*8. Any other thoughts on the MA law?*

There are five million residents in MA. One million of those have gun licenses.

The requirements for Chamber Load Indicators in Massachusetts are really designed for people who are somewhat familiar with guns. This is how they are approaching the new regulations as well.

The Massachusetts AG staff also indicates that since neither device is part of the state Handgun Performance Test, adding either device does not entail retesting of the firearm if a device is added to a previously approved firearm model and the manufacturer indicates that is the only change.

(More)

In addition, sponsors of this bill have also ascertained that (following edited by committee staff for inclusion; any ambiguity or errors are the responsibility of committee staff and not to be attributed to others):

> First, although the requirements do not apply to manufacture, Smith & Wesson has modified those of its models that did not already comply with the requirements. [It appears that] their full line now complies with the MA requirements [having one or the other of the devices].
>
> Second, the major gun manufacturers have made design changes to keep their guns available in MA, demonstrating that they are both able and willing to do so. Sig Arms, Smith & Wesson, Taurus and Walther (and perhaps many others) communicated to the MA AG's office that they would do so soon after the adoption of the requirements, and their guns are currently available for sale in MA.
>
> Third, although the MA AG does not evaluate the devices or apply specific standards, they have explored the adoption of standards and have received suggestions about possible definitions. One suggestion ... describes "a red, yellow or orange colored area of at least four square millimeters" that is "visible on the exterior of the surface of the handgun when the appropriate caliber cartridge is in the chamber, but no red, yellow or orange is visible when no cartridge is in the chamber." [That may or may not be appropriate but it is also suggested that] the indicator be accompanied by adjacent labeling that unambiguously defines the meaning of the indicator.

9. <u>Interstate Commerce</u>

This bill would place restrictions on the sale, importation, and manufacture of semiautomatic firearms in California. There are enough similar restrictions on firearms in this state that it might be surprising if interstate commerce issues are raised by this bill. This bill would also generally prohibit the manufacture in California of semiautomatic firearms without the mandated items, even if those firearms are manufactured for export outside of the state. That is the same restriction which currently exists for the unsafe handgun law and the assault weapons law. (Penal Code §§ 12125-12133 and Penal Code §§ 12275-12290.) However, any such restriction at least may raise peripheral issues pertaining to interstate commerce. NOTE: Title 18, United States Code Service, section 927, does provide that:

> § 927. Effect of State law
>
> No provision of this chapter [18 USCS §§ 921 et seq. - Federal Firearms Act]] shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

(More)

10. <u>Opposition to This Bill</u>

The NRA letter in opposition to this bill includes:

> The accident rate in the United States involving firearms is at its lowest level since 1903. This accident rate has declined almost 40 percent in the past 25 years alone and the decline in fatal firearm accidents has occurred in a century which has seen a four hundred percent increase in the number of firearms in circulation in the United States.
>
> Senate Bill 190, would force the adoption into the design of firearms, unproven and untested technology. The requirements of SB 190 will make not firearms safer or reduce the number of firearms accidents.
>
> Firearms safety training, such as the NRA has provided to millions of Americans, is the key to reducing firearms accidents, not the mandating of technical gadgets added to firearms.

11. <u>Differences Between This Bill and SB 510 as Passed by the Committee Last Year</u>

This bill has now been changed from the versions of SB 510 in 2001 by adding the new provisions to the "unsafe handgun" law; by exempting rimfire pistols from the chamber load indicator requirements; and by allowing semiautomatic center-fire pistols to have only one of those devices in order to be sold from January 1, 2005, to January 1, 2007.

When SB 510 was heard by this committee last year, it applied to all firearms. It was amended in the committee by the author to apply to handguns.

This bill further reflects the changes subsequently to SB 510 that changed the definition of "chamber load indicator"; refined the exemptions from the bill's requirements, including adding an exemption for the motion picture, television, and video production industry; and other minor changes.

12. <u>Personal Handgun Importers</u>

The Department of Justice "California Firearms Laws - 2003" contains the following on page 47:

> Any person who meets the definition of a *personal handgun importer* who moves into California with the intention of establishing residency in this state, must report his or her ownership of any handgun acquired outside California to the Department of Justice within 60 days.
>
> A personal handgun importer means an individual who meets specific criteria, which includes, but is not limited to, any person age 18 or older, who is not a licensed firearms

(More)

dealer or manufacturer, and who owns and intends to possess within this state on or after January 1, 1998, any pistol, revolver, or other firearm capable of being concealed upon the person that is not an assault weapon or machinegun, as defined by law. (Penal Code § 12001(n).)

Personal handgun importers shall report handgun ownership by choosing one of the following options:
• Forward by prepaid mail or deliver in person to the Department of Justice, a report prescribed by the department. Forms are available from the Department of Justice, firearms dealers, law enforcement agencies, and the Department of Motor Vehicles;
• Sell or transfer the firearm in accordance with the provisions of Penal Code section 12072(d);
• Sell or transfer the firearm to a dealer licensed pursuant to Penal Code section 12071;
• Sell or transfer the firearm to a sheriff or police department. (If this option is chosen, individuals should notify the agency in advance that they intend to transport the handgun to that agency, and it should be transported unloaded and in a locked container). (Penal Code §§ 12026.2 (a)(18), 12072(f)(2)(A).)

There is no indication from the sponsors or author of this bill that it is intended to apply to those specifically defined importers who move to California and otherwise lawfully possess handguns even though they are called a unique kind of "importer" of firearms. Those persons are not specifically excluded from the "unsafe handgun" laws which, does exempt private party transfers from its restrictions. However, one of the options for a personal handgun importer is to sell the handgun in a private party transaction or to a dealer. That could remotely be considered importation for sale in an arguably overly broad interpretation, although staff does not know of any circumstance where that has been suggested, pursued, or argued under the existing "unsafe handgun" laws (nor during the legislative discussion of that law). If there is ever any confusion pertaining to that issue, it may be appropriate to specifically add those persons to those exempted from the provisions of the unsafe handgun law.

***************