EDMUND G. BROWN JR., State Bar No. 37100
Attorney General of California
STEPHEN P. ACQUISTO, State Bar No. 172527
Supervising Deputy Attorney General
ANTHONY R. HAKL, State Bar No. 197335
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-9041
 Fax: (916) 324-8835
 E-mail: Anthony.Hakl@doj.ca.gov

*Attorneys for Defendant Wilfredo Cid*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVAN PEÑA, ROY VARGAS, DOÑA CROSTON, BRETT THOMAS, SECOND AMENDMENT FOUNDATION, INC., and THE CALGUNS FOUNDATION, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**WILFREDO CID,**<br><br>Defendant. | 2:09-cv-01185-FCD-KJM<br><br>**DEFENDANT CID'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS**<br><br>Date: October 2, 2009<br>Time: 10:00 a.m.<br>Dept: No. 2, 15th Floor<br>Judge: Frank C. Damrell, Jr.<br>Trial Date: None<br>Action Filed: April 30, 2009 |

**INTRODUCTION**

Plaintiffs' opposition does not save their amended complaint. First, Plaintiffs ignore a very significant issue that developed after Defendant Cid filed his motion to dismiss. That issue concerns the Second Amendment's applicability to the states. The controlling rule in the Ninth Circuit now is that the Second Amendment does not apply to the states. The Court should therefore dismiss this action for this reason alone.

Second, even assuming the applicability of the Second Amendment, Plaintiffs cannot show that California's Unsafe Handgun Act infringes on the Second Amendment right recognized in

1

*District of Columbia v. Heller*, --- U.S. ----, 128 S. Ct. 2783 (2008). Therefore, they cannot state a Second Amendment claim.

Third, Plaintiffs have failed to identify a governmental classification and the different treatment of similarly situated individuals. They therefore cannot state an equal protection claim.[1]

For these reasons, the Court should grant Cid's motion and dismiss this action in its entirety.

## ARGUMENT

### I.   THE SECOND AMENDMENT APPLIES TO THE ACTIONS OF THE FEDERAL GOVERNMENT ONLY, NOT THE STATES.

In *Fresno Rifle & Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 731 (9th Cir. 1992), the Ninth Circuit held that the Second Amendment applies to the actions of the federal government only. *Fresno Rifle* involved a Second Amendment challenge to California's assault weapons control legislation. *See* 965 F.2d at 729-31. Yet the Ninth Circuit explained that the longstanding Supreme Court decisions in *United States v. Cruikshank*, 92 U.S. 542, 553 (1876) and *Presser v. Illinois*, 116 U.S. 252, 264-65 (1886) remained controlling on the incorporation issue and "both make clear that the Second Amendment binds only the national government." *Fresno Rifle*, 965 F.2d at 730. The court plainly held: "Until such time as *Cruikshank* and *Presser* are overturned, the Second Amendment limits only federal action, and we affirm the district court's decision 'that the Second Amendment stays the hand of the National Government only.'" *Id.* at 731.

In *Heller*, the Court did not reach the issue of whether the Second Amendment is incorporated by the Fourteenth Amendment. It was "a question not presented by [the] case . . . ." *Heller*, 128 S.Ct. at 2813 n.23. On the other hand, earlier this year in *Nordyke v. King*, 563 F.3d 439 (9th Cir. 2009), the Ninth Circuit distinguished *Fresno Rifle* and held "that the Due Process

---

[1] Additionally, Cid notes that Plaintiffs' twenty-four-page brief exceeds the limit of twenty pages on all initial moving papers and opposition briefs. (Order filed May 1 (Doc. no. 5) at 3.) Plaintiffs also make references to their recently-filed motion for summary judgment and supporting evidence, which the Court should ignore. In ruling on a motion to dismiss, the Court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed under Federal Rule of Evidence 201. *See Mir. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988).

1  Clause of the Fourteenth applies the protections of the Second Amendment to state and local
2  governments[.]" *Nordyke*, 563 F.3d at 457.  Cid acknowledged this development in the law in his
3  opening brief filed on July 6, stating that this case did not present an incorporation issue "[a]t this
4  time".  (Def. Cid's Memo. of P. & A. in Supp. of Mot. to Dismiss Am. Compl. filed July 6, 2009
5  at 9 n.4.)  Yet Cid also explained that a judge of the Ninth Circuit had called for a vote to
6  determine whether *Nordyke* should be re-heard en banc.  (*Id.*)

7  As it turns out, the rule on the incorporation issue changed on July 29.  On that day the
8  Ninth Circuit issued an order directing that *Nordyke* be reheard en banc.  (Order filed July 29,
9  2009 (Doc. No. 98), *Nordyke v. King*, No. 07-15763 (9th Cir.).)  The order also provided that
10 "[t]he three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth
11 Circuit."[2]  (*Id.*)  The law now, therefore, is the same as it was pre-*Nordyke*.  *Fresno Rifle* sets
12 forth the current rule in the Ninth Circuit, which is that the Fourteenth Amendment does not
13 incorporate the Second Amendment.

14 Plaintiffs fail to cite *Fresno Rifle* or otherwise acknowledge the current rule regarding
15 incorporation.  They compound this error by incorrectly suggesting that the incorporation issue is
16 a non-issue since "[t]he parties are apparently in agreement that the Second Amendment should
17 be held incorporated as against the states . . . ."  (Pls.' Not. of Possible Relevant Auth. filed on
18 August 24 (Doc. no. 13) at 2.)  Plaintiffs say as much in light of an amicus brief filed by the
19 California Attorney General, on behalf of the State of California, in support of the petitions for
20 writs of certiorari filed in the National Rifle Association's action against the City of Chicago and
21 its companion case.  *See National Rifle Ass'n of America, Inc. v. City of Chicago*, 567 F.3d 856
22 (7th Cir. 2009), petition for cert. filed, 77 U.S.L.W. 3679 (U.S. June 3, 2009) (No. 08-1497);
23 *McDonald v. City of Chicago*, petition for cert. filed, 77 U.S.L.W. 3691 (U.S. June 09, 2009) (No.
24 08-1521).  Cid is of course aware of that amicus brief.  In that brief, the Attorney General offered

---

[2] The *Nordyke* en banc hearing occurred on September 24.  Shortly after the hearing, the Ninth Circuit issued the following order: "Submission is vacated pending the Supreme Court's disposition of <u>Maloney</u> v. <u>Rice</u>, No. 08-1592, <u>McDonald</u> v. <u>City of Chicago</u>, No. 08-1521, and <u>National Rifle Ass'n of Am., Inc.</u> v. <u>City of Chicago</u>, No. 08-1497." (Order filed September 24, 2009 (Doc. No. 121), *Nordyke v. King*, No. 07-15763 (9th Cir.).)

1  his view that the Supreme Court should grant those petitions and ultimately rule on the merits to

2  extend to the states *Heller*'s core Second-Amendment holding that the government cannot deny

3  citizens the right to possess handguns in their homes, but also provide guidance on the scope of

4  the states' ability to reasonably regulate firearms.  Nevertheless, those arguments are not the law.

5  As stated above, the binding rule for this Court and the parties, which is in line with current

6  Supreme Court law, is that the Second Amendment does not apply to the states.  *Fresno Rifle*,

7  965 F.2d at 731.  The Court should therefore grant the motion to dismiss for this reason alone.

8  **II.    PLAINTIFFS FAIL TO STATE A SECOND AMENDMENT CLAIM.**

9  Even if the Second Amendment applied to actions of state officials, which it currently does

10 not, *Heller* does not countenance Plaintiffs' wholesale attack on the Unsafe Handgun Act.  It must

11 be remembered that *Heller* struck down a law that "totally ban[ned] handgun possession in the

12 home" and "require[d] that any lawful firearm in the home be disassembled or bound by a trigger

13 lock at all times, rendering it inoperable."  128 S.Ct. at 2817.  The law "amount[ed] to a

14 prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society for

15 [the] lawful purpose" of self-defense, and the prohibition extended to the home, where "the need

16 for defense of self, family, and property is most acute."  *Id*.

17 The UHA is nothing like the total ban in *Heller*, and when Plaintiffs speak in terms of "an

18 out-and-out gun ban" (Pls.' Opp'n at 12), they very much overstate the matter.  The UHA hardly

19 concerns an entire class of weapons.  Nor does it prohibit the possession of any firearms.  In fact,

20 it does not even regulate possession.  Rather, it simply regulates the retail sale of firearms and

21 actually ensures that more than 1,300 handguns are available for retail purchase in California.

22 Thus, the UHA does not burden the right to possess an operable firearm for purposes of self-

23 defense in the home.

24 Plaintiffs claim that "the right to arms includes the right to acquire arms."  (Opp'n at 10.)

25 But they cite no authority on point for that sweeping legal conclusion.  Moreover, even if the

26 UHA were viewed as somehow making it more difficult to possess a handgun in the home for

27 self-defense, which it does not, the UHA would survive.  As the Supreme Court has stated:  "As

28 our jurisprudence relating to all liberties . . . has recognized, not every law which makes a right

4

more difficult to exercise is, ipso facto, an infringement of that right." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 873 (1992). *See also Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)("Although these rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates.")

Plaintiffs also assert that the availability of more than 1,300 handguns for retail purchase is "irrelevant." (Pls.' Opp'n at 17.) That assertion is surprising, and it is wrong. That zero operable firearms could be possessed by the residents of the District of Columbia was obviously relevant in *Heller*. That more than 1,300 handguns are available in California for retail purchase alone is relevant here.

Additionally, *Heller* instructs that the Second Amendment guarantees individuals the right to possess a handgun in the home for the purposes of self-defense. The Supreme Court in no way held, as Plaintiffs argue, that the Second Amendment guarantees the right to buy any handgun whatsoever. In fact, the Court explicitly stated that the Second Amendment right is "not unlimited" and there is no "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 128 S.Ct. at 2816. The Court expressly recognized many exceptions to the Second Amendment right, *id*. at 2816-17, and went on to warn that the list of exceptions was not exhaustive, *id*. at 2817 n.26. The UHA fits within the exception for laws that "impose conditions and qualifications on the commercial sale of arms" in that it conditions only the retail sale of certain firearms on the presence of certain safety features.[3] *Id*. at 2816. For example, to promote handgun safety, the Legislature has required that handguns purchased in California meet certain firing requirements to reduce the instances of a handgun exploding in one's hand upon firing. Cal Penal Code § 12127. There is a drop safety requirement to minimize

---

[3] No authority supports the suggestion that the exception for the regulation of commercial firearms sales applies solely to laws like those "requiring a criminal background check or training as a condition of purchasing firearms." (Pls.' Opp'n at 12.) Also, at least one court has rejected a *Heller* challenge to a law prohibiting the possession of firearms based on their physical characteristics where the law was part of a broader scheme to regulate the sale of firearms. *See United States v. Marzzarella*, 595 F. Supp. 2d 596, 601 (W.D. Pa. 2009) (rejecting challenge to federal provision prohibiting possession of firearm with obliterated serial number).

5

1  the accidental firing of a firearm if it is dropped.  Cal Penal Code § 12128.  And the Legislature
2  has required chamber load indicators for certain pistols to assist individuals in determining
3  whether a round is in the firing chamber, and a magazine disconnect to reduce the accidental
4  discharge of a round when someone removes the magazine but forgets that a round has been
5  chambered.  Cal Penal Code § 12126(b)(4)-(6).  *Heller* does not stand as an invitation for courts
6  to invalidate these kinds of laws.  Rather, *Heller* expressly allows the states to regulate firearms in
7  this reasonable manner.  128 S.Ct. at 2816-17.
8      The UHA does not impose any burden on the Second Amendment right articulated in
9  *Heller*.  Additionally, it is the kind of law *Heller* recognized as permissible under the Second
10 Amendment.  Plaintiffs therefore cannot state a Second Amendment claim.

11 **III.   THE AMENDED COMPLAINT DOES NOT TRIGGER EQUAL PROTECTION REVIEW.**

12     While the amended complaint contains no clear allegations regarding the matter, Plaintiffs
13 attempt in their opposition to identify a governmental classification of groups and the different
14 treatment of similarly situated groups.  Plaintiffs' equal protection claim fails despite that attempt.
15     Plaintiffs primarily argue that the UHA triggers equal protection review because "there are
16 the classifications among different guns."  (Pls.' Opp'n at 20.)  That argument falls flat.  As one
17 district court has observed in a case involving a challenge to an ordinance prohibiting the use of
18 metal baseball bats in a high school game:  "[C]ertainly the plaintiffs must show some
19 discriminatory effect on a person or entity the Constitution was intended to protect, rather than an
20 inanimate sporting good, in order to invoke the Equal Protection Clause."  *USA Baseball v. City*
21 *of New York*, 509 F. Supp. 2d 285, 293 n.2 (S.D.N.Y. 2007).  *See also Atchison, T. & S.F.R. Co.*
22 *v. Matthews*, 174 U.S. 96, 104 (1899) ("[T]he equal protection guaranteed by the constitution
23 forbids the legislature to select a person, natural or artificial, and impose upon him or it burdens
24 and liabilities which are not cast upon others similarly situated.").
25     Plaintiffs next assert that the exceptions for private party transfers and intra-family transfers
26 amount to an equal protection claim.  (Pls.' Opp'n at 20.)  Nevertheless, even assuming these
27 exceptions result in a governmental classification, which is not clear, they do not result in
28 similarly situated people being treated differently.  The simple fact is that unrostered handguns,

6

including the ones identified in the amended complaint, are available to Plaintiffs Peña, Vargas, Croston and Thomas via a private party transfer just as they are to everyone else. Cal. Penal Code §§ 12132(a), 12072(d). Intra-family transfers of unrostered guns are also equally available to all California residents. Cal. Penal Code §§ 12132(b), 12078(c).

Plaintiffs further complain that "[a]ny of the Plaintiffs might live next door to individuals who lawfully obtained the same handguns denied by the roster law, prior to moving to the state, or as a gift from an out-of-state relative." (Pls.' Opp'n at 20.) However, that handguns not on the California roster are available for purchase in some other state is of no consequence whatsoever. Also, all California residents to whom Plaintiffs are similarly situated are subject to the same limitations regarding the receipt of a handgun as a gift or bringing a handgun into the state.

Plaintiffs next take issue with the exceptions for "law enforcement personnel." (Pls.' Opp'n at 20.) Cal. Penal Code §§ 12132(b). But peace officers are hardly in the same situation as Plaintiffs. To cite just a few reasons why they are not, a person cannot qualify as a peace officer without completing rigorous training in procedures and conduct. Cal. Penal Code §§ 832, 832.4, 13510 *et seq.*; *see also* Cal. Code Regs., tit. 11, § 1000, *et seq*. In order to carry a firearm, a peace officer must undergo meticulous training in firearm proficiency, safety and rules of engagement. Cal. Penal Code § 832; *see also* Cal. Code Regs., tit. 11, § 1005.

Nor are Plaintiffs similarly situated to those involved in "movie and television production." (Pls.' Opp'n at 21.) In relevant part, Penal Code section 12132(i) exempts the sale of "any semiautomatic pistol that is to be used solely as a prop during the course of a motion picture, television, or video production . . . ." Plaintiffs do not allege that they plan to use an unrostered handgun solely as a prop in a movie or television show, and the amended complaint makes clear that their interest in firearms extends beyond their prop value.

Because Plaintiffs cannot allege a governmental classification and that the UHA treats a similarly situated class differently, they cannot state an equal protection claim. The Court should therefore grant Cid's motion to dismiss.[4]

---

[4] Since this case does not trigger equal protection review, the Court need not address what standard of review might apply to Plaintiffs' equal protection claim. To be sure, though, strict (continued…)

**CONCLUSION**

For all of these reasons, and the reasons set forth in Cid's motion to dismiss, the Court should grant the motion and dismiss this action in its entirety.

Dated: September 25, 2009

Respectfully Submitted,

EDMUND G. BROWN JR.
Attorney General of California
STEPHEN P. ACQUISTO
Supervising Deputy Attorney General

/s/ *Anthony R. Hakl*

ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant*

SA2009310413
10491995.doc

---

(…continued)
scrutiny would not apply. The long list of categorical exceptions in *Heller* are entirely inconsistent with strict scrutiny. Also, Cid is unaware of any court within the Ninth Circuit that has applied strict scrutiny as suggested by Plaintiffs.

8

Defendant Cid's Reply to Plaintiffs' Opposition to Motion to Dismiss
(2:09-cv-01185-FCD-KJM)