John C. Eastman, California Bar No. 193726
Center for Constitutional Jurisprudence
c/o Chapman University School of Law
One University Drive
Orange, CA 92866
Tel.: (714) 628-2587  Fax: (714) 844-4817

Of Counsel:
Erik S. Jaffe, D.C. Bar No. 440112
Erik S. Jaffe, P.C.
5101 34th Street, N.W.
Washington, D.C.  20008
Tel.: (202) 237-8165 Fax:   (202) 237-8166

Attorneys for *Amicus Curiae*
GLOCK, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ivan Pena, *et al.*, | Case No. 2:09-CV-01185-KJM-CKD |
| Plaintiffs, | AMICUS CURIAE BRIEF OF GLOCK, INC., IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| Stephen Lindley, | |
| Defendant | |

Comes now *Amicus Curiae* GLOCK, Inc., by and through undersigned counsel, and submit its *Amicus Curiae* Brief in Support of Plaintiffs' Motion for Summary Judgment.

Dated: November 1, 2013         Respectfully Submitted,

Of Counsel:                              John C. Eastman, California Bar No. 193726
Erik S. Jaffe, D.C. Bar No. 440112       Center for Constitutional Jurisprudence
Erik S. Jaffe, P.C.                      c/o Chapman University School of Law
5101 34th Street, N.W.                   One University Drive
Washington, D.C.  20008                  Orange, CA 92866
Tel.:   (202) 237-8165                   Tel.: (714) 628-2587  Fax: (714) 844-4817
Fax:    (202) 237-8166
                                         Attorneys for *Amicus Curiae*
                                         GLOCK, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................ iii

I. STATEMENT OF INTEREST ........................................................................................ 1

II. SUMMARY OF ARGUMENT ....................................................................................... 2

III. ARGUMENT ................................................................................................................. 3

IV. CONCLUSION ............................................................................................................ 10

## TABLE OF AUTHORITIES

## CASES

*District of Columbia* v. *Heller*, 554 U.S. 570 (2008) .................................................. passim

*Greater New Orleans Broad. Ass'n* v. *United States*, 527 U.S. 173 (1999) .................... 8, 9

## CONSTITUTIONAL PROVISIONS

U.S. Const., amend. XV ........................................................................................................ 7

U.S. Const., amend. XIX ....................................................................................................... 7

U.S. Const., amend. XXIV .................................................................................................... 7

U.S. Const., amend. XXVI .................................................................................................... 7

U.S. Const., Art. I, sec. 4 ....................................................................................................... 7

U.S. Const., Art. II, sec. 1 ...................................................................................................... 7

# I.  STATEMENT OF INTEREST

*Amicus Curiae* GLOCK, Inc. ("GLOCK") manufactures the world's finest semi-automatic pistols, which are known for their safety, durability, reliability, and ease of use.[1]  Millions of GLOCK pistols have been sold and it is the pistol of choice of numerous militaries, police departments, and civilians throughout the world, including 65% of the law enforcement agencies in the United States.  GLOCK manufactures many pistol models with different variations to meet the demands of the market.  Roughly half of those models are specifically designed with civilians in mind and are suitable for hunting, sport shooting, and self defense.

Many earlier models of GLOCK pistols are grandfathered and remain legal for sale to civilians in California.  The models that GLOCK has introduced since 2008, however, are not legal to sell to civilians in California because they do not incorporate a magazine disconnect mechanism and novel microstamping technology, even though the earlier models that remain legal for sale also lack these features.

GLOCK submits this brief to explain why the varied and growing requirements of the California gun roster program are inconsistent with the essential qualities of GLOCK pistols that have made them so popular.  GLOCK also seeks to present information to this Court regarding why its pistols do not incorporate a magazine disconnect mechanism and microstamping technology and why denying California citizens the ability to purchase these commonly used handguns violates their Second Amendment right to keep and bear arms.

---

[1] GLOCK, Inc. is a privately held company.  None of GLOCK, Inc.'s private owners are publicly held companies.

Brief of *Amicus Curiae* GLOCK, Inc.                                                                 Pena v. Lindley - 1

## II.  SUMMARY OF ARGUMENT

The Second Amendment protects the right to keep and bear those types of weapons that are in "common use" by "law-abiding citizens for lawful purposes." *District of Columbia* v. *Heller*, 554 U.S. 570, 625, 627 (2008) (internal citation and quotation marks omitted).  While the Supreme Court itself has squarely held that handguns as a class satisfy this common use test, *id*. at 629, this brief will discuss the characteristics of GLOCK pistols, which are among the most popular and highly regarded pistols in common use, but do not incorporate some of the features currently required by California.  Despite, or perhaps because of, the absence of features such as a magazine disconnect mechanism and microstamping technology, GLOCK pistols are widely used for lawful purposes throughout the country, are safe and reliable, and hence fall squarely within the core category of "arms" protected by the Second Amendment.  To forbid the sale of such protected arms to Californians thus infringes upon their rights under the Second Amendment.

The proper constitutional test for analyzing the challenged portions of California's roster requirements as applied to commercial sales is intermediate scrutiny analogous to that used when considering restrictions on commercial speech protected by the First Amendment.  The government's proposed "undue burden" test is inappropriately lenient in the context of an expressly enumerated constitutional right.  Furthermore, the government significantly understates the burden that its evolving roster requirements impose on manufacturers and consumers.  California's claimed interest in requiring the addition of a magazine disconnect mechanism and microstamping technology in pistols is particularly weak given the inconsistent and exception-riddled manner in which those requirements are applied.  That severe underinclusiveness both belies the government's

1 claimed interest and demonstrates that the roster program will not substantially advance
2 that interest. Such defects are fatal under any reasonable level of constitutional scrutiny.

### III. ARGUMENT

The Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms of the type that are in "common use" by "law-abiding citizens for lawful purposes," such as handguns. *Heller*, 554 U.S. at 625, 627, 629 (2008) (internal citation and quotation marks omitted). The only type of arms that the Supreme Court has suggested may be banned for sale to civilians are those that are both "dangerous and unusual." *Id*. at 627.

GLOCK pistols are among the most popular semi-automatic pistols in the world, widely recognized for their superior safety, reliability durability, and ease of use. The GLOCK "Safe Action"® pistol is manufactured with only 34 parts, significantly less than its competitors. This smaller number of component parts increases reliability, and ultimately safety, by reducing the potential for technical problems.

GLOCK pistols do not incorporate a magazine disconnect mechanism, which is designed to render a pistol incapable of firing when the magazine is not inserted. GLOCK does not intend to incorporate a magazine disconnect mechanism into its pistols because of its significant disadvantages. GLOCK pistols can be fired if the magazine is lost or damaged, and a round in the chamber can be fired if necessary while the user is in the process of changing magazines. A pistol with a magazine disconnect mechanism would not be capable of firing under those circumstances. For those reasons and others, the overwhelming majority of law enforcement agencies require pistols that do not have a magazine disconnect mechanism. In addition to GLOCK pistols, the majority of semi-automatic pistols sold today do not include a magazine disconnect mechanism because of its significant disadvantages. Accordingly, the pistols that are in "common use" by "law-

Brief of *Amicus Curiae* GLOCK, Inc.      Pena v. Lindley - 3

1 abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627, generally do not
2 include a magazine disconnect mechanism.

3 GLOCK pistols also do not incorporate microstamping technology, which is
4 intended to imprint bullets and/or cartridge cases with information on the pistol that fired
5 them, such as the make, model and serial number. Microstamping is both novel and
6 essentially theoretical because no pistols that are commercially available in the United
7 States currently incorporate it. Accordingly, the pistols that are in "common use" by
8 "law-abiding citizens for lawful purposes," do not feature microstamping technology.

9 In 2008, GLOCK began introducing Fourth Generation versions of its various
10 pistol models. These so-called Gen4 pistols incorporate a variety of improvements that
11 make some of the best pistols in the world even better. Internally, the original recoil
12 spring has been replaced with a dual recoil spring assembly, which noticeably reduces the
13 felt recoil while simultaneously increasing the life span of the assembly. On the
14 ergonomics and handling side, Gen4 models have a new modular back strap system that
15 allows the circumference of the grip to be changed to better fit an individual's hand; a
16 new Rough Textured Frame (RTF) surface designed to make the pistol more secure to
17 grip; and a new enlarged magazine release catch that is easier to operate and reversible
18 for left handed users. The improvements made in Gen4 models have been favorably
19 received by consumers. The Gen4 models are extremely popular and now account for
20 more sales than the earlier versions of the GLOCK pistols.

21 In California, however, the roster program has led to a different picture. Although
22 a number of earlier GLOCK pistol models are grandfathered on the California roster and
23 remain legal for sale to civilians, the new Gen4 models are illegal because they do not
24 contain a magazine disconnect mechanism and microstamping technology. Even though
25 the Gen4 pistols are as safe as the earlier grandfathered models – which also do not have
26

Brief of *Amicus Curiae* GLOCK, Inc. Pena v. Lindley - 4

1  a magazine disconnect mechanism or microstamping technology – they are illegal for
2  sale to civilians because of the roster, the purported purpose of which is to prohibit unsafe
3  handguns.  As a result, the citizens of California are deprived of their right to own the
4  newest pistol models with improved features, even though they have proven to be more
5  popular with consumers than the earlier models and are in "common use" by "law-
6  abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627, such that the right to
7  purchase and possess them is clearly protected by the Second Amendment.
8      In addition to being an Orwellian approach to gun safety, California's roster
9  scheme is inconsistent with the Supreme Court's common use test for identifying "arms"
10 that are protected by the Second Amendment.  As discussed above, the Supreme Court
11 has held that the Second Amendment applies to those types of weapons, such as
12 handguns, that are in "common use" by "law-abiding citizens for lawful purposes."
13 *Heller*, 554 U.S. at 625, 627.  All GLOCK pistols, and other pistols in "common use," by
14 "law-abiding citizens for lawful purposes" lack one or more of the features now required
15 for new pistol models to be legally sold to civilians in California. The effect of this is that
16 if handgun manufacturers were to discontinue those models that were grandfathered on
17 the roster and only sell newer models that were introduced after 2008, or even simply
18 stop paying the fees that California requires to maintain previously grandfathered
19 handguns on its roster, the citizens of California would be precluded from purchasing a
20 pistol in violation of the Supreme Court's decision in the *Heller* case.
21      California has in essence reversed the Supreme Court's "common use" test and
22 prohibited the sale and possession of those pistols that are commonly used by "law-
23 abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627, and allowed only the
24 sale of those pistols that are not in common use and, in fact, are not even commercially
25 available.  The absence of a magazine disconnect mechanism and microstamping
26

technology in the Gen4 GLOCK pistols does not render them the type of "dangerous and unusual weapons" that the government may prohibit, *id*. at 627, because they are functionally identical to the earlier grandfathered versions of the GLOCK pistols that also lack those features.  Further, the Supreme Court has already held that handguns as a class are protected by the Second Amendment and therefore not dangerous and unusual weapons." *Id.* at 627 (one of the handguns at issue in the *Heller* case was a pistol that did not have a magazine disconnect mechanism or microstamping technology[2] and would thus be illegal in California unless it was grandfathered on the roster).  Requiring new features that are distinctly *not* in common use – and the absence of which do not make a pistol unusually dangerous – violates the Second Amendment right of California citizens to keep and bear arms as articulated in *Heller*.

In addition to the government's inversion of the common-use standard by requiring features not commonly found in pistols to be incorporated into all new model pistols, the government also proposes an incorrect standard of review.  Gov't Mem. at 12.  First, the lenient "undue burden" standard the government proposes is inappropriate for a specifically enumerated right, as opposed to a right inferred into the Due Process Clause by the courts.  *See* Gov't Mem. at 13-14 (analogizing to right to marriage cases).  Similarly the right-to-vote cases cited by the government, at 14, can only be understood in the context of the express qualifications on that right.  For example, unlike the Second Amendment's straightforward prohibition against infringing the right to keep and bear arms, the Fifteenth Amendment does not prohibit the denial of abridgment of the right to vote in general, but only the denial or abridgment of that right "on account of race, color,

---

[2] Microstamping has nothing to do with the safety of a handgun, or whether it is dangerous and unusual as that phrase is used in *Heller*, but is merely intended to theoretically assist law enforcement in identifying the firearm from which a recovered bullet or cartridge casing had been fired.

Brief of *Amicus Curiae* GLOCK, Inc.                                                      Pena v. Lindley - 6

1  or previous condition of servitude." U.S. Const., amend. XV; *see also* U.S. Const.,
2  amend. XIX (same, "on account of sex"); U.S. Const., amend. XXIV (same, "by reason
3  of failure to pay any poll tax or other tax"); U.S. Const., amend. XXVI (same, "on
4  account of age" for persons 18 or older).

5        Furthermore, the States are specifically empowered to regulate the time, place, and
6  manner, as well as the qualifications for voting. U.S. Const., Art. I, sec. 4 ("Times,
7  Places, and manner of holding Elections for Senators and Representatives, shall be
8  prescribed in each State by the Legislature thereof"); *id*. Art. II, sec. 1 (States to
9  determine manner of appointing Electors to select the President). Those very provisions
10 necessarily demonstrate that the right to vote may indeed be denied or abridged on
11 account of factors *other than* race or sex and hence those provisions are quite unlike the
12 Second Amendment, which carries no such qualifications to its protected right. It is
13 precisely because preventing *improper* voting is as important as allowing qualified
14 persons to vote that so many of the requirements surrounding (and incidentally
15 restricting) voting have been upheld. The right to keep and bear arms, however, is not
16 analogous to a person's ability to vote because it is expressly enumerated, and the
17 limitations on that right suggested by *Heller* are nowhere to be found in the Constitution
18 itself. Rather, they are court-created and defined limitations in derogation of citizens'
19 textually unqualified right to keep and bear arms, and thus must be applied with caution
20 and with the type of scrutiny applied in the context of other enumerated rights.

21       A better analogy in this case thus would be the intermediate scrutiny used in the
22 context of the First Amendment's protection of commercial speech. There you have an
23 enumerated right coupled with the unenumerated greater leeway afforded the government
24 when regulating commercial matters. Such leeway is one of the primary bases for the
25 government's claim of lower scrutiny in this case and the qualification it cites to in
26

*Heller*. Gov't Mem. at 11-12. But even in the commercial speech context, the government's justification for regulation must be a substantial one and courts apply a means-ends test to determine whether the proposed restriction directly advances the purported purposes of the restriction. *See Greater New Orleans Broad. Ass'n* v. *United States*, 527 U.S. 173, 183 (1999). Restrictions that are either over or under-inclusive fail the intermediate scrutiny applied to commercial speech. *See id*. at 183, 190.

Second, as for the government's claim, Gov't Mem. at 15-18, that the burden in this case is minimal, its arguments demonstrate that its regulations are grossly under-inclusive and gloss over the impact of the ever-expanding set of roster requirements on consumers' ability to obtain newer models of handguns. Regarding underinclusiveness, the many exceptions the government cites for older handguns grandfathered onto the roster despite not meeting the latest requirements, private sales, law-enforcement sales, and the like all demonstrate that the government's claimed interest in, for example, magazine disconnect mechanisms and microstamping technology is weak at best. That the government continues to allow sales of numerous handguns lacking these features, and completely exempts law enforcement from regulations designed to exclude the sale of allegedly "unsafe handguns," shows at best an equivocal interest in the supposed benefits from those technologies, not the type of substantial government interest that would justify restricting an enumerated right. *Cf. Greater New Orleans*, 527 U.S. at 190, 195 ("The operation of § 1304 and its attendant regulatory regime is so pierced by exemptions and inconsistencies that the Government cannot hope to exonerate it."; "[T]he regulation distinguishes among the indistinct, permitting a variety of speech that poses the same risks the Government purports to fear, while banning messages unlikely to cause any harm at all.").

In fact, the largest actual effect from the expanding list of novel technological requirements for new models of guns is to prevent California consumers from being able to obtain the new models of handguns, such as GLOCK's Gen4 pistols, that incorporate the latest improvements. It makes absolutely no sense to force consumers to purchase older model handguns that lack the same features that the government is relying on to prohibit the sale of newer model handguns. Justifying such a scheme in the name of consumer safety or crime fighting is nonsensical, or simply disingenuous. *Cf. Greater New Orleans*, 527 U.S. at 188 (the requirement that a "regulation may not be sustained if it provides only ineffective or remote support for the government's purpose … is critical; otherwise, a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.") (citations and internal quotation marks omitted). Indeed, the very absurdity of the scheme suggests that the actual objective of the challenged roster requirements is not safety, but to create increasingly more problematic and expensive hurdles to the sale of handguns in order to make the process more difficult and thereby deter the sale and purchase of new handguns in California, an objective that cannot be squared with the Second Amendment.

That Californians may still be able to purchase older pistol models exempt from the new requirements is no answer to the degree of burden imposed by the roster scheme. Rather, the burden is in depriving them of access to newer pistol models in common use by "law-abiding citizens for lawful purposes" in other states, *Heller*, 554 U.S. at 625, 627, based on nothing more than the government's opinion as to the importance of uncommon features that will still be absent from a host of grandfathered pistols sold in California in any event. Given that context, the burden is certainly substantial when compared to a minimal government interest inconsistently pursued.

## IV.  CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for summary judgment and hold that the challenged provisions of the California roster program violate the Second Amendment.

Dated: November 1, 2013                    Respectfully Submitted,

Of Counsel:                                John C. Eastman, California Bar No. 193726
Erik S. Jaffe, D.C. Bar No. 440112         Center for Constitutional Jurisprudence
Erik S. Jaffe, P.C.                        c/o Chapman University School of Law
5101 34th Street, N.W.                     One University Drive
Washington, D.C.  20008                    Orange, CA 92866
Tel.:   (202) 237-8165                     Tel.: (714) 628-2587  Fax: (714) 844-4817
Fax:   (202) 237-8166

Attorneys for *Amicus Curiae*
GLOCK, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 1st day of November, 2013, I caused the foregoing *Amicus Curiae* Brief of GLOCK, Inc. to be served via the ECF system on all counsel therein:

*s/ John C. Eastman*

John C. Eastman