1  Alan Gura, Calif. Bar No.: 178221
2  Gura & Possessky, PLLC
   105 Oronoco Street, Suite 305
3  Alexandria, VA 22314
   703.835.9085/Fax 703.997.7665
4
5  Donald E.J. Kilmer, Jr., Calif. Bar No.: 179986
   Law Offices of Donald Kilmer, A.P.C.
6  1645 Willow Street, Suite 150
   San Jose, CA 95125
7  408.264.8489/Fax 408.264.8487

8  Jason A. Davis, Calif. Bar No.: 224250
   Davis & Associates
9  27201 Puerta Real, Suite 300
   Mission Viejo, CA 92691
10 949.310.0817/Fax 949.288.6894

11

12          IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF CALIFORNIA
13

14  Ivan Peña, et al.,                )   Case No. 2:09-CV-01185-KJM-CKD
                                       )
15          Plaintiffs,                )   PLAINTIFFS' MEMORANDUM OF
                                       )   POINTS AND AUTHORITIES IN
16      v.                             )   OPPOSITION TO DEFENDANT'S
                                       )   MOTION FOR SUMMARY
17  Stephen Lindley                    )   JUDGMENT OR ADJUDICATION
                                       )
18          Defendant.                 )   Date: December 16, 2013
19  _____   )   Time: 10 a.m.
                                           Dept: Courtroom 3,15[th] Floor
20                                         Judge: The Hon. Kimberly J. Mueller
                                           Trial Date: None
21                                         Action Filed: May 1, 2009

22          Come now Plaintiffs Ivan Peña, Roy Vargas, Doña Croston, Brett Thomas, the
23
    Second Amendment Foundation, Inc., and the Calguns Foundation, Inc., by and
24
    through undersigned counsel, and submit their Memorandum of Points and
25
    Authorities in Opposition to Defendant's Motion for Summary Judgment or, in the
26
27  Alternative, for Summary Adjudication.

28

Dated: December 2, 2013                Respectfully submitted,

Alan Gura, Cal. Bar No.: 178221        Donald E.J. Kilmer, Jr., Cal. Bar No. 179986

Gura & Possessky, PLLC                 Law Offices of Donald Kilmer, A.P.C.
105 Oronoco Street, Suite 305          1645 Willow Street, Suite 150

Alexandria, VA 22314                   San Jose, CA 95125
703.835.9085/Fax 703.997.7665          408.264.8489/Fax 408.264.8487

alan@gurapossessky.com                 Don @DKLawOffice.com

/s/ Alan Gura                          /s/ Donald E.J. Kilmer, Jr.

Alan Gura                              Donald E.J. Kilmer, Jr.

Jason A. Davis, Cal. Bar No.: 224250

Davis & Associates
27201 Puerta Real, Suite 300

Mission Viejo, CA 92691
949.310.0817/Fax 949.288.6894         Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    The Ninth Circuit Has Foreclosed Defendant's
        "Substantial Burden" Rational Basis Argument. . . . . . . . . . . . . . . . . . . 3

    II.   California's Handgun Roster Law Is Not
        "Presumptively Lawful". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    III.  The Supreme Court Foreclosed the "Alternative
        Arms" Claim... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    IV.  Plaintiffs' Complaint Defines Their Claim. . . . . . . . . . . . . . . . . . . . . . . 11

    V.   The Handgun Rostering Scheme Violates the
        Second Amendment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        1.    *Categorical Violation of Access to Protected "Arms"*. . . . . . . . . 12

        2.    *Substantial Burden*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.    *Heightened Scrutiny*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    VI.  The Handgun Roster Law Violates Plaintiffs' Rights
        to Equal Protection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Cases

*Bd. of Trs.* v. *Fox*,
    492 U.S. 469 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clark* v. *Jeter*,
    486 U.S. 456 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Ezell* v. *City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 8

*Heller* v. *District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kachalsky* v. *County of Westchester*,
    701 F.3d 81 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nordyke* v. *King*,
    644 F.3d 776 (9th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9

*Richards* v. *County of Yolo*,
    821 F. Supp. 2d 1169 (E.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sanders County Republican Cent. Comm.* v. *Bullock*,
    698 F.3d 741 (9th Cir.  2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Scocca* v. *Smith*, No. C–11–1318 EMC,
    2012 U.S. Dist. LEXIS 87025 (N.D. Cal. June 22, 2012) . . . . . . . . . . . . . . 6

*Silveira* v. *Lockyer*,
    312 F.3d 1052 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Teixeira* v. *County of Alameda*, No. 12-CV-03288-WHO,
    2013 U.S. Dist. LEXIS 128435 (N.D. Cal. Sept. 9, 2013). . . . . . . . . . . . . . 6

*United States* v. *Barton*,
    633 F.3d 168 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *Chester*,
    628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 14

*United States* v. *Chovan*, No. 11-50107,
    2013 U.S. App. LEXIS 23199 (9th Cir. Nov. 18, 2013) . . . . . . . . . . . . . passim

*United States* v. *DeCastro*,
    682 F.3d 160 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

*United States* v. *Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*United States* v. *Miller*,
    307 U.S. 174 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States* v. *Pulley*, No. 05-CR-0368,
    2013 U.S. Dist. LEXIS 17003 (E.D. Cal. Feb. 6, 2013) . . . . . . . . . . . . . . 3, 12

*United States* v. *Reese*,
    627 F.3d 792 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States* v. *Virginia*,
    518 U.S. 515 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *Vongxay*,
    594 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *Williams*,
    616 F.3d 685 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statutes, Rules and Regulations

18 U.S.C. § 922(g)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cal. Penal Code § 32000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Other Authorities

Petition for Certiorari,
    *District of Columbia* v. *Heller,* No. 07-290 . . . . . . . . . . . . . . . . . . . . . . . . 9

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION

### INTRODUCTION

The items prohibited by Defendant's rostering scheme are plainly "arms" of the type protected by the Second Amendment. Nowhere in his moving papers does Defendant contend otherwise.

That ends the matter. Protected arms cannot be banned any more than protected speech, medical procedures, or faiths might be. Were Plaintiffs to challenge a broad categorical book ban on First Amendment grounds, it would be silly to respond that no constitutional violation occurred because *other* books remain available, and the right to read books is thus not "substantially burdened." In the Second Amendment context, one court has already dismissed this argument as "frivolous." *Parker* v. *District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007), *aff'd sub nom District of Columbia* v. *Heller*, 554 U.S. 570 (2008). The Supreme Court repeatedly dismissed the theory as well.

But that is exactly what Defendant argues. Urging this Court to adopt a "substantial burden" test that the Ninth Circuit has since foreclosed, Defendant theorizes that so long as any "arms" remain available, any "arms" may be banned. Extending the argument to the limits of its logic, the state could ban *all* firearms with the exception of a single gun without trampling on Second Amendment rights.

Alas, not only has the Supreme Court repeatedly rejected the "alternative arms" argument. The Ninth Circuit has now dispensed with the "substantial burden" test. Indeed, Defendant's theory requires a substantial reimagination of Plaintiffs' Complaint, which nowhere claims that Defendant entirely prohibits all exercise of

Second Amendment rights. Rather, Plaintiffs contend—and on this point, there is no dispute, let alone a serious dispute—that the arms they seek are protected by the Second Amendment. Banning those arms thus violates Plaintiffs' rights.

SUMMARY OF ARGUMENT

Defendant laments that the *en banc* Ninth Circuit "unfortunately" vacated a panel's alleged adoption of a "substantial burden" test for the Second Amendment that would allow for rational basis review, Def. SJ Br. at 2 n.2, but nonetheless argues that this Court should adopt such a test, and apply it to bar Plaintiffs' claims.

The argument suffers from two defects. First, the Supreme Court, and nearly every appellate court that has considered the matter—including, since the motion's filing, the Ninth Circuit—has foreclosed Defendant's "substantial burden" test for Second Amendment cases. *United States* v. *Chovan*, No. 11-50107, 2013 U.S. App. LEXIS 23199 (9th Cir. Nov. 18, 2013).

Moreover, Plaintiffs would easily prevail under a "substantial burden" test, which Defendant asks this Court apply not to Plaintiffs' claims, but to a nonsensical straw-man claim that Plaintiffs have never asserted. The Supreme Court has already rejected, repeatedly, identical efforts to rewrite complaints alleging the violation of Second Amendment rights.

Of course, the proper test here is not "substantial burden," or any form of means-ends scrutiny, however divined. As Defendant enforces a prohibition against the acquisition of Second Amendment-protected arms, this Court is not called upon to do any more than did the Supreme Court in striking down such bans as simply conflicting with the Second Amendment guarantee. But were means-ends scrutiny applied, the Ninth Circuit plainly requires a form of heightened scrutiny—and

Defendant's handgun rostering scheme would fail any such standard of review, as indeed, it would fail rational basis review were that the standard. Plaintiffs have established a Second Amendment and Equal Protection violation. Defendant's motion for summary judgment should be denied.

ARGUMENT

I.    The Ninth Circuit Has Foreclosed Defendant's "Substantial Burden" Rational Basis Argument.

On October 25, 2013, Defendant wrote: "the level of scrutiny remains an open question in the instant case. This Court should answer that question by adopting and applying the 'substantial burden' test articulated in *United States* v. *DeCastro*, 682 F.3d 160 (2d Cir. 2012)." Def. Br. at 12. "[I]n the absence of a substantial burden, *DeCastro* counsels that the relatively lenient rational basis review applies." *Id.* at 14 (citing *DeCastro*, 682 F.3d at 166-67).

*DeCastro* was unpersuasive at the time of Defendant's filing. As nearly all other courts, including this one, have acknowledged, "the Supreme Court has determined that rational basis review is not applicable to laws affecting Second Amendment rights." *United States* v. *Pulley*, No. 05-CR-0368, 2013 U.S. Dist. LEXIS 17003, at *2 (E.D. Cal. Feb. 6, 2013) (citing *Heller*, 554 U.S. at 628 n.27). And as of November 18, 2013, the Ninth Circuit agrees, plainly foreclosing any type of *DeCastro*-style "substantial burden" test and the rational basis review it invites.

*Chovan* adopted, for at least some Second Amendment cases, the familiar two-step inquiry by which courts first ask whether a regulation implicates Second Amendment rights, and if so, tailor a level of *heightened* scrutiny based on the extent to which the regulation implicates the Second Amendment. *Chovan,* at *22-*23.

"The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Id.* at *22 (citing *United States* v. *Chester*, 628 F.3d 673, 680 (4th Cir. 2010) and *United States* v. *Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)).

The verb "burdens" is not modified. A challenged law either "burdens conduct protected by the Second Amendment," or it does not. Courts are not free to ignore "burdens" imposed upon the exercise of fundamental rights. As for the appropriate level of scrutiny, "we reject rational basis review and conclude that some sort of heightened scrutiny must apply." *Chovan,* at *26; *see also Chester*, 628 F.3d at 680 ("unless the conduct at issue is not protected by the Second Amendment at all, the Government bears the burden of justifying the constitutional validity of the law"); *United States* v. *Reese*, 627 F.3d 792, 801 (10th Cir. 2010) ("we must apply some level of heightened scrutiny").

And as to the precise form of heightened scrutiny—strict, intermediate, or something in between—the Ninth Circuit draws upon the First Amendment as a guide, holding that "the level of scrutiny should depend on (1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" *Chovan*, at *26 (quoting *Ezell* v. *City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)).

The Ninth Circuit carefully explained that "[w]e join the Third, Fourth, Seventh, Tenth, and D.C. Circuits in holding that the two-step framework outlined above applies to Second Amendment challenges." *Chovan*, at *23. The Second Circuit's conspicuous absence from that list is not accidental. Although Defendant

claims that *DeCastro*

> is consistent with [the approach] of [various] circuit courts, which have endorsed applying varying degrees of scrutiny based not only on the degree to which the law burdens the Second Amendment right but also on the extent to which the regulation impinges on the 'core' of the right,

Def. SJ Br. at 13, that is not exactly correct. While the degree of scrutiny shifts the level of *heightened* scrutiny based upon the extent that the regulation impinges on Second Amendment rights, courts outside the Second Circuit, like the Ninth Circuit, have uniformly rejected *DeCastro*-style "substantial burden" tests and other invitations to rational basis review. See *Heller* v. *District of Columbia*, 670 F.3d 1244, 1256 (D.C. Cir. 2011) ("*Heller II*") ("*Heller* clearly does reject any kind of 'rational basis' or reasonableness test"); *Marzzarella*, 614 F.3d at 95-96 ("*Heller* rejects [the rational basis] standard for laws burdening Second Amendment rights . . . some form of heightened scrutiny must have applied"); *Chester*, 628 F.3d at 676 ("the [Supreme] Court acknowledged that rational-basis scrutiny would be inappropriate"); *id.* at 679 ("rational-basis review . . . has been rejected by *Heller*"); *id.* at 680 ("the [Supreme] Court would apply some form of heightened constitutional scrutiny if a historical evaluation did not end the matter"); *Ezell*, 651 F.3d at 706 ("[t]he City urges us to import the 'undue burden' test from the Court's abortion cases, but we decline the invitation. Both *Heller* and *McDonald* [v. *City of Chicago*, 130 S. Ct. 3020 (2010)] suggest that First Amendment analogues are more appropriate") (citation omitted).[1]

---

[1] *Ezell*'s explicit rejection of an "undue burden" test is especially telling, as *Chovan* relied heavily on *Ezell*, quoting it for the specific instruction as to how courts should determine, if necessary, a level of scrutiny.

Heller and Chovan may leave many questions unanswered, but this much is clear: once the Court has determined that the Second Amendment is implicated, rational basis is out of the picture. "[S]ome sort of heightened scrutiny must apply." Chovan, at *26. A "substantial burden" test is really nothing more than a prohibited inquiry into "whether the right is *really worth* insisting upon." Heller, 554 U.S. at 634 (emphasis original). The question is never whether courts believe the infringement of a constitutional right is "substantial," but whether the government can justify restricting a fundamental right—a task that should not be too hard if a law truly reduces some serious hazard to public health and safety.[2]

II.    California's Handgun Roster Law Is Not "Presumptively Lawful."

Defendant claims that California's handgun rostering law "is one of the 'presumptively lawful' regulations envisioned by Heller," as "it is a law 'imposing conditions and qualifications on the commercial sale of arms.'" Def. SJ Br. 16 (quoting Heller, 554 U.S. at 626-27 & n.26). Alas, the quoted provision referenced an

_____

[2]For the same reasons, the two "substantial burden" district court opinions Defendant endorses, Scocca v. Smith, No. C–11–1318 EMC, 2012 U.S. Dist. LEXIS 87025 (N.D. Cal. June 22, 2012) and Richards v. County of Yolo, 821 F. Supp. 2d 1169 (E.D. Cal. 2011), appeal pending, No. 11-16255 (9th Cir. filed May 16, 2011) are no longer good law (if they ever were). Both followed the now-vacated panel opinion in Nordyke v. King, 644 F.3d 776 (9th Cir. 2011). Richards might well have erred even under a "substantial burden" test. The Second Circuit, following DeCastro, held that a New York law functionally identical to that at issue in Richards does, in fact, substantially burden Second Amendment rights. Kachalsky v. County of Westchester, 701 F.3d 81, 93 (2d Cir. 2012).

It is unclear why Defendant invokes Teixeira v. County of Alameda, No. 12-CV-03288-WHO, 2013 U.S. Dist. LEXIS 128435 (N.D. Cal. Sept. 9, 2013), appeal pending, No. 13-17132 (9th Cir. filed Oct. 21, 2013). Teixeira did not apply a "substantial burden" test, but rather followed the two-step inquiry Chovan eventually adopted. Id. at *16-*17. It dismissed plaintiffs' claims at step one, on the dubious notion, see Plaintiffs' SJ Br., Dkt. 67-1, at 10, that selling firearms is not activity implicated by the Second Amendment's guarantee. Id. at *17-*21.

"historical analysis" of the Second Amendment's "scope." *Heller*, 554 U.S. at 626.

True, *some* "conditions and qualifications on the commercial sale of arms" might be presumptively lawful—those conditions and qualifications that existed in 1791. *Cf. United States* v. *Vongxay*, 594 F.3d 1111 (9th Cir. 2010).[3]

But most courts—including the Ninth Circuit—have rejected overreading *Heller*'s list of presumptively lawful regulations for strained, ahistorical analogies. The Third Circuit, in an opinion *Chovan* followed, cautioned that "[c]ommercial regulations on the sale of firearms do not fall outside the scope of the Second Amendment . . . ." *Marzzarella*, 614 F.3d at 92 n.8.

> In order to uphold the constitutionality of a law imposing a condition on the commercial sale of firearms, a court necessarily must examine the nature and extent of the imposed condition. If there were somehow a categorical exception for these restrictions, it would follow that there would be no constitutional defect in prohibiting the commercial sale of firearms. Such a result would be untenable under *Heller*.

*Id.*

*Chovan* favorably recounted the Fourth and Seventh Circuits' rejection of the government's argument that the federal firearms ban imposed on domestic violence misdemeanants, 18 U.S.C. § 922(g)(9), can be sustained as a presumptively lawful historical measure. *Chovan*, at *15. In its first-step analysis, *Chovan* rejected the notion that the domestic violence misdemeanant ban is so historically rooted as to regulate conduct falling outside the Second Amendment's scope. *Id.* at *24-*25.[4]

---

[3] Because this case concerns a state regulation, the relevant time frame may be the Fourteenth Amendment's 1868 ratification. *See Ezell*, 651 F.3d at 705.

[4] Even with respect to provisions such as the felon ban, which *Heller* literally holds to be presumptively lawful, courts generally acknowledge that "the government does not get a free pass," *United States* v. *Williams*, 616 F.3d 685, 692 (7th Cir. 2010), as presumptions may be overcome. *See, e.g., United States* v. *Barton*,

Of course, nothing in American history, and certainly nothing in 1791 or 1868, remotely presaged California's Unsafe Handgun Act and its Byzantine rostering scheme. Defendant does not even attempt to link the Act to any historic conditions and qualifications on the commercial sale of arms, but rather, to *fire safety* measures regulating unstable eighteenth century gunpowder, for a world of cramped wooden structures. What this has to do with banning handguns for lacking microstamping, chamber loaded indicators, and magazine disconnect devices, is unclear. Indeed, Defendant oddly claims that *Heller* "expressly endorsed" the ancient fire-suppression laws, Def. SJ Br. at 16—but *Heller rejected* these laws as a predicate supporting a prohibition on acquiring handguns. *Heller* hardly aids Defendant on this ground.

In *Ezell*, also heavily relied upon by the Ninth Circuit in *Chovan,* the City of Chicago similarly sought refuge in early fire-suppression laws to sustain its ordinance banning gun ranges. At least shooting guns involves the combustion of gunpowder, and that city was once famously burned to the ground. The Seventh Circuit was unimpressed. "These 'time, place, and manner' regulations do not support the City's position that target practice is categorically unprotected." *Ezell*, 651 F.3d at 706.

How these ancient fire-suppression regulations establish that *acquiring firearms* is unprotected, or brings the handgun rostering law outside the Second Amendment, is unclear. The roster scheme burdens Second Amendment rights.

---

633 F.3d 168 (3d Cir. 2011).

III.     The Supreme Court Foreclosed the "Alternative Arms" Claim.

Defendant's theory, that the state may ban any gun it wishes so long as it *allows* others, is not consistent with the concept of a *right* to arms. People do not have the "right" to the guns the state deigns to allow, and the Second Amendment does much more than merely require the state to tolerate at least one firearm. In any event, this argument has been attempted—and thoroughly rejected.

The District of Columbia raised this sort of argument in defense of its handgun ban, but the D.C. Circuit dismissed the claim as "frivolous." *Parker*, 478 F.3d at 400. "It could be similarly contended that all firearms may be banned so long as sabers were permitted. Once it is determined—as we have done—that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them." *Id.* (citation omitted).

Undeterred, District of Columbia officials presented the Supreme Court with the following question on certiorari: "Whether the Second Amendment forbids the District of Columbia from banning private possession of handguns while allowing possession of rifles and shotguns." Petition for Certiorari, *District of Columbia* v. *Heller,* No. 07-290. Heller successfully challenged this question as not accurately reflecting the issues in the case, and the Supreme Court adopted a very different "Question Presented" along the lines Heller proposed, namely, whether the city's laws violated the Second Amendment.

On the merits, the Supreme Court rejected the alternative arms argument. "It is no answer to say . . . that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed. It is enough to note, as we have observed, that the American people have considered the handgun to

be the quintessential self-defense weapon." *Heller*, 554 U.S. at 629. The Supreme

Court then listed various reasons why a handgun might be more suitable for home

self-defense than a long arm, and concluded, "[w]hatever the reason, handguns are

the most popular weapon chosen by Americans for self-defense in the home, and a

complete prohibition of their use is invalid." *Id*.

Likewise, there is no serious dispute that the arms Plaintiffs here

seek—normal handguns of the type long available throughout the United States,

including (until the law's recent passage, California)—are arms of the kind in

common use for traditional lawful purposes. The handgun roster does not "regulat[e]

access to certain handguns with unsafe, dangerous features." Def. SJ Br. 16. What

are the features that positively disqualify handguns from Defendant's roster? In

relevant part, the roster bars access to handguns that *do not* contain features that

either do not exist (microstamping), or that the state teaches handgun consumers

are unsafe and dangerous. *See* Plaintiffs' SJ Br. 3-4.

Defendant's assertion is breathtaking: the entire universe of guns lacking

microstamping (a category sufficiently broad so as to include all guns), chamber

loaded indicators, and magazine disconnect devices can be banned without offending

the Second Amendment. This is not remotely consistent with *Heller*.

Indeed, one of the guns at issue is the exact make and model that lay at

*Heller*'s root. Defendant's assertion "[t]hat [the fact] Mr. Heller may have owned

such a gun as he litigated his case to the Supreme Court was irrelevant to the

Supreme Court's decision ," Def. SJ Br. 8 n.7, is wrong. Had Heller tried to register a

machine pistol, the outcome would have all but assuredly been different. The District

of Columbia was well aware of *United States* v. *Miller*, 307 U.S. 174 (1939), and was

free to litigate whether Heller's particular gun was of a kind in common use for traditional lawful purposes under that test.

Indeed, the District and its many amici exerted tremendous effort arguing that handguns—including Heller's—were unaccountably dangerous and should thus be barred. The case reached the Supreme Court on a summary judgment record—including a specific identification of Heller's handgun—and the D.C. Circuit ordered that Heller's summary judgment motion be granted. The Supreme Court confirmed that order, directing as follows: "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register *his handgun* and must issue him a license to carry *it* in the home." *Heller*, 554 U.S. at 635 (emphasis added).

It simply does not matter that *other* handguns are (for now) allowed. Plaintiffs enjoy a *right* to "arms" that are within the Second Amendment's protection. If the state wishes to regulate Plaintiffs' access to these arms, it bears a burden of justifying such regulation. But it cannot prohibit these arms, even if it "allows" a "right" to rifles, shotguns, sabres, battle axes, or non-existent microstamping handguns employing the chamber loaded indicators and magazine disconnect devices the state urges people not to use.

IV.    Plaintiffs' Complaint Defines Their Claim.

The Complaint does not claim that Defendant infringes the right to arms, as an abstract matter, by barring *some* or some proportion of arms. Such a claim would be incoherent and self-defeating, as there is no dispute that some arms can always be banned (if, for example, they are dangerous and unusual, and not of the kind in common use for traditional lawful purposes). Rather, the Complaint asserts that

*these particular* arms—those that fall outside the roster—are banned. Thus, the "alternative arms" claim fails not only as a matter of precedent and logic. It simply does not address the claim Plaintiffs assert.

V.     The Handgun Rostering Scheme Violates the Second Amendment.

Without recounting the entirety of Plaintiffs' cross-motion for summary judgment, incorporated here by reference and in any event before the Court, it bears mention here that the challenged provisions violate Second Amendment rights.

1.     *Categorical Violation of Access to Protected "Arms."*

As this Court has acknowledged, not every Second Amendment case must necessarily be decided under some means-ends scrutiny standard of review. *Pulley*, at *3-*4. *Heller*'s handgun ban might have been more pervasive than Defendant's, but structurally, the analysis here is no different. The action concerns a prohibition of certain articles. The Court cannot avoid asking whether these things are "arms" within the Second Amendment's meaning. If not, the case ends, as surely as would Second Amendment claims to non-arms (*e.g.*, cars, grapefruit) or unprotected arms (*e.g.* rocket launchers, bazookas). But if Plaintiffs' desired handguns *are* protected arms, the case also ends—with an injunction.

2.     *Substantial Burden*

Assuming *arguendo* that the Court first looks to see whether the law imposes a "substantial burden" on the claimed right, the answer is plainly "yes." Were the state, to borrow the language of Cal. Penal Code § 32000, to jail "any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends any" First Amendment-protected article, no court would hesitate to find a substantial burden on the exercise

of fundamental rights, regardless of whatever else the state chose not to prohibit. This language bars Plaintiffs' acquisition of the handguns they desire, which are protected by the Second Amendment. Heightened scrutiny would be required, were this case resolved under a standard of review.

3.    *Heightened Scrutiny*

Defendant exerts little effort showing how the handgun rostering scheme could comport with either strict or intermediate scrutiny. The effort fails.

As noted in support of Plaintiffs' motion, to the extent that means-ends scrutiny might be relevant here, the proper test would be strict scrutiny. Plaintiffs' SJ Br., 17-18. Strict scrutiny "requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Sanders County Republican Cent. Comm.* v. *Bullock*, 698 F.3d 741, 746 (9th Cir. 2012) (citations omitted). Obviously, the handgun rostering requirements cannot survive strict scrutiny. The state can advance handgun safety in other ways, *e.g.*, by imposing the educational requirements that it does, or even by reverting the roster to its original purpose—a mechanism for weeding out defective handguns.[5]

The notion that microstamping is so necessary to the resolution of crimes that there is no alternative but to require it—when this technology does not actually exist in the marketplace—is untenable. Indeed, the supposed safety benefits of the roster

---

[5]Plaintiffs seek an injunction against the entire rostering program, because many of its objectionable aspects, particularly its administrative requirements for listing and maintenance, do not appear severable. But contrary to Defendant's assertion, the Complaint's Prayer for Relief is not an all-or-nothing proposition. Without waiving any claims, it alternatively seeks "[a]ny other further relief as the Court deems just and appropriate," which enables the granting of partial relief should the Court find only some of the rostering requirements unconstitutional.

law are belied by the numerous exemptions afforded to individuals employed by law enforcement, the entertainment industry, people moving into the state, private party transfers of handguns already present in the state, and curios and relics.

And not every aspect of the roster obviously advances the state's regulatory interest. Safety is not advanced by barring the sale of handguns already proven "safe," or barring the testing of handguns that *would* be proven "safe," on account of purely administrative requirements. Since the state teaches consumers *not* to rely on chamber loaded indicators and magazine disconnect devices, requiring handguns to have these features actually impedes the state's safety interests.

For much the same reasons, the rostering law fails intermediate scrutiny.[6] While not as rigorous as strict scrutiny, intermediate scrutiny is nonetheless an exacting test that requires the government to show the challenged action is "'substantially related to an important governmental objective.'" *Clark* v. *Jeter*, 486 U.S. 456, 461 (1988). "[A] tight fit" between the regulation and the important or substantial governmental interest must be established— one "that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Bd. of Trs.* v. *Fox*, 492 U.S. 469, 480 (1989)). And "[s]ignificantly, intermediate scrutiny places the burden of establishing the required fit squarely upon the government." *Chester*, 628 F.3d at 683 (citing *Fox*, 492 U.S. at 480-81). The "justification must be genuine, not hypothesized or invented post hoc in response to litigation." *United States* v. *Virginia*, 518 U.S. 515, 533 (1996).

_____

[6]In a footnote, Defendant sets out a version of the intermediate scrutiny standard, and avers that the handgun roster law meets the standard, but does not actually argue why or how it does so.

Requiring, in the name of safety, features deemed dangerous by the state, and banning most people's access to massive numbers of perfectly functional and useful handguns, does not "tightly fit" any important state interests.

## VI. The Handgun Roster Law Violates Plaintiffs' Rights to Equal Protection.

Defendant claims that "at any given point in time, the roster of handguns certified for sale either makes a particular handgun available for purchase, or it does not," Def. SJ Br. at 19, suggesting that no similarly-situated individuals are treated differently with respect to the roster. "Because the UHA treats similarly situated people the same, it fails to trigger equal protection review at all." *Id.* This is simply false. As the Complaint, Plaintiffs' brief in support of their cross-motion, and the Penal Code make very clear, numerous individuals are exempted from the handgun roster's restrictions. If unrostered handguns are dangerous, they are dangerous to *everyone*—including law enforcement employees, actors, newcomers to the state, individuals who already possess these "unsafe" handguns, those who would acquire them through private party and familial transfer, and indeed, those who lawfully possess such guns today.

Because these classifications discriminate against individuals in the exercise of a fundamental right, rational basis review is unavailable.[7] Notably, Defendant asserts that the rational basis standard for dealing with the Act's classifications applies on the basis of *Silveira* v. *Lockyer*, 312 F.3d 1052 (9th Cir. 2002). While

---

[7]As noted supra and on Plaintiffs' motion, the Second Amendment obviously protects the acquisition of the firearms whose keeping and bearing the Amendment protects. No court would hold that restricting a book's sale does not offend the First Amendment because it "simply involves the regulation of commercial [book] sales." Def. SJ Br. 20.

Defendant helpfully notes that *Silveira* was abrogated by *Heller*, he misses the bigger picture: *Heller* overruled *Silveira*'s central holding that the Second Amendment does not secure an individual right to possess firearms for self-defense. That erroneous, overruled holding supplied *Silveira*'s basis for the application of rational basis review. *Silveira*, 312 F.3d at 1088. But that is not to say that *Silveira* is without value. Because even applying rational basis review, *Silveira* struck down an exemption from California's Assault Weapons Control Act allowing retired police officers to purchase, for private non-law enforcement purposes, guns barred as too dangerous to others. *Id.* at 1089-92.

For the same reason, the so-called "Unsafe Handgun Act" fails even rational basis review as a matter of equal protection. The Act's purpose either is or is not the advancement of public safety. It is not rational to privilege some individuals with "unsafe" handguns, but not others. Nor is it rational, in any event, to require "safety" mechanisms that the state teaches consumers to ignore, as their use may lead to a false sense of security and promote unsafe gun-handling habits.

CONCLUSION

Defendant's motion for summary judgment should be denied.

Dated: December 2, 2013          Respectfully submitted,

Alan Gura, Cal. Bar No.: 178221          Donald E.J. Kilmer, Jr., Cal. Bar No. 179986
Gura & Possessky, PLLC          Law Offices of Donald Kilmer, A.P.C.
105 Oronoco Street, Suite 305          1645 Willow Street, Suite 150
Alexandria, VA 22314          San Jose, CA 95125
703.835.9085/Fax 703.997.7665          408.264.8489/Fax 408.264.8487
alan@gurapossessky.com          Don @DKLawOffice.com

/s/ Alan Gura_____          /s/ Donald E.J. Kilmer, Jr._____
Alan Gura          Donald E.J. Kilmer, Jr.

          Attorneys for Plaintiffs