1  KAMALA D. HARRIS
   Attorney General of California
2  TAMAR PACHTER, State Bar No. 146083
   Supervising Deputy Attorney General
3  ANTHONY R. HAKL, State Bar No. 197335
   Deputy Attorney General
4   1300 I Street, Suite 125
    P.O. Box 944255
5   Sacramento, CA 94244-2550
    Telephone: (916) 322-9041
6   Fax: (916) 324-8835
    E-mail: Anthony.Hakl@doj.ca.gov
7  *Attorneys for Defendant Stephen Lindley*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVAN PEÑA, ROY VARGAS, DOÑA CROSTON, BRETT THOMAS, SECOND AMENDMENT FOUNDATION, INC. and THE CALGUNS FOUNDATION, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**STEPHEN LINDLEY,**<br><br>Defendant. | Case No. 2:09-CV-01185-KJM-CMK<br><br>**OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT BY DEFENDANT STEPHEN LINDLEY**<br><br>Date: December 16, 2013<br>Time: 10:00 a.m.<br>Dept.: Courtroom 3, 15th floor<br>Judge: The Honorable Kimberly J. Mueller<br>Trial Date: None at this time<br>Action Filed: May 1, 2009 |

# TABLE OF CONTENTS

                                                                                                                **Page**

Argument ................................................................................................................................. 2

    I.    The Unsafe Handgun Act passes constitutional review under the test for Second Amendment challenges announced by the Ninth Circuit in *United States* v. *Chovan*. ............................................................................................ 2

        A.    The two-step Second Amendment inquiry announced in *Chovan* .............. 2

            1.    Step one in *Chovan* ............................................................................. 3

            2.    Step two in *Chovan* ............................................................................. 3

        B.    Application of the *Chovan* test to the law at issue in this case .................. 5

            1.    Step one: the UHA does not burden conduct protected by the Second Amendment. .............................................................. 5

            2.    Step two: the UHA survives constitutional scrutiny ....................... 7

    II.    The Unsafe Handgun Act does not violate equal protection................................ 10

Conclusion ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Holder*
   673 F.3d 1089 (9th Cir. 2012) ............................................................................................. 9

*Coal. of New Jersey Sportsmen, Inc. v. Whitman*
   44 F. Supp. 2d 666 (D. N.J. 1999) ...................................................................................... 11

*Dearth v. Holder*
   893 F. Supp. 2d 59 (D. D.C. 2012) ..................................................................................... 11

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ....................................................................................................... *passim*

*Fiscal v. City and County of San Francisco*
   158 Cal. App. 4th 895 (Ct. App. 2008) ............................................................................ 9, 10

*Heller v. District of Columbia*
   670 F.3d 1244 (D.C. Cir. 2011) ......................................................................................... 4, 6

*International Bhd. of Teamsters v. United States*
   431 U.S. 324 (1977) ............................................................................................................ 10

*Kwong v. Bloomberg*
   723 F.3d 160 (2d Cir. 2013) .................................................................................................. 8

*Louis v. McCormick & Schmick Restaurant Corp.*
   460 F. Supp. 2d 1153 (C.D. Cal. 2006) ................................................................................ 9

*Peruta v. County of San Diego*
   758 F. Supp. 2d 1106 (S.D. Cal. 2010) ........................................................................... 8, 11

*Peterson v. LaCabe*
   783 F. Supp. 2d 1167 (D. Colo. 2011) ............................................................................... 11

*Richards v. Cnty. of Yolo*
   No. 09-1235, 821 F. Supp. 2d 1169, 2011 WL 1885641 (E.D. Cal. May 16, 2011) ............ 8

*Schweiker v. Wilson*
   450 U.S. 221 (1981) ............................................................................................................ 11

*Scocca v. Smith*
   No. C–11–1318 EMC, 2012 WL 2375203 (N.D. Cal. Jun. 22, 2012) .................................. 6

*Silveira v. Lockyer*
   312 F.3d 1052 (9th Cir. 2002) ....................................................................................... 10, 11

## TABLE OF AUTHORITIES
**(continued)**

**Page**

*United States v. Chester*
628 F.3d 673 (4th Cir. 2010) .......... 2, 4

*United States v. Chovan*
No. 11-50107, --- F.3d ---, 2013 WL 6050914 (9th Cir. Nov. 18, 2013) .......... *passim*

*United States v. Marzzarella*
614 F.3d 85 (3d Cir. 2010) .......... *passim*

*United States v. Skoien*
614 F.3d 638 (7th Cir. 2010) .......... 8

*United States v. Vongxay*
594 F.3d 1111 (9th Cir. 2010) .......... 6

*Wedbush, Noble, Cooke, Inc. v. S.E.C.*
714 F.2d 923 (9th Cir. 1983) .......... 2

*Yong v. Immigration and Naturalization Service*
208 F.3d 1116 (9th Cir. 2000) .......... 2

**STATUTES**

United States Code, Title 18
§ 922(g)(9) .......... *passim*

California Penal Code
§ 24510 .......... 7
§ 32000(a) .......... 11
§ 32000(b)(3) .......... 11
§ 32310 .......... 7
§ 33410 .......... 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Second Amendment .......... *passim*

**COURT RULES**

Federal Rules of Evidence
Rule 201 .......... 9

## INTRODUCTION

In their motion for summary judgment, plaintiffs argue that California's Unsafe Handgun Act (UHA, or the Act) is unlawful under *District of Columbia v. Heller*, 554 U.S. 570 (2008) because, as plaintiffs put it, the Act is "a massive ban on handguns whose possession and use is secured by the Second Amendment." (Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. for Summ. J. (Pls.' Mem.) at p. 9.)[1] But the UHA, unlike the law at issue in *Heller*, is hardly a "ban" on handguns, much less a massive one. Also unlike *Heller*, the UHA does not concern the "possession and use" of handguns. Rather, it regulates the commercial sale of handguns. And while *Heller* does contain language indicating that the Second Amendment extends to handguns in general because they are "in common use" for "lawful purposes," 554 U.S. at 624-27, unlike the law in *Heller* the UHA is not a blanket restriction on handguns as an entire class. The Act requires only that certain handguns have certain safety features.

Beyond these deficiencies, plaintiffs' entire argument is premised on the notion that there is *no* standard of review, or "means-end balancing test," that the Court should apply in this case. (Pls.' Mem. at p. 11.) As plaintiffs put it, "it is enough" that the Second Amendment protects handguns; thus, the UHA violates the Second Amendment. *Id*. We now have certainty that this analytical approach is wrong. After the parties filed their opening briefs in this case, the Ninth Circuit published its opinion in *United States v. Chovan*, No. 11-50107, --- F.3d ---, 2013 WL 6050914 (9th Cir. Nov. 18, 2013). In *Chovan*, the Ninth Circuit joined a number of other circuits in holding that a specific two-step analytical framework applies to Second Amendment challenges. As explained in detail below, and as argued by defendant Stephen Lindley in his opening brief, *Chovan* directs that this Court's analysis of the UHA first involve an assessment of any burden the Act imposes on the Second Amendment right. Only if there is a sufficient burden does the Court then apply an appropriate standard of constitutional scrutiny. The UHA easily withstands review under this framework. Similarly, plaintiffs' equal protection claims lack merit. Accordingly, plaintiffs' motion for summary judgment should be denied.

---

[1] The citations herein to plaintiffs' opening brief are to plaintiffs' *corrected* memorandum of points and authorities filed on November 2, 2013, unless otherwise specified. (Doc. no. 67-1.)

1

# ARGUMENT

**I. THE UNSAFE HANDGUN ACT PASSES CONSTITUTIONAL REVIEW UNDER THE TEST FOR SECOND AMENDMENT CHALLENGES ANNOUNCED BY THE NINTH CIRCUIT IN *UNITED STATES V. CHOVAN*.**

**A. The Two-Step Second Amendment Inquiry Announced in *Chovan*[2]**

*Chovan* involved a constitutional challenge to 18 U.S.C. § 922(g)(9), the federal statute prohibiting persons convicted of domestic violence misdemeanors from possessing firearms for life. *Chovan*, 2013 WL 6050914 at *1. Relying on *Heller*, Mr. Chovan contended that section 922(g)(9) violates the Second Amendment because it impermissibly restricts the individual and fundamental right to bear arms. *Id*. at *4.

Before it could consider the merits of Mr. Chovan's claims, the court had to decide the applicable standard of review for Second Amendment challenges, an issue previously undecided in the Ninth Circuit. After considering the approach of other circuits, the court decided to "adopt the two-step Second Amendment inquiry undertaken by the Third Circuit in [*United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)], and the Fourth Circuit in [*United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)], among other circuits." *Chovan*, 2013 WL 6050914 at *8. More specifically, the two-step Second Amendment inquiry adopted by the Ninth Circuit "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny. *Chester*, 628 F.3d at 680; *see also Marzzarella*, 614 F.3d at 89." *Id*. The court explained that "this two-step inquiry reflects the Supreme Court's holding in *Heller* that, while the Second Amendment protects an individual right to keep and bear arms, *the scope of that right is not unlimited*." *Id*. (citing *Heller*, 554 U.S. at 626–27) (italics added). The court also explained that the two-step inquiry is "consistent with

---

[2] The Ninth Circuit has held that even where a mandate has not yet issued, the judgment filed by the panel "is nevertheless final for such purposes as stare decisis, and full faith and credit, unless it is withdrawn by the court." *Wedbush, Noble, Cooke, Inc. v. S.E.C.*, 714 F.2d 923, 924 (9th Cir. 1983). *See Yong v. Immigration and Naturalization Service*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000) ("once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it"). The Ninth Circuit filed its published opinion and entered judgment in *Chovan* on November 18, 2013. 2013 WL 6050914 at *1. Accordingly, it is controlling here.

the approach taken by other circuits considering various firearms restrictions post-*Heller*." *Id*. (citing cases).

### 1. Step One in *Chovan*

Applying the two-step inquiry in *Chovan*, the Ninth Circuit found at the first step that section 922(g)(9) burdened Mr. Chovan's Second Amendment right. *Chovan*, 2013 WL 6050914 at *8. The Ninth Circuit rejected the government's attempt to include section 922(g)(9) within the category of "longstanding prohibitions on the possession of firearms by felons and the mentally ill," which *Heller* characterized as "presumptively lawful." 554 U.S. at 626-27. There was a lack of evidence in the record showing that firearm restrictions regarding "violent offenders" were "longstanding," and more importantly the court found, a lack of evidence showing longstanding restrictions on "domestic violence misdemeanants." 2013 WL 6050914 at *8. Significantly, the court distinguished felony convictions for crimes like murder, manslaughter, rape, mayhem, kidnapping, and burglary (i.e., the kinds of convictions the language in *Heller* does encompass) from misdemeanor convictions for domestic violence. *Id*. Due to this lack of evidence, the court was left to assume "'that [Chovan]'s Second Amendment rights are intact and that he is entitled to some measure of Second Amendment protection to keep and possess firearms in his home for self-defense.'" *Id.* at *9 (quoting *Chester*, 628 F.3d at 681-82) (alterations in original).

### 2. Step Two in *Chovan*

At the second step of the inquiry, the panel in *Chovan* had to decide precisely what level of scrutiny applied. The court stated that "the level of scrutiny should depend on "(1) 'how close the law comes to the core of the Second Amendment right,' and (2) 'the severity of the law's burden on the right.'" 2013 WL 6050914 at *9 (citation omitted).

With respect to the core of the Second Amendment right, *Chovan* explained that the core is "'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" 2013 WL 6050914 at *9 (quoting *Heller*, 554 U.S. at 635). The court found that "Section 922(g)(9) does not implicate this core Second Amendment right because it regulates firearm possession for

3

individuals with criminal convictions," as opposed to law-abiding, responsible citizens who wish to possess and carry a weapon for self-defense. 2013 WL 6050914 at *9

On the other hand, the court found that "[t]he burden the statute places on domestic violence misdemeanants' rights . . . is quite substantial." 2013 WL 6050914 at *10. The court explained that section 922(g)(9) "amounts to a 'total prohibition' on firearm possession for a class of individuals — in fact, a 'lifetime ban.'" *Id*. Significantly, the court contrasted this total prohibition with less severe regulations that "merely regulate the *manner* in which persons may exercise their Second Amendment rights." *Id*. (italics in original). Specifically, *Chovan* cited to the regulations at issue in *Marzzarella*, 614 F.3d at 97, which concluded that a regulation prohibiting obliterated serial numbers "does not severely limit the possession of firearms" because "[i]t leaves a person free to possess any otherwise lawful firearm he chooses," and *Heller v. District of Columbia*, 670 F.3d 1244, 1251-58 (D.C. Cir. 2011) ( "*Heller II* "), which reasoned that the District of Columbia's gun registration requirements were not a severe burden because they do not "prevent[] an individual from possessing a firearm in his home or elsewhere." *Id*.

*Chovan* therefore concluded that intermediate scrutiny was the appropriate level of review in that case, and proceeded to consider the parameters of that standard. 2013 WL 6050914 at *10. In formulating the intermediate scrutiny standard, *Chovan* acknowledged that courts have used various terminology to describe the standard, but "all forms of the standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Id*.; *see Chester*, 628 F.3d at 683 (intermediate scrutiny standard requires "reasonable fit" between challenged regulation and "substantial" government objective); *Marzzarella*, 614 F.3d at 98 (fit between challenged regulation and asserted objective must be "reasonable, not perfect.").

Finally, applying intermediate scrutiny the Ninth Circuit found that section 922(g)(9) survived both on its face and as applied to Mr. Chovan. 2013 WL 6050914 at *10. More specifically, *Chovan* found that the provision advances "the important government objective" of "preventing domestic gun violence." *Id*. at *10-12. Considering the text of the statute, the legislative history and various studies of the relationship between domestic violence and firearms

4

Opposition to Plaintiffs' Motion for Summary Judgment by Defendant Stephen Lindley
(2:09-CV-01185-KJM-CKD)

– and relying on other courts' citations to those materials – *Chovan* further found that the provision's "prohibition on gun possession by domestic violence misdemeanants is substantially related to the important government interest of preventing domestic gun violence." *Id*.

### B. Application of the *Chovan* Test to the Law At Issue in This Case

Under the test recently announced in *Chovan*, this Court should first consider whether the UHA "burdens conduct protected by the Second Amendment." 2013 WL 6050914 at *8. If so, this Court should then apply "an appropriate level of scrutiny." *Id*. As explained below, the UHA does not burden any conduct protected by the Second Amendment. Thus, this Court's analysis should end at step one of the *Chovan* inquiry. But even if this Court were to engage in step two of the inquiry, the UHA would survive constitutional scrutiny.

#### 1. Step One: The UHA does not burden conduct protected by the Second Amendment.

The UHA does not burden the Second Amendment rights of plaintiffs or anyone else in California. Handguns are widely available in this state. There have been well over one million handgun transactions in California since plaintiffs filed this lawsuit, and that number continues to grow at a rate of hundreds of thousands of handgun transactions annually. (*See* Decl. of Stephen Lindley In Supp. of Def.'s Mot. for Summ. J. ¶ 4.) The handgun roster itself lists more than one thousand different makes and models of handguns available for purchase. (*Id*. ¶ 3.) The individual plaintiffs in this case admit to already owning handguns suitable for self-defense. And they admit to being able to acquire still more handguns suitable for self-defense. (*See* Pl. Ivan Peña's Resp. to Def. Stephen Lindley's First Set of Reqs. for Admis. at 2; Pl. Roy Vargas's Resp. to Def. Stephen Lindley's First Set of Reqs. for Admis. at 2; Pl. Doña Croston's Resp. to Def. Stephen Lindley's First Set of Reqs. for Admis. at 2; Pl. Brett Thomas's Resp. to Def. Stephen Lindley's First Set of Reqs. for Admis. at 2.) These facts show that the UHA does not burden "'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *Chovan*, 2013 WL 6050914 at *9 (quoting *Heller*, 554 U.S. at 635).

Moreover, the UHA is nothing like the total firearm prohibition struck down in *Heller*. Rather, it is like those firearms regulations that *Heller* endorsed because they do not burden the

5

Second Amendment right. More specifically, on its face the UHA is a "law[] imposing conditions and qualifications on the commercial sale of arms," and therefore "presumptively lawful." *Heller*, 554 U.S. at 626-27; *see also United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (upholding federal felon-in-possession statute because it is "presumptively lawful"). The safety feature requirements of the UHA are also like the safety laws that *Heller* permits – laws like gunpowder-storage laws, which "do not remotely burden the right of self-defense," and "laws regulating the storage of firearms to prevent accidents." *Heller*, 554 U.S. at 632. The UHA simply does not prohibit the possession or use of firearms in any fashion.

The UHA is also similar to other firearms regulations that courts have upheld because they do not burden the Second Amendment right and leave individuals with alternatives for acquiring firearms for self-defense. *See, e.g., Marzzarella*, 614 F.3d at 97 (regulation prohibiting obliterated serial numbers "does not severely limit the possession of firearms" because "[i]t leaves a person free to possess any otherwise lawful firearm"); *Heller II*, 670 F.3d at 1251-58 (upholding gun registration, assault weapon and large capacity magazine regulations where individuals could still possess other firearms for self defense); *Scocca v. Smith*, No. C–11–1318 EMC, 2012 WL 2375203 at *7 (N.D. Cal. Jun. 22, 2012) ("[a] firearm law or regulation imposes a substantial burden on Second Amendment rights if the law or regulation bans law-abiding people from owning firearms or leaves them without adequate alternatives for acquiring firearms for self-defense"). Again, the evidence before this Court demonstrates that plaintiffs already possess handguns and have alternatives for acquiring additional handguns.

Plaintiffs' entire argument in support of their Second Amendment claim is that the UHA is unlawful because the Second Amendment categorically protects handguns, a kind of weapon that is "in common use" for "lawful purposes." *Heller*, 554 U.S. at 624. But that argument depends on a reading of the UHA that is too broad. The UHA's focus is narrower than handguns as an entire class of firearms; its focus is certain handgun *safety features*. To be even more precise, the UHA encompasses handgun safety devices, firing requirements, drop safety requirements, chamber load indicators, magazine disconnect mechanisms and microstamping. Thus, plaintiffs are arguing that they have a constitutional right to purchase a handgun without these safety

6

features. But no court has recognized a constitutional right to purchase any handgun of one's choice regardless of its features.[3]

Finally, plaintiffs' "common use" argument is similar to the argument rejected by the Third Circuit in *Marzzarella*, which upheld the federal law requiring firearms to have serial numbers. In that case, *Marzzarella* argued that the Second Amendment protects weapons without serial numbers because they were "in common use" at the time of ratification. 614 F.3d at 93. But the court explained: "[That] argument rests on the conception of unmarked firearms as a constitutionally recognized class of firearms, in much the same way handguns constitute a class of firearms. That premise is unavailing." *Id*. The same can be said here. While handguns in general may be a constitutionally recognized class of firearms under *Heller*, handguns without chamber load indicators have not been so recognized. Nor have handguns without safety devices. Nor have handguns without magazine disconnect mechanisms, and so on.

For these reasons, the UHA and its safety feature requirements do not burden the Second Amendment right. Therefore, this Court's analysis should end at step one of the *Chovan* inquiry. The Court should deny plaintiffs' motion for summary judgment.

## 2. Step Two: The UHA Survives Constitutional Scrutiny

If for some reason the Court finds that the UHA burdens Second Amendment rights and proceeds to step two, the UHA withstands constitutional scrutiny. In this regard, it is worth recalling that *Chovan* applied intermediate scrutiny to section 922(g)(9) because, while it did not implicate the "core" of the Second Amendment right, it nevertheless "substantially burdened" the right because it totally prohibited a class of people from possessing and using firearms for life. *Chovan*, 2013 WL 6050914 at *10. Like the law at issue in *Chovan*, the UHA does not implicate the core of the Second Amendment. It does not concern possession and use of firearms generally,

---

[3] Indeed, taken to its logical conclusion, plaintiffs' position would require constitutional protection for *any* firearm that might be called a "handgun," even if it had features allowing for a large-capacity magazine or sound suppressor (i.e., a silencer), or features disguising it as something other than a handgun, for example. These features are generally unlawful in California. *See* Cal. Penal Code § 32310 (prohibition on large-capacity magazines); § 33410 (prohibition on silencers); § 24510 (unlawful to possess firearm not immediately recognizable as firearm).

much less possession and use *in the home*. See *Heller*, 554 U.S. at 635 (core of Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home"). On the other hand, unlike the law in *Chovan*, the UHA does *not* substantially burden the Second Amendment right. It does not prohibit a class of people from using or possessing firearms for life. On the contrary, under the UHA plaintiffs already lawfully possess and use handguns and, like all law-abiding Californians, plaintiffs remain free to purchase and use additional handguns for self defense. Thus, while Lindley demonstrates below that the UHA survives the level of scrutiny articulated in *Chovan*, the differences between section 922(g)(9) and the UHA justify the application of a level of scrutiny *less* rigorous than the one applied in *Chovan*. See *Chovan*, 2013 WL 6050914 at *8 (directing courts to apply "an *appropriate* level of scrutiny" if challenged law burdens Second Amendment)(italics added).

In any event, even under the intermediate scrutiny as articulated in *Chovan*, the UHA's handgun safety feature requirements advance the interests of improving public safety by reducing firearm violence and reducing crime. Courts have consistently recognized these to be significant, substantial and important government interests. And they have done so in the context of considering challenges to gun laws. *See, e.g., Kwong v. Bloomberg*, 723 F.3d 160, 168 (2d Cir. 2013) ("governmental interests in public safety and crime prevention" are "substantial, indeed compelling"); *Marzzarella*, 614 F.3d at 98 ("preserving the ability of law enforcement to conduct serial number tracing—effectuated by limiting the availability of untraceable firearms—constitutes a substantial or important interest"); *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) ("preventing armed mayhem" is "an important governmental objective"); *see also Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1117 (S.D. Cal. 2010) ("Defendant has an important and substantial interest in public safety and in reducing the rate of gun use in crime."); *Richards v. Cnty. of Yolo*, No. 09-1235, 821 F. Supp. 2d 1169, 1175, 2011 WL 1885641, at *4 (E.D. Cal. May 16, 2011) (maintaining public safety and preventing gun-related crime and death of citizens are important interests).

The face of the UHA, its legislative history and common sense also show that there is a "reasonable fit" between these interests and the Act's handgun safety feature requirements.

8

*Chovan*, 2013 WL 6050914 at *10. In enacting the provisions regarding safety devices, firing requirements, and drop safety requirements, the California Legislature was targeting the connection between cheaply made, unsafe handguns and injuries to firearms operators and crime. The legislative history shows that reducing the number of cheaply made guns protects firearm owners and innocent bystanders from a product that may inadvertently injure them and reduces gun availability to criminals, thereby reducing crime. See Assem. Com. on Public Safety, Analysis of Senate Bill No. 15 (1999-2000 Reg. Sess.) June 8, 1999; Senate Com. on Public Safety, Analysis of Senate Bill No. 15 (1999-2000 Reg. Sess.) April 6, 1999.[4] California courts have relied on this legislative history. *See Fiscal v. City and County of San Francisco*, 158 Cal. App. 4th 895, 913 (Ct. App. 2008) ("one of the goals of the UHA included curbing handgun crime, as well as promoting gun safety.").

The legislative history, and the academic studies mentioned therein, also show that chamber load indicators and magazine disconnect mechanisms are important safety features that help prevent accidental discharges and injuries. See Assem. Com. on Appropriations, Analysis of Senate Bill No. 489 (2002-2003 Reg. Sess.) August 20, 2003; Assem. Com. on Public Safety, Analysis of Senate Bill No. 489 (2002-2003 Reg. Sess.) July 1, 2003.[5]

It has also been recognized that microstamping is an important crime-fighting tool because it allows law enforcement officials to trace spent cartridges found at crime scenes, thereby reducing crime and increasing public safety. In passing the microstamping law, the Legislature recognized that "California has an enormous and diverse problem of unsolved homicides committed with handguns." Senate Com. on Public Safety, Analysis of Assembly Bill No. 1471 (2007-2008 Reg. Sess.) June 26, 2007 at page H. Microstamping technology "give[s] law

---

[4] These two pieces of legislative history are attached as Exhibits A and B to the declaration of the undersigned filed in support of this opposition. Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the legislative history of state statutes. *Anderson v. Holder*, 673 F.3d 1089, 1094, n.1 (9th Cir. 2012); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d 1153, 1155, n.4 (C.D. Cal. 2006). Lindley respectfully requests that this Court take judicial notice of the legislative history cited here.

[5] This legislative history is attached the declaration of Joel Tochterman filed in support of Lindley's motion for summary judgment.

1 enforcement a tool that will provide evidence to help investigate, arrest and convict more people
2 who use semiautomatic handguns in crimes. It will provide rapid leads in the first crucial hours
3 after a homicide." *Id*. at page I. *See also* Assem. Com. on Appropriations, Analysis of Assembly
4 Bill No. 1471 (2007-2008 Reg. Sess.) May 16, 2007; Assem. Com. on Public Safety, Analysis of
5 Assembly Bill No. 1471 (2007-2008 Reg. Sess.) April 17, 2007.[6] California courts have also
6 recognized the importance of microstamping. *See Fiscal*, 158 Cal. App. 4th at 914
7 (microstamping "will provide important investigative leads in solving gun-related crimes by
8 allowing law enforcement personnel to quickly identify information about the handgun from
9 spent cartridge casings found at the crime scene"). The Third Circuit similarly has acknowledged
10 the importance of firearm serial numbers. *Marzzarella*, 614 F.3d at 98 (prohibiting obliterated
11 serial number is substantially related to "preserving the ability of law enforcement to conduct
12 serial number tracing—effectuated by limiting the availability of untraceable firearms").

For these reasons, even if the Court reaches step two in the *Chovan* analysis, the UHA would survive intermediate scrutiny: there is a reasonable fit between the UHA's handgun safety feature requirements and the important government interests of improving public safety by reducing firearm violence and reducing crime. Accordingly, plaintiffs' motion for summary judgment should be denied for failure to demonstrate a Second Amendment violation.

## II. THE UNSAFE HANDGUN ACT DOES NOT VIOLATE EQUAL PROTECTION

Plaintiffs' equal protection claim also lacks merit. For "state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." *Silveira v. Lockyer*, 312 F.3d 1052, 1088 (9th Cir. 2002), *abrogated on other grounds by Heller*, 554 U.S. 570. Yet plaintiffs have offered no evidence that the Act treats similarly situated individuals differently. It is plaintiffs' burden to make that prima facie showing. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

---

[6] The committee analyses of the A.B. 1471, the microstamping law, are attached as Exhibits C, D and E to the declaration of the undersigned filed in support of this opposition.

Plaintiffs seem to suggest that for purposes of the equal protection analysis they are similarly situated to law enforcement officials, who are authorized to buy "off-roster" handguns under one of the exceptions of the UHA. *See* Cal. Penal Code § 32000(b)(3). This suggestion is unavailing. In light of their experience, training and special needs for firearms, law enforcement officers are not similarly situated to plaintiffs. *Silveira*, 312 F.3d at 1089 ("It is manifestly rational for at least most categories of peace officers to possess and use firearms more potent than those available to the rest of the populace in order to maintain public safety."); *see also Coal. of New Jersey Sportsmen, Inc. v. Whitman*, 44 F. Supp. 2d 666, 686-87 (D. N.J. 1999) (upholding assault weapons ban exception for law enforcement officers).

Plaintiffs also suggest that they are being treated differently from out-of-state individuals. This comparison is also unavailing. First, the UHA treats residents and non-residents alike. Like nonresidents, who retain their right to own off-roster handguns even after moving into the state, *see* Cal. Penal Code § 32000(a), nothing in the Act requires plaintiffs to relinquish any off-roster handgun they own. As discussed above, the Act's focus is the commercial sale of firearms, not possession or use. Second, plaintiffs have not shown how they are similarly situated to nonresidents, which they are not. *See Peterson v. LaCabe*, 783 F. Supp. 2d 1167, 1178 (D. Colo. 2011) (rejecting equal protection challenge to concealed handgun licensing requirements because residents and non-residents not similarly situated); *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1119 (S.D. Cal. 2010) ("Because residents and non-residents are situated differently, the residency requirement of Defendant's policy does not violate equal protection."); *see also Dearth v. Holder*, 893 F. Supp. 2d 59, 74 (D. D.C. 2012) ("Dearth has provided no support for his contention that expatriate U.S. citizens and U.S. citizens residing in the United States are similarly situated aside from the fact of common citizenship.").

Finally, even if equal protection review were triggered, as a law that neither impacts a fundamental right nor classifies persons based on protected characteristics, see *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981), the UHA would withstand rational basis review. (*See* Def. Stephen Lindley's Memo. of P. & A. in Supp. of Mot. for Summ. J. at 18-20.)

11

1 | Accordingly, this Court should deny plaintiffs' motion for summary judgment on their
2 | equal protection claim.

## CONCLUSION

For the reasons set forth above, the Court should deny plaintiffs' motion for summary judgment in its entirety.

Dated: December 2, 2013

Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/S/ ANTHONY R. HAKL

ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant Stephen Lindley*

SA2009310413
11227419.doc