**EXHIBIT A**

A000001

BILL ANALYSIS

```
                                                   SB 15
                                                   Page  1
```

Date of Hearing:  June 8, 1999
Counsel:          Gregory Pagan

```
              ASSEMBLY COMMITTEE ON PUBLIC SAFETY
                       Mike Honda, Chair

           SB 15 (Polanco) - As Amended:  June 2, 1999
```

SUMMARY  :  Makes it a misdemeanor for any person in California to manufacture, import for sale, offer for sale, give, or lend any "unsafe handgun", as defined, with certain specific exceptions. Specifically, _this bill_  :

1) Makes it a misdemeanor, punishable by up to one year in the county jail, beginning January 1, 2001 for any person in California who manufactures or causes to be manufactured, imports into California for sale, keeps for sale, offers or exposes for sale, gives or lends any unsafe handgun, except as specified.

2) Defines "unsafe handgun" to mean any pistol, revolver or firearm capable of being concealed upon a person that does not have a specified safety device, does not meet specified firing requirements, or does not meet specified drop safety requirements.

3) Requires any pistol, revolver, or other firearm capable of being concealed upon a person manufactured in California, imported into California for sale, kept for sale, or offered or exposed for sale to be tested by an independent laboratory certified by the Department of Justice (DOJ) meets or exceeds specified standards defining unsafe handguns.

4) Requires the DOJ to certify laboratories to verify compliance with the specified standards defining unsafe handguns on or before July 1, 2,000.

5) Requires every person licensed to manufacture firearms who manufactures firearms in California, and every person who imports firearms into California for sale, keeps for sale, or offers or exposes for sale any firearm to certify under penalty of perjury that every model, kind, class, style, type of pistol, revolver, or other firearm capable of being

```
                                                   SB 15
                                                   Page  2
```

concealed upon a person that he or she manufactures or imports, keeps or exposes for sale is not a prohibited unsafe handgun.

6) Requires the DOJ on and after January 1, 2001 to compile publish, and thereafter maintain, a roster listing all pistols, revolvers, and other firearms capable of being concealed upon a person that are not unsafe handguns by the manufacturer, model number and model name.

7) Authorizes the DOJ to charge every person who manufactures, imports into California for sale, offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon a person an annual fee not exceeding the costs of preparing, publishing, and maintaining the roster.

8) Exempts from limitations:  (a) prototypes which are to be tested by an independent laboratory to determine if the handgun is prohibited by this bill; (b) the handling of a handgun by persons authorized to determine if the weapon is prohibited; (c) firearms listed as curios or relics by federal law; and, (d) the sale, purchase, or possession of any handgun by specified law enforcement agencies or sworn members of these agencies when the sworn member has written authorization from the employing agency.

9) Exempts the sale loan or transfer of any firearm between private parties through dealers or law enforcement agencies, between private parties exempt from the requirement that the transfer be through a dealer or law enforcement agency, firearms listed as curios or relics, the delivery or return of a firearm for the purposes of repair, and the return of a firearm by a licensed dealer when the firearm was delivered for the purposes of a consignment sale or as collateral for a pawnbroker loan.

10) States that it is the Legislature's intent that the DOJ

pursue an internal loan from special fund revenues available to the DOJ to cover start-up costs for the program established pursuant to this bill, and any loan shall be repaid with the proceeds of fees collected under that program within six months.

11) States that nothing in this bill shall require or prohibit any local ordinance that places a more stringent requirement

---

SB 15
Page 3

upon the manufacture, importation, transfer, sale, or possession of handguns.

EXISTING LAW:

1) Provides for licensing and regulation of all firearm dealers and manufacturers in California. (Penal Code Sections 12071 and 12085.)

2) States that it is an alternate felony/misdemeanor punishable by 16 months, 2 or 3 years in the state prison or by up to one year in the county jail to manufacture, cause to be manufactured, import into California, keep for sale, offer or expose for sale, give, lend or possess specified prohibited firearms. (Penal Code Section 12020 (a).)

3) Provides that perjury is willfully stating under oath a material fact that one knows to be false, either orally or in writing, and is punishable by two, three, or four years in the state prison. (Penal Code Sections 118 and 126.)

FISCAL EFFECT : Unknown

COMMENTS :

1) Author's Statement . According to the author, "SB 15 is a common sense responsible gun law. It requires that weapons fire when they are supposed to and that they not fire when they're dropped. The drop test is based on the United States DOJ quality standards for law enforcement weapons and the misfire test is a slightly more lenient standard than currently used by law enforcement agencies. The tests are fair and reasonable for weapons sold to members of the public for self-protection. If a weapon is not reliable for self-defense, it has no business being sold in California.

"SB 15 would require any handgun manufactured in California, imported into the State of California for sale, kept for sale or exposed for sale, given or lent, meet these basic standards. The Attorney General's Office would be required to certify independent labs that would test weapons that manufacturers wished to sell in California. If they failed to pass the test it would be a misdemeanor to manufacture or sell the weapon in our state."

---

SB 15
Page 4

2) Definition of "Unsafe Handgun" . This bill defines an "unsafe handgun" as follows: (a) does not have a requisite safety device, (b) does not meet specified firing tests, and (c) does not meet a specified drop safety test.

  a) Required Safety Device . This bill requires that a revolver have a safety device that, either automatically in the case of a double-action firing mechanism, or by manual operation in the case of a single-action firing mechanism, causes the hammer to retract to a point where the firing pin does not rest upon the primer of the cartridge or in the case of a pistol have a positive manually operated safety device.

  b) Firing Test . In order to meet the "firing requirements" under this bill, the manufacturer must submit three unaltered handguns, of the make and model for which certification is sought, to an independent laboratory certified by the Attorney General. The laboratory shall fire 600 rounds from each gun under certain conditions. A handgun shall pass the test if each of the three test guns fires the first 20 rounds without a malfunction, and fires the full 600 rounds without more than 6 malfunctions and without any crack or breakage of an operating part of the handgun that increases the risk of injury to the user.

"Malfunction" is defined as a failure to properly feed, fire or eject a round; failure of a pistol to accept or reject a manufacturer-approved magazine; or failure of a pistol's slide to remain open after a manufacturer approved magazine has been expended.

c) Drop Test . This bill provides that at the conclusion of the firing test, the same three manufacturer's handguns must undergo and pass a "drop safety requirement" test. The three handguns are dropped a specified number of times, in specified ways, with a primed case (no powder or projectile) inserted into the handgun, and the primer is examined for indentations after each drop. The handgun passes the test if each of the three test guns does not fire the primer.

3)Exemptions . The misdemeanor penalties specified in this bill do not apply to a handgun imported as a prototype for the purpose of laboratory testing; where it is imported or loaned to determine whether the weapon is prohibited; if it is listed

---

SB 15
Page 5

as a curio or relic under federal law; or where the sale to, purchase by, or possession of any handgun by specified law enforcement agencies, or sworn members of these agencies when the sworn member is has written authorization from the employing agency. Also, this bill does not apply to the private sale, loan, or transfer between private parties through a licensed dealer, or law enforcement agency; an infrequent transfer, as defined; the delivery or return of a handgun for the purpose of service or repair; the return of a handgun that was delivered to a licensed dealer or pawnbroker for the purposes of consignment sale or as collateral for a loan; or for "old west" single-action revolvers and replicas of those revolvers.

4)Laboratory Certification . This bill provides that on or before July 1, 2000, the DOJ shall certify laboratories to verify compliance with the standards established by this bill, and the DOJ may charge a fee for certification not exceeding the costs of certification.

This bill allows the DOJ to charge every person who is a manufacturer of firearms in California, imports firearms into California for the purpose of sale, or offers for sale a pistol, revolver, or handgun capable of being concealed upon a person in California, an annual fee not exceeding the costs of preparing and maintaining the roster of firearms deemed not to be unsafe.

This bill also provides that the certified testing laboratory shall, at the expense of the manufacturer or importer, test the submitted firearm.

5)Prior Legislation . SB 1500 (Polanco), of the 1997-98 Legislative Session, was almost identical to this bill. SB 1500 was vetoed by the Governor. The Governor stated in part:

"The bill gives the DOJ six months to find and certify laboratories to perform safety tests. Once laboratories are identified, handgun manufacturers wishing to sell their products in California would be required to submit three prototypes of each model for testing. Only handguns passing the test during the following six months would be certified and placed on the initial DOJ roster. All other handguns would be presumed to be unsafe subject to penalty under this bill and remain so unless and until they were certified to

---

SB 15
Page 6

have passed the test.

"The author was advised that this Administration could accept both the premise of safety testing and the specific safety tests proposed, provided that the bill be made prospective, impacting handguns manufactured or sold new, after January 1, 2000. The author declined to amend the bill, insisting that used handguns could be sold through private transactions, but not by licensed dealers. Other than improving business for gun manufacturers by increasing demand for new guns, it is unclear how anyone would benefit from this new standard.

"SB 1500 would deny owners of used handguns access to a

dependable marketplace of licensed firearms dealers and pawnbrokers for safe and legal sales and loans, while threatening to delay market access to manufacturers and purchasers of new guns.

"But an even more fundamental question is whether consumer safety is better achieved by a program that offers manufacturers market incentives to have their products tested, or a program that penalizes not only makers of products that fail the test, but also those who through no fault of theirs have been unable to get their guns tested.

"There are few laboratories that perform this kind of testing now. With the manufacturers providing the cost of testing, the number of laboratories and testing capacity may increase. But in the meantime, there are hundreds, if not thousands, of makes and models of handguns. There is a very real possibility that delay - for any number of reasons beyond the control of gunmakers - will lead to a large number of guns being banned without any showing that they are unsafe.

"While there have been isolated reports of firearms that jam excessively and even a few reports of guns which discharge accidentally, when dropped, or explode in the shooter's hand, the number of makes of suspect guns does not seem to justify a regulatory scheme that is likely to have the unintended consequence of prohibiting, or at least unreasonably holding up, sales of what appears to be the vast majority of perfectly reliable weapons.

"And there is no objection to weapons testing. But the procedure which SB 1500 would impose threatens to unreasonably

                                                    SB 15
                                                    Page 7

limit the right of law abiding citizens to obtain previously lawful firearms. It makes little sense for the law to deny weapons to people who need them, on the pretext that they are unsafe to the user until testing proves them safe, when they are arguably in far greater danger from certifiably unsafe thugs than from uncertified handguns."

6) Pending Legislation . AB 505 (Wright), pending assignment by the Senate Rules Committee, provides that every pistol, revolver, or firearm capable of being concealed upon a person, effective July 1, 2000, manufactured in California or imported into California for sale meet specified minimum safety standards. AB 505 has a prospective application and only applies to firearms manufactured or imported into California after the effective date of the bill.

7) Arguments in Support . Handgun Control states, "There are no federal quality or safety standards for domestically manufactured handguns. Guns are the only product in America exempt from regulation by the Consumer Product Safety Commission or by any other agency. The gun lobby has repeatedly pressured Congress to continue to exempt domestically made handguns from the safety standards that have applied to imported handguns for more than 30 years."

8) Arguments in Opposition . The California Sporting Goods Association states, "Requiring out-of-production firearms to meet abstract performance tests will place an onerous burden on anyone trying to buy or sell one. If the product is no longer made, how can samples be provided for testing? Further, if owners of discontinued models can no longer sell them lawfully, there will be a great temptation to dispose of them on the illicit market."

REGISTERED SUPPORT / OPPOSITION :

Support

American Academy of Pediatrics
Association of Bay Area Governments
Board of Supervisors of Alameda County
Board of Supervisors of Marin County
Board of Supervisors of San Mateo County
Board of Supervisors of Santa Clara County
Board of Supervisors of Santa Cruz County

                                                    SB 15
                                                    Page 8

Board of Supervisors of Siskiyou County

Board of Supervisors of Sonoma County
Butte County Sheriff
California Academy of Family Physicians
California Child Youth and Family Coalition
California Church Impact
California Congress of Parents, Teachers, and Students, Inc.
California Nurses Association
California Organization of Police and Sheriffs
Cathedral City
Children's Advocacy Institute
City of Alameda
City of Albany
City of Alhambra
City of Arvin
City of Belmont
City of Benicia
City of Berkeley
City of Bishop
City of Buena Park
City of Burbank
City of Camarillo
City of City of Cudahy
City of Commerce
City of Cypress
City of Daly City
City of El Cerrito
City of Fontana
City of Fortuna
City of Foster City
City of Fullerton
City of Guadalupe
City of Huntington Park
City of Indio
City of Inglewood
City of Irvine
City of Kerman
City of La Habra
City of La Puente
City of Lake Elsinore
City of Los Angeles
City of Malibu
City of Millbrae
City of Monte Sereno
City of Montebello

                                           SB 15
                                           Page  9

City of Monterey
City of Monterey Park
City of Morgan Hill
City of Oakland
City of Oceanside
City of Ojai
City of Oxnard
City of Pacific Grove
City of Palm Springs
City of Palmdale
City of Palo Alto
City of Richmond
City of Riverside
City of Rohnert Park
City of San Bernadino
City of San Clemente
City of San Fernando
City of San Jose
City of San Luis Obisbo
City of San Marino
City of San Mateo
City of Santa Ana
City of Santa Barbara
City of Santa Clara
City of Santa Monica
City of Santa Rosa
City of Signal Hills
City of South Pasadena
City of Stockton
City of Temecula
City of Thousand Oaks
City of Upland
City of Walnut Creek
City of West Hollywood
City of Williams
City of Winters
Colusa County District Attorney
Episcopal Church Diocese of Los Angeles
Escalon Police Department
Handgun Control
Jack Berman Advocacy Center
Lafayette City Council
League of California Cities
League of Women Voters of California
Legal Community Against Violence

```
                                          SB 15
                                          Page  10
```

Livingston California
Los Angeles County Bar Association
Los Angeles County District Attorney's Office
Los Angeles Unified School District
Lutheran Office of Public Policy
Michael J. Long, Attorney at Law
Office of Criminal Justice Planning
Older Women's League of California
Orange County Citizens for Prevention of Gun Violence
Physicians For a Violence-Free Society
San Mateo Police Department
Scotts Valley Police Department
Signal Hill Police Department
Sonora Police Department
Town of Los Gatos
Trauma Foundation
Violence Prevention Coalition of Los Angeles

 Opposition

California Rifle and Pistol Association, Inc.
California Sporting Goods Association
3 Private Citizens

Analysis Prepared by : Gregory Pagan / PUB. S. / (916) 319-3744

A000007