**EXHIBIT B**

B000001

BILL ANALYSIS

```
                SENATE COMMITTEE ON Public Safety
                   Senator John Vasconcellos, Chair    S
                      1999-2000 Regular Session        B

                                                       1
                                                       5
```

SB 15 (Polanco)
As Amended April 5, 1999
Hearing date: April 6, 1999
Penal Code
SH:br

                          FIREARMS -

            RESTRICTIONS ON "UNSAFE HANDGUNS"


                           HISTORY

Source:    Author

Prior Legislation: SB 1500 (1998) - vetoed
           SB 500 (1997) - vetoed
           SB 933 (1996) - failed passage Assembly Public Safety
           SB 1118 (1995) - never heard in Senate Criminal Procedure
           AB 1848 (1992) - heard, no vote taken, Senate Judiciary

Support:  Handgun Control; Cities of Los Angeles, San Jose,
          Thousand Oaks, San             Clemente, Lake
          Elsinore, San Luis Obispo, Buena Park, Palo Alto, Santa
          Rosa, Oceanside, Lompoc, Merced; Alameda County
          Board of Supervisors; City Council's of Berkeley; West
          Hollywood, Walnut Creek,        Rohnert Park, Pismo
          Beach, Lafayette, Los Gatos Town Council;
          Lutheran Office of Public Policy; League of

                                                         (More)


                                             SB 15 (Polanco)
                                                  Page 2


          California Cities; California     Academy of Family
          Physicians; Los Angeles County Bar Association;
             California Organization of Police and Sheriffs;
          Trauma Foundation;           California Police and
          Sheriffs Association; Mayor, City of Burbank;
          California Child, Youth and Family Coalition; Los
          Angeles Unified        School District; Chief of
          Police of the Town of Los Gatos and the City of
          Monte Sereno; California Church IMPACT; Children's
          AdvocacyInstitute; Los Angeles District Attorney's
          Office; Older Women's           League; Chief of
          Police of the City of Signal Hill; California Nurses
              Association; Legal Community Against Violence;
          Episcopal Diocese of          Los Angeles; Orange
          County Citizens for the Prevention of Gun Violence


Opposition:                              California
Rifle and Pistol Association; National Rifle Association;
California Shooting Sports Association; California
Attorneys for Criminal              Justice; Peace
Officer Research Association of California; Outdoor
Sportsmen's Coalition; Safari Club International;
California Sportsman's            Lobby;
individual letters


                         KEY ISSUES

SHOULD THE MANUFACTURE, IMPORTATION, KEEPING FOR SALE,
OFFERING OR EXPOSING FOR SALE, OR GIVING OR LENDING OF ANY
"UNSAFE HANDGUN" - AS DEFINED - BE PROHIBITED IN
CALIFORNIA, COMMENCING JULY 1, 2000?

SHOULD THE PENALTY FOR VIOLATING THAT PROHIBITION BE A
MISDEMEANOR PUNISHABLE BY UP TO ONE YEAR IN A COUNTY JAIL?

SHOULD THOSE UNSAFE HANDGUNS BE DEFINED BY REFERENCE TO
SPECIFIED CRITERIA INCLUDING A SAFETY DEVICE AND OTHER

(More)

SB 15 (Polanco)
Page 3

FACTORS INCLUDING A FIRING TEST (FOR SAFETY) AND A "DROP
SAFETY" TEST, AS SPECIFIED?

SHOULD EVERY MANUFACTURER OR IMPORTER OF HANDGUNS IN THIS
STATE BE REQUIRED TO CERTIFY, UNDER PENALTY OF PERJURY AND
ANY OTHER REMEDY PROVIDED AT LAW, THAT ANY HANDGUN
MANUFACTURED OR IMPORTED IS NOT A PROHIBITED UNSAFE HANDGUN
PURSUANT TO THIS BILL

SHOULD THE DEPARTMENT OF JUSTICE (DOJ) BE REQUIRED TO
CERTIFY, ON OR BEFORE JULY 1, 2000, LABORATORIES TO VERIFY
COMPLIANCE WITH THIS BILL?

SHOULD THE DEPARTMENT OF JUSTICE BE REQUIRED TO PREPARE A
ROSTER, ON AND AFTER JULY 1, 2000, OF ALL HANDGUNS WHICH
ARE DETERMINED NOT TO BE UNSAFE HANDGUNS PURSUANT TO THIS
BILL?

SHOULD TRANSFERS BETWEEN PRIVATE PARTIES - AND OTHER
SPECIFIED TRANSFERS AND SPECIFIED FIREARMS - BE EXEMPTED
FROM THE PROPOSED RESTRICTIONS ON "UNSAFE HANDGUNS"?

(CONTINUED)

SHOULD LEGISLATIVE INTENT BE ENACTED THAT THE DEPARTMENT OF JUSTICE PURSUE AN
INTERNAL LOAN FROM SPECIAL FUND REVENUES AVAILABLE TO THE DEPARTMENT TO COVER
STARTUP COSTS FOR THE NEW UNSAFE HANDGUN PROGRAM AND REPAY ANY LOAN WITH THE
PROCEEDS OF FEES COLLECTED UNDER THAT PROGRAM WITHIN 6 MONTHS?

SHOULD RELATED CHANGES BE MADE?

PURPOSE

The purpose of this bill is to enact restrictions on the
manufacture, importation, or sale of "unsafe handguns" - as
defined in this bill - in California commencing July 1,
2000, as specified.

(More)

SB 15 (Polanco)
Page 4

Under existing law  it is an alternate misdemeanor/felony
("wobbler") to manufacture, import, sell, loan or possess
specified disguised firearms and other deadly weapons,
including plastic firearms, cane or wallet guns, flechette
darts, multiburst trigger activators, nunchakus,
short-barreled shotguns and rifles, leaded canes, zip guns,
unconventional pistols, cane blackjacks and metal knuckles.
A violation is punishable by sixteen months, two or three
years in prison, or up to one year in county jail. (Penal
Code section 12020)

Existing law  generally requires that any sale, loan, or
transfer of a firearm shall be made through a licensed
firearms dealer or, in counties of fewer than 200,000
persons, a sheriff's department that elects to provide such
services. (Penal Code sections 12071, 12072, 12082, 12084)

Existing law  states it is the intention of the Legislature
to occupy the whole field of
regulation of the registration or licensing of commercially
manufactured firearms as encompassed by the provisions of
the Penal Code, and such provisions shall be exclusive of
all local regulations, relating to registration or
licensing of commercially manufactured firearms, by any
political subdivision, as defined. (Government Code
section 53071)

_This bill_ would do the following:

commencing July 1, 2000, make it a misdemeanor - punishable by up to one year in a county jail - for any person to manufacture or cause to be manufactured, import into the state for sale, keep for sale, offer or expose for sale, give, or lend any unsafe handgun, except as specified.

defines "unsafe handgun" to mean any pistol, revolver, or other firearm capable of being concealed upon the person which either (1) for revolvers: does not have a safety

(More)

SB 15 (Polanco)
Page 5

device to cause the hammer to retract from contact with the primer, as specified; (2) for pistols (whether semi-automatic or not): does not have a positive manually operated safety device; (3) does not meet a specified firing requirement; (4) does not meet a specified drop safety requirement.

requires every person licensed to manufacture firearms pursuant to federal law who manufactures firearms in this state and every person who imports into the state for sale, keeps for sale, or offers or exposes for sale any firearm to certify under penalty of perjury that every model, kind, class, style, or type of pistol, revolver, or other firearm capable of being concealed upon the person that he or she manufactures or imports, keeps, or exposes for sale is not a prohibited unsafe handgun.

requires any pistol, revolver, or other firearm capable of being concealed upon the person manufactured in this state, imported into the state for sale, kept for sale, or offered or exposed for sale, to be tested by an independent laboratory certified by the Department of Justice to determine whether that firearm meets or exceeds specified standards defining unsafe handguns.

requires the Department of Justice to certify laboratories for this purpose on or before July 1, 2000.

requires the Department of Justice, on and after July 1, 2000, to compile, publish, and thereafter maintain a roster listing all of the pistols, revolvers, and other firearms capable of being concealed upon the person that are not unsafe handguns by the manufacturer, model number, and model name; authorizes the department to charge every person in this state who is licensed as a manufacturer of firearms pursuant to federal law, and any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, or offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon the

(More)

SB 15 (Polanco)
Page 6

person in this state, an annual fee not exceeding the costs of preparing, publishing, and maintaining the roster.

exempts from the limitations on such handguns (1) prototypes which are to be tested by a laboratory to determine whether the handgun is prohibited by this bill; (2) law enforcement and others handling the weapon to determine whether or not it is prohibited by this bill; (3) firearms which are curios or relics pursuant to federal regulations.

exempts from the transfer limitations in this bill transfers between private parties through dealers/law enforcement agencies; transfers between parties otherwise exempt from the requirement that transfer be made through a dealer or law enforcement agency (limited duration

loans between known parties, loans for hunting season, etc); and transfers pertaining to those handguns exempted in new provisions added by this bill (such as delivery to DOJ of weapons being tested).

states the intent of the Legislature that the Department of Justice pursue an internal loan from special fund revenues available to the department to cover startup costs for the unsafe handgun program established pursuant to the bill and that the department is to repay any loan with the proceeds of fees collected under that program within six months.

makes numerous related additions to law.

COMMENTS

1. Need for This Bill

The author submits that:

Senate Bill 15 is a common sense, responsible gun law.

(More)

SB 15 (Polanco)
Page 7

It requires that weapons fire when they are supposed to and that they not fire when dropped. The drop test is based on U.S. Department of Justice quality standards for law enforcement weapons and the misfire test is a slightly more lenient standard than currently used by law enforcement agencies. The tests are fair and reasonable for weapons sold to members of the public for self-protection. If a weapon is not reliable for self-defense, it has no business being sold in California.

SB 15 would require any handgun manufactured in California, imported into the State of California for sale, kept for sale or exposed for sale, given or lent, meet these basic standards. The Attorney General's office would be required to certify independent labs that would test weapons that manufacturers wished to sell in California. If they failed to pass the test it would be a misdemeanor to manufacture or sell the weapons in our state.

2. Governor's Veto of SB 500 and SB 1500

The Governor's veto message of SB 500 (9/26/97) included, in part, the following:

SB 500 is a bill that purports to protect gun users against shoddy guns. It is essentially offered as consumer protection. But the vast majority of the proponents of SB 500 who have urged me to sign it have done so because of their passionate hope and belief that it will instead protect potential victims against whom the proscribed guns might otherwise be used.

Common sense dictates that the best way to prevent gun crimes is by first removing from society the criminals who use guns in the commission of a crime. . .

. . . not only does SB 500 fail to keep guns out of

(More)

SB 15 (Polanco)
Page 8

the hands of criminals, it will deprive law-abiding, legitimate gun users of the needed protection of handguns--the same handguns used by thousands of peace officers as regular service and back-up guns. These weapons would--in a private citizen's hands--be caught in a net cast much too wide by SB 500.

> . . . I will not support a measure that fails the basic test of protecting the innocent. Ultimately, the real test applied by the bill is whether or not the weapon is readily concealable. If so, it is adjudged by SB 500 to be "non-sporting" and is therefore prohibited. By this definition and test, all handguns--except, ironically, the largest and deadliest--are included in the ban. The clear if unstated premise of this test is that handguns that are concealable can have no sporting purpose and therefore no valid purpose. This flawed logic ignores reality: it ignores the obvious fact that millions of law-abiding Californians--including a growing number of women--have felt the need to own concealable weapons not for sport but to protect themselves, their families, and their property.
>
> As much as I deplore the necessity, I cannot in good conscience deny them that protection if they choose it.

NOTE: The author indicated concerning SB 1500 from 1998 that: "In response to the Governor's concerns [with SB 500], . . . I have introduced Senate Bill 1500. It casts a smaller net, it addresses the Governor's concerns and it seeks to ensure that those who choose to own a handgun for self protection have a handgun that is safe and reliable."

The Governor's veto message of SB 1500 (9/27/98) includes the following:

> . . . This bill is the successor to SB 500, which I vetoed last year. SB 500 was seriously flawed.

(More)

SB 15 (Polanco)
Page 9

> Commendably, the author has removed some of its more egregious provisions. . . .
>
> . . . The bill gives the Department of Justice six months to find and certify laboratories to perform safety tests. Once laboratories are identified, handgun manufacturers wishing to sell their products in California would be required to submit three prototypes of each model for testing. Only handguns passing the test during the following six months would be certified and placed on the initial Department of Justice roster. All other handguns would be presumed unsafe subject to penalty under this bill and remain so unless and until they were certified to have passed the test.
>
> The author was advised that this Administration could accept both the premise of safety testing and the specific safety tests proposed, provided that the bill be made prospective, impacting handguns manufactured, or sold new, after January 1, 2000. The author declined to amend his bill, insisting that used handguns could be sold through private transactions, but not by licensed dealers. Other than improving business for gun manufacturers by increasing demand for new guns, it is unclear how anyone would benefit by this arbitrary standard. . .
>
> SB 1500 would deny owners of used handguns access to a dependable marketplace of licensed firearms dealers and pawnbrokers for safe and legal sales and loans, while threatening to delay market access to manufacturers and purchasers of new guns. . .
>
> But an even more fundamental question is whether consumer safety is better achieved by a program that offers manufacturers market incentives to have their products tested, or a program that penalizes not only makers of products that fail the test, but also those who through no fault of theirs have been unable to get their guns tested. . . .

(More)

SB 15 (Polanco)

B000006

Page 10

. . .There are few laboratories that perform this kind of testing now. With the manufacturers providing the cost of testing, the number of laboratories and testing capacity may increase. But in the meantime, there are hundreds, if not thousands, of makes and models of handguns. There is a very real possibility that delay--for any number of reasons beyond the control of gun maker--will lead to a large number of guns being banned without any showing that they are unsafe.

. . .While there have been isolated reports of firearms which jam excessively and even a few reports of guns which discharge accidentally, when dropped, or explode in the shooter's hand, the number of makes of suspect guns does not seem to justify a regulatory scheme that is likely to have the unintended consequence of prohibiting, or at least unreasonably holding up, sales of what clearly appears to be the vast majority of perfectly reliable weapons.

. . .And there is no objection to weapons testing. But the procedure which SB 1500 would impose threatens to unreasonably limit the right of law abiding citizens to obtain previously lawful firearms. It makes little sense for the law to deny weapons to people who need them, on the pretext that they are unsafe to the user until testing proves them safe, when they are arguably in far greater danger from certifiably unsafe thugs than from uncertified handguns.

3. _Federal Regulation of "Saturday Night Specials"_

At the federal level, the importation of "Saturday Night Specials" into the United States has been banned through the enactment of the Gun Control Act of 1968. Section 925 (d)(3) of the Act provides that a firearm shall be imported if it is of a type ". . .generally recognized as particularly suitable for, or readily adaptable to, sporting purposes." The phrase "sporting purposes" has

(More)

SB 15 (Polanco)
Page 11

been defined to eliminate small, cheap, poorly constructed handguns.

A set of factoring criteria was designed to prevent the import of these handguns, considered a substantial crime problem in the 1960s. The factoring criteria are based on a relatively simple point system. First, the firearm must meet all of the prerequisites. If it is a pistol, it must have a manually operated safety device. The combined length and height must be not less than ten inches with the height being at least four inches and the length at least six inches. If the firearm is a revolver, it must pass the safety test and have an overall frame length of at least four and one half inches and a barrel length of at least three inches.

In addition, a point value is assigned to the handgun's individual characteristics such as length of barrel, overall length, frame construction, weight, caliber, safety features, type of sight, trigger, hammer and grip.

Generally, the handguns passing the criteria are bigger, heavier and of a better quality than "Saturday Night Specials." The Bureau of Alcohol, Tobacco, and Firearms (Secretary of the Treasurer or his/her delegate) also may grant exemptions to these requirements, as specified.

Under the proposed federal Handgun Violence Prevention Act of 1989, the above criteria would have applied to handguns produced in the United States. However, this federal legislation was defeated.

4. _Exemption for Old West Revolvers_

_ This bill contains an exemption for "old west" single-action revolvers and replicas of those revolvers. SB 15 contains the following language:

(More)

SB 15 (Polanco)
Page 12

Penal Code section 12131. The provisions of this chapter shall not apply to a single-action revolver that has at least a five-cartridge capacity with a barrel length of not less than three inches, and meets any of the following specifications:

(a) Was originally manufactured prior to 1900 and is a curio or relic, as defined in Section 178.11 of Title 27 of the Code of Federal Regulations.
(b) Has an overall length measured parallel to the barrel of at least seven and one-half inches when the handle, frame or receiver, and barrel are assembled.
(c) Has an overall length measured parallel to the barrel of at least seven and one-half inches when the handle, frame or receiver, and barrel are assembled and that is currently approved for importation into the United States pursuant to the provisions of paragraph (3) of subsection (d) of Section 925 of Title 18 of the United States Code.

5. Implementation Dates in This Bill

If enacted, this bill would take effect on January 1, 2000. This bill contains several "operative" dates within its text:

July 1, 2000 - restrictions/penalties for selling, manufacturing, etc., of unsafe handguns take effect.

July 1, 2000 - DOJ shall certify laboratories to verify compliance with standards.

July 1, 2000 - on/after this date, DOJ shall publish a roster of firearms, which are "not unsafe firearms".

WOULD THE DATES SET IN THIS BILL ALLOW FOR THE APPROPRIATE IMPLEMENTATION OF THE NEW PROGRAM, E.G., WOULD FIREARMS BE TESTED BY JULY 1, 2000, WHEN THE LABORATORIES DO NOT HAVE

(More)

SB 15 (Polanco)
Page 13

TO BE CERTIFIED FOR TESTING UNTIL THAT DATE?

6. Definition of "Any Person Who Imports" in This Bill

This bill exempts sales of "unsafe handguns" between private parties. Most of those weapons may be anticipated to be handguns manufactured before January 1, 2000. This bill would prohibit all "unsafe handgun" manufacturing, importing, or selling by licensed manufacturers and licensed dealers after January 1, 2000, no matter when the handgun is manufactured.

However, there is now a new Penal Code section reference to "importer". Private parties moving to California after January 1, 1998, who possess a handgun must now report that firearm to the Department of Justice within 60 days of bringing the handgun into the state. Those persons are now defined in statute as a "personal handgun importer." Whether or not those persons would be considered an "importer" pursuant to this bill is unclear, although this bill does appear to be aimed at commercial persons.

7. Other Issues Raised by This Bill

Under existing Government Code section 53071, some local entities have adopted restrictions on the local sale by licensed dealers of so-called "Saturday Night Specials" (see reference to San Jose ordinance in the second paragraph, below). This bill would appear to preempt any such local ordinance, both those already in existence and any proposed locally in the future

SB 500, as introduced on February 20, 1997, would have restricted sales in California of handguns which would have otherwise failed to meet the federal test for importation into the United States. Previous efforts to restrict so-called "Saturday Night Specials" took a similar approach or used such tests as the tensile strength of metals. As SB 500 and
SB 1500 evolved in the process, the approach taken became

(More)

SB 15 (Polanco)
Page 14

one of size restrictions and "safety" tests, which were developed using tests used for law enforcement weapons. Subsequently, the size criteria were deleted from SB 1500 and are not part of SB 15 as currently amended.

Some local jurisdictions in California have existing restrictions on specified weapons. For example, the City of San Jose has a local ordinance entitled "Saturday Night Special/Junk Gun Sale Ban" (SJ Code, Chapter 10.33) which uses several characteristics, including metal strength and composition and for semi-automatic pistols a requirement for a "locked breech action" with the chief of police maintaining a roster of prohibited weapons and an appeals process to the chief.

The San Jose ordinance is relatively simple in that it states in colloquial terms the types of weapons it is intended to restrict and then uses a relatively simple set of criteria. It may be unclear whether or not that kind of approach would or would not be as effective as the "safety test" procedures proposed in this bill or whether or not this bill would be over or under inclusive of the types of handguns which the sponsors and supporters would seek to prohibit in California.

As indicated in last year's SB 1500 veto message, there has been some discussion of whether or not the application of the restrictions in SB 1500 and this year's SB 15 would effectively eliminate the used handgun market for all those handguns - lawfully sold/possessed prior to the testing requirements of this bill - which could be sold between private parties through dealers/law enforcement agencies but which could not be purchased by licensed dealers for resale in California. It may be assumed that there is little likelihood that anyone would pay for certification of weapons which are "used" and not substantially the same as new weapons offered for sale and manufactured after July 1, 2000, if this bill is enacted.

At the present time, firearms may be pawned and

(More)

SB 15 (Polanco)
Page 15

subsequently returned to the person who pawned them. This bill would arguably restrict such "returns" for handguns lawfully possessed prior to the restrictions imposed by this bill.

(More)

SB 15 (Polanco)
Page 16

8. Opposition to This Bill

The National Rifle Association (NRA) letter in opposition includes:

> As currently constructed, SB 15 would provide a strong stimulus for illegal "street" gun sales. Most used handguns made since 1946 would not be submitted for certification as required by SB 15 and thus could not be legally sold by retail firearm dealers. Pawnshops would not give loans on handguns that they couldn't sell if not picked up by the owner. Without access to retail firearms dealers (including pawnshops) the obvious alternative is "street sales".

The California Rifle and Pistol Association letter in opposition to SB 15 includes:

> . . .Its prohibition on dealer sales of used handguns not meeting the bills extremely broad provisions would make handguns economically unavailable to many persons who do not have large incomes. . . .Whether a handgun meets the proposed SB 15 standards in most cases would have no relevance to its suitability for its intended purpose. . . .SB 15 requires that both civilian and law enforcement handguns have the same standards. . . .SB 15 would not significantly improve any product line nor would it prevent the occasional occurrence of a defective part. But, it would unjustly have an adverse impact on lawful residents of California who need a handgun for lawful purposes but cannot afford the expensive models. . . .

The California Shooting Sports Association letter in opposition indicates that SB 15 would not reduce crime nor improve public safety.

9. Related Legislation

AB 505 (Wright) is currently in the Assembly Committee on

SB 15 (Polanco)
Page 17

Public Safety. It would require every model of pistol, revolver, or other firearm capable of being concealed upon the person that is manufactured for sale in California on or after July 1, 2000, to satisfy specified safety tests and standards, with a system of self-certification by the manufacturer or importer and specified penalties.

10. Need to Revise the Legislative Counsel's Digest

The Legislative Counsel's digest of this bill as amended on April 5, 1999, on line six of the first page indicates that "commencing January 1, 2000" the limitations on "unsafe

handguns" takes effect; the text in fact sets that date at July 1, 2000 (page 3, line 8). Thus the Digest should be corrected as this bill is amended or moves through the process.

11. **Other Firearms Bills Imposing Duties on the Attorney General/Department of Justice**

Other firearms bills this session which would require the Attorney General/Department of Justice to take on tasks, in addition to SB 15, include SB 23 (registration and other elements of the assault weapons program), SB 130 and AB 106 (certification of laboratories to test firearms safety devices; other duties), and AB 505 (California Sporting and Self Defense Handgun Safety Standards Act).

***************

B000011