KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General
ANTHONY R. HAKL, State Bar No. 197335
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-9041
 Fax: (916) 324-8835
 E-mail: Anthony.Hakl@doj.ca.gov
*Attorneys for Defendant Stephen Lindley*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVAN PEÑA, ROY VARGAS, DOÑA CROSTON, BRETT THOMAS, SECOND AMENDMENT FOUNDATION, INC. and THE CALGUNS FOUNDATION, INC.,**<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>**STEPHEN LINDLEY,**<br><br>　　　　　　　　　　Defendant. | Case No. 2:09-CV-01185-KJM-CMK<br><br>**DEFENDANT STEPHEN LINDLEY'S RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS** |

| | |
|---|---|
| 1. Handguns are arms of the kind in common use for traditional lawful purposes. | Disputed. This is a legal contention, not a statement of fact. *District of Columbia v. Heller*, 554 U.S. 570 (2008) speaks for itself. This contention is also irrelevant. |
| 2. Semi-automatic firearms with detachable magazines are arms of the kind in common use for traditional lawful purposes. | Disputed. This is a legal contention, not a statement of fact. Additionally, the "ATF Report" relied upon by plaintiffs does not show this. Nor does paragraph 15 of the declaration of Mr. Hoffman, which defendant objects to as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. This contention is also irrelevant. |
| 3. Semi-automatic firearms with detachable magazines utilizing center-fire ammunition are arms of the kind in common use for traditional lawful purposes. | Disputed. This is a legal contention, not a statement of fact. Additionally, the "ATF Report" relied upon by plaintiffs does not show this. Nor does paragraph 15 of the declaration of Mr. Hoffman, which defendant objects to as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. This contention is also irrelevant. |
| 4. California Law provides that "any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, offers or exposes for sale, gives, or lends any unsafe handgun shall be punished by imprisonment in a county jail not exceeding one year. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 5. California law presumes that *all* handguns are "unsafe" and therefore, generally barred from importation and sale, unless those handguns have been placed on the state's special roster of handguns "determined not to be unsafe." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |

| | |
|---|---|
| 6. Since 2007, a center-fire[1] semiautomatic[2] handgun cannot make the roster if it does not have both a chamber load indicator and, if it has a detachable magazine, a magazine disconnect mechanism. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. Also, plaintiffs cite no evidence or other authority for the propositions set forth in footnotes 1 or 2. |
| 7. Since 2006, a rimfire[3] semi-automatic handgun must have a magazine disconnect mechanism if it has a detachable magazine. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. Also, plaintiffs cite no evidence or other authority for the proposition set forth in footnote 3. |
| 8. Handguns rostered prior to the effective dates of these requirements can remain rostered despite lacking these features. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 9. A magazine disconnect mechanism is "a mechanism that prevents a semiautomatic pistol that has a detachable magazine from operating to strike the primer of ammunition in the firing chamber when a detachable magazine is not inserted in the semiautomatic pistol." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 10. A chamber load indicator ("CLI") is "a device that plainly indicates that a cartridge is in the firing chamber." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |

---

[1] Most handguns use center-fire ammunition, which fires a bullet when the center of the cartridge is struck by the gun's firing pin, igniting the primer.

[2] A semi-automatic handgun is handgun that fires one bullet each time the trigger is pulled, with the firing of each bullet causing the next round to be loaded into the chamber from a magazine. Most handguns in the United States are semi-automatic. Almost all the rest are revolvers, which hold several rounds in a rotating cylinder and also fire one bullet with each pull of the trigger. Nothing in the challenged laws, or this litigation, relates to fully-automatic weapons (machine guns), which are the subject of other specific legislative enactments.

[3] Rimfire ammunition, which is fired when struck on its rim by the gun's firing pin, is primarily used in the smallest calibers. For technical reasons, chamber load indicators are not feasible for rimfire ammunition.

| | |
|---|---|
| 11. Not all CLIs satisfy the California requirement. Under California law: [A] device satisfies this definition if it is readily visible, has incorporated or adjacent explanatory text or graphics, or both, and is designed and intended to indicate to a reasonably foreseeable adult user of the pistol, without requiring the user to refer to a user's manual or any other resource other than the pistol itself, whether a cartridge is in the firing chamber. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 12. Defendant tests the sufficiency of CLIs by asking his employees if they understand the CLI – and when the regulatory authority's employees allegedly fail to understand the CLI, regardless of what the CLI is "designed and intended to indicate to a reasonable adult," the CLI is ruled inadequate. | Disputed. This is not an accurate description of the documents cited by plaintiffs and is not an accurate description of the Department of Justice's evaluation of chamber load indicators. Additionally, the contents of the cited letters speak for themselves. |
| 13. Given the rarity of CLIs and magazine disconnect devices, handguns lacking these features are in common use today, comprising the overwhelming majority of handguns. | Disputed. The cited documents do not support the use of the word "rarity" or phrase "overwhelming majority." The "common use" aspect of this statement is also a legal contention, not a statement of fact. This statement mischaracterizes the cited legislative history. This contention is also irrelevant. |
| 14. California legislators specifically considered that CLIs and magazine disconnects are available on only perhaps 11% and 14% of handguns, respectively, as proposed by the author of the bill mandating these features. | Disputed. The cited documents do not support this statement. The statement mischaracterizes the cited legislative history. |
| 15. Because CLIs and magazine disconnect mechanisms were viewed as beneficial, the California Legislature hoped that mandating these features would alter the firearms market. | Disputed. The cited document does not support this statement. The statement mischaracterizes the cited legislative history. |
| 16. A handgun safety mechanism may fail or be misused by the user of a handgun. | Undisputed. As a general matter, any mechanical device can fail or be misused. But this contention is irrelevant. |

| | | |
|---|---|---|
| 17. | A chamber loaded indicator is a mechanical device that may fail or be misinterpreted by the user of a handgun. | Undisputed. As a general matter, any mechanical device can fail or be misused. But this contention is irrelevant. |
| 18. | A magazine disconnect mechanism is a mechanical device that may fail. | Undisputed. As a general matter, any mechanical device can fail or be misused. But this contention is irrelevant. |
| 19. | As the state advises handgun purchasers, "Any machine can malfunction. A firearm is no different." | Undisputed. This is an accurate quotation of a portion of the publication cited. But this contention is irrelevant. |
| 20. | To acquire any handgun in California, an individual must pass a written handgun safety test. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. This contention is also irrelevant. |
| 21. | The test requires knowledge of the basic rules of handgun safety, the first of which is: "Treat all guns as if they are loaded." | Undisputed. This is an accurate quotation of a portion of the publication cited. But this contention is irrelevant. |
| 22. | The state's study guide for the handgun safety test further provides: Always assume that a gun is loaded even if you think it is unloaded. Every time a gun is handled for any reason, check to see that it is unloaded [by following specific instructions for unloading the gun]. If you are unable to check a gun to see if it is unloaded, leave it alone and seek help from someone more knowledgeable about guns. | Undisputed. This is an accurate quotation of a portion of the publication cited. But this contention is irrelevant. |
| 23. | The state's specific instructions for unloading a semi-automatic handgun contained in its gun safety study guide provides that a mechanical safety [It] is not foolproof so do not rely on the safety to prevent an accidental discharge. A safety should only be used as an additional safety measure. Never pull the trigger on any firearm with the safety in the "safe" position because thereafter the firearm could fire at any time without the trigger ever being touched. | Undisputed. This is an accurate quotation of a portion of the publication cited. But this contention is irrelevant. |

| | |
|---|---|
| 24. Although the state's gun safety study guide does not discuss chamber loaded indicators or magazine disconnect devices, it teaches, in order to pass the mandatory safety test, rules that would have gun owners ignore such devices. The study guide specifically instructs that in order to verify a semi-automatic handgun is unloaded, one must remove the magazine and visually inspect the chamber to verify that it is empty. | Disputed. The cited publication does not stand for the proposition set forth in the first sentence of this statement. This contention is also irrelevant. |
| 25. In a large red box marked "CAUTION," the state's gun safety study guide provides:<br><br>You should NOT assume a semiautomatic pistol is unloaded just because the magazine is removed from the handgun.<br><br>Do not allow the slide to go forward UNLESS you have:<br><br>1. Checked again to be sure the chamber is empty, and<br><br>2. Checked again to be sure the magazine has been REMOVED.<br><br>If you pull the slide back ejecting the cartridge, check the chamber, let the slide go forward, and THEN remove the magazine, you have a loaded, dangerous firearm (a cartridge is in the chamber) even though you have removed the magazine. It is common and sometimes fatal to make this error.<br><br>ALWAYS REMOVE THE MAGAZINE FIRST! | Undisputed. This is an accurate quotation of a portion of the publication cited. But this contention is irrelevant. |
| 26. In order to purchase a handgun, the buyer must demonstrate that he or she knows how to safely operate the handgun, including following the instructions set forth in ¶ 22 above. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. This contention is also irrelevant. |

| | | |
|---|---|---|
| 1 2 3 | 27. California law requires that all newly purchased firearms either be accompanied by an approved gun lock or the purchaser's affidavit that she owns an adequate lock box or gun safe. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. This contention is also irrelevant. |
| 4 5 6 7 | 28. All semi-automatic handguns not on the approved roster prior to 2013 are barred from the approved handgun roster unless they employ so-called "microstamping technology." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 8 9 10 11 | 29. "The Attorney General may also approve a method of equal or greater reliability and effectiveness in identifying the specific serial number of a firearm from spent cartridge casings discharged by that firearm than that which is set forth in this paragraph . . ." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 12 13 14 15 16 17 18 19 | 30. The microstamping requirement of Cal. Penal Code § 31910(b)(7) became effective on May 17, 2013 because on that date, the California Department of Justice issued Information Bulletin No.: 2013-BOF-03, wherein Defendant Lindley announced that the Department had determined that the technology described in Penal Code § 31910(b)(7) is now available to more than one manufacturer unencumbered by any patent restrictions. | Undisputed. |
| 20 21 22 23 24 | 31. There are no manufacturers of new model semiautomatic firearms that offer products with microstamping technology for sale in the United States, nor have any applied to have such a handgun placed on the California approved roster. | Disputed as to the first clause in this sentence. To be precise, in the cited discovery responses Lindley admits that "[n]o handguns currently available for sale in the United States have microstamping technology that satisfies the requirements of California's Handgun Roster Law." As to the second clause, it is undisputed that to date no manufacturer has applied to have such a handgun placed on the roster. |
| 25 26 27 | 32. Listings on the California handgun roster are valid for one year, and must be renewed annually, including payment of an annual fee, prior to expiration to remain valid. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Code of Regulations speak for themselves. |

28

| | |
|---|---|
| 33. Defendant charges firearms manufacturers, importers, and dealers annual fees, ostensibly to operate the handgun roster program. Any handgun whose manufacturer fails to pay the required fees may be excluded from the roster for that reason alone. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 34. The initial and renewal annual listing fees for inclusion on the handgun roster are $200. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Code of Regulations speak for themselves. |
| 35. Other than the California DOJ, only the manufacturer/importer of a handgun model is authorized to submit that handgun model to a DOJ-Certified Laboratory for testing. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Code of Regulations speak for themselves. |
| 36. A handgun can remain on the roster if its manufacturer/importer goes out of business or discontinues the model, provided that the model is not being offered for sale to licensed dealers, and "a fully licensed wholesaler, distributor, or dealer submits a written request to continue the listing and agrees to pay the annual maintenance fee." | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Code of Regulations speak for themselves. |
| 37. So long as a handgun is sold to dealers outside of California, the handgun's manufacturer can cause the sale of that handgun to be forbidden inside California by failing to submit the gun for testing in that state or refusing to pay the annual $200 fee. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code and Code of Regulations speak for themselves. |
| 38. A manufacturer/importer or other responsible party may submit a written request to list a handgun model that was voluntarily discontinued or was removed for lack of payment of the annual maintenance fee. The request may be approved, and the handgun restored to the "safe gun" roster, provided the fee is paid. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Code of Regulations speak for themselves. |

| | |
|---|---|
| 39. The following firearms and transactions are exempted from the handgun rostering requirement:<br>(1) Firearms defined as curios or relics under federal law;<br>(2) The purchase of any firearm by any law enforcement officer – State or Federal;<br>(3) Pistols that are designed expressly for use in Olympic target shooting events, as defined by rule;<br>(4) Certain single-action revolvers, as defined by rule; and<br>(5) The sale, loan, or transfer of any firearm that is to be used solely as a prop during the course of a motion picture, television, or video production by authorized people related to the production. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 40. It is not illegal in California to import an unrostered handgun when moving into the state without the intention of selling it, nor is it illegal in California to possess or use an unrostered handgun that is otherwise lawful to possess or use. | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. |
| 41. California also exempts private party transfers, intra-familial transfers including gifts and bequests, various loans, and various single-action revolvers.[4] | Disputed. This is a legal contention, not a statement of fact. The relevant provisions of the California Penal Code speak for themselves. Also, plaintiffs cite no evidence or other authority for the proposition set forth in footnote 4. |
| 42. Plaintiff Ivan Peña has sought to purchase a Para USA (Para Ordnance) P1345SR / Stainless Steel .45 ACP 4.25", and has identified a willing seller who stands ready to deliver said handgun to him. | Undisputed. |

---

[4] "Single" or "double" action refers to the gun's trigger function, [4] one "action" being the effect of drawing back the hammer, another "action" being the effect of dropping the hammer. Guns can be designed to operate in single-action, double-action, or effectively both (if a gun has a hammer that might be retracted either manually or by pulling the trigger).

| | |
|---|---|
| 43. Peña's Para USA P1345SR was listed on California's Handgun Roster until December 31, 2005, when it was discontinued and its listing not renewed. | Undisputed. Additional explanation of why this firearm is no longer on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 44. Peña cannot lawfully purchase and take possession of the handgun as that handgun is not on the California Handgun Roster. | Undisputed to the extent "the handgun" refers to the exact firearm currently held by the seller identified in ¶ 42 above. But disputed to the extent that plaintiff could lawfully purchase a different Para USA (Para Ordnance) P1345SR / Stainless Steel .45 ACP 4.25" via a private-party transfer or other lawful means. |
| 45. Peña fears arrest, prosecution, fine and incarceration if he completes this handgun purchase. | Undisputed. |
| 46. Plaintiff Roy Vargas has sought to purchase a Glock 21 SF with an ambidextrous magazine release, and has identified a willing seller who stands ready to deliver said handgun to Plaintiff. | Undisputed. |
| 47. Vargas cannot lawfully purchase and take possession of the handgun as that handgun is not listed on the California Handgun Roster. | Undisputed to the extent "the handgun" refers to the exact firearm currently held by the seller identified in ¶ 46 above. But disputed to the extent that plaintiff could lawfully purchase a different Glock 21 SF with an ambidextrous magazine release via a private-party transfer or other lawful means. |
| 48. Vargas fears arrest, prosecution, fine and incarceration if he completes this handgun purchase. | Undisputed. |
| 49. Vargas was born without an arm below the right elbow. | Undisputed. |
| 50. The Glock 21 SF-STD with a standard magazine release is listed on the California Handgun Roster. | Undisputed. |

| | |
|---|---|
| 51. The Glock-21 SF with ambidextrous magazine release is superior for lefthanded shooters such as Mr. Vargas, as opposed to the approved version of the Glock 21. | Disputed. Paragraph 9 of the declaration of Mr. Vargas does not demonstrate this. Defendant objects to the statement as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. This contention is also irrelevant. Mr. Vargas admits that he already owns handguns suitable for self defense and is able to purchase additional handguns for self defense. (See Exh. E to Decl. of Anthony R. Hakl in Supp. of Def. Stephen Lindley's Mot. for Summ. J.) |
| 52. Glock's efforts to add the Glock 21 SF with ambidextrous magazine release to the California Roster have failed. | Disputed. This statement mischaracterizes Glock's "efforts" and the cited document. The explanation of why this firearm is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 53. Defendant permits Glock customers to have their Glock 21 SF-STD handguns fitted with an ambidextrous release at the Glock factory. | Undisputed. |
| 54. Plaintiff Doña Croston has sought to purchase a Springfield Armory XD-45 Tactical 5" Bi-Tone stainless steel/black handgun in .45 ACP, model number XD9623, and has identified a willing seller who stands ready to deliver said handgun to her. | Undisputed. |
| 55. Croston cannot lawfully purchase and take possession of the handgun as that handgun is not on the California Handgun Roster. | Undisputed to the extent "the handgun" refers to the exact firearm currently held by the seller identified in ¶ 54 above. But disputed to the extent that plaintiff could lawfully purchase a different Springfield Armory XD-45 Tactical 5" Bi-Tone stainless steel/black handgun in .45 ACP, model number XD9623 via a private-party transfer or other lawful means. Also, the explanation of why the firearm Ms. Croston desires is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 56. Croston fears arrest, prosecution, fine and incarceration if she completes this handgun purchase. | Undisputed. |

| | |
|---|---|
| 57. Other models of this identical gun – but in different colors – are listed on the handgun roster and are thus available to Ms. Croston: the XD-45 Tactical 5" .45 ACP in black (model XD9621), the XD-45 Tactical 5" .45 ACP in OD Green (model XD9622), and the XD-45 Tactical 5" .45 ACP in Dark Earth (XD9162). | Disputed. There is no evidence that the cited firearms are "identical." In any event, the explanation of why the firearm Ms. Croston desires is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 58. The particular Bi-Tone XD-45 that Ms. Croston would possess was not released until after California required newly listed guns to have a chamber load indicator and magazine disconnect device. | Disputed. The cited documents do not show this. The documents reference various models, but not the model XD9623 desired by Croston. |
| 59. Springfield Armory could not get the XD-45 in .45 ACP and Bi-Tone finish registered given the new listing requirements. | Disputed. The explanation of why this firearm is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 60. The XD-45 Bi-Tone in .45 has a loaded chamber indicator, but the California Department of Justice has decided it does not qualify under Penal Code § 16380(c). | Disputed. The explanation of why this firearm is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. Also, the cited "Technical Data" does not show this. |
| 61. The XD-45 also lacks a magazine disconnect device. | Undisputed, but the cited "Technical Data" does not show this. |
| 62. The handgun at issue in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), was a High Standard 9-shot revolver in .22 with a 9.5" Buntline-style[5] barrel. | Disputed. The handgun mentioned was not "at issue" in *Heller*. This is also irrelevant. |
| 63. Plaintiff Brett Thomas has sought to purchase an identical High Standard 9-shot revolver in .22 with a 9.5" Buntline-style barrel, and has identified a willing seller who stands ready to deliver said handgun to Thomas. | Undisputed. |

---

[5] A "Buntline" is a Western-style extra-long barrel revolver, named for 19th-century novelist Ned Buntline who was said to commission such guns for famous personalities of the day.

| | |
|---|---|
| 64. Thomas cannot lawfully purchase and take possession of the handgun as that handgun is not on the California Handgun Roster. | Undisputed to the extent "the handgun" refers to the exact firearm currently held by the seller identified in ¶ 63 above. But disputed to the extent that plaintiff could lawfully purchase a different High Standard 9- shot revolver in .22 with a 9.5" Buntline-style barrel via a private-party transfer or other lawful means. Also, the explanation of why the firearm Mr. Thomas desires is not on the roster is set forth in the Declaration of Leslie McGovern filed in support of defendant's opposition to plaintiffs' motion for summary judgment. |
| 65. Thomas fears arrest, prosecution, fine and incarceration if he completes this handgun purchase. | Undisputed. |
| 66. Plaintiffs Ivan Peña and Brett Thomas are law-abiding citizens, shooting enthusiasts and gun collectors, as are other members and supporters of Plaintiffs Second Amendment Foundation, Inc. ("SAF") and Calguns Foundation, Inc. ("CGF"). Peña, Thomas, and other SAF and CGF members and supporters would acquire new semiautomatic handguns of the kind in common use throughout the United States, for traditional lawful purposes including self-defense, but cannot do so owing to California's microstamping scheme. | Disputed. While the microstamping law may be prohibiting plaintiffs from acquiring certain new handguns that they desire, the law is not prohibiting them from acquiring any or all new handguns. |
| 67. California's handgun rostering scheme substantially limits commerce in (and therefore Plaintiffs' access to) unrostered handguns, since no dealer can stock these firearms. This results in a significant loss of choice and price competition. | Disputed. The cited declarations do not show this. And defendant objects to those declarations as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. |
| 68. Plaintiffs would suffer increased costs in transporting and transferring their firearms from out-of-state dealers that they would not suffer if the firearms were available for sale in California. | Disputed. The cited declarations do not show this. And defendant objects to those declarations as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. |

| | |
|---|---|
| 69. Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. | Undisputed. |
| 70. SAF has over 650,000 members and supporters nationwide, including many in California. | Undisputed. |
| 71. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. | Undisputed. |
| 72. Plaintiff The Calguns Foundation, Inc. is a non-profit organization incorporated under the laws of California with its principal place of business in San Carlos, California. | Undisputed. |
| 73. Calguns supports the California firearms community by promoting education for all stakeholders about firearm laws, rights and privileges, and securing the civil rights of California gun owners, who are among its members and supporters. | Undisputed. |
| 74. SAF and Calguns expend their resources encouraging exercise of the right to bear arms, and advising and educating their members, supporters, and the general public about the legality of particular firearms. The issues raised by, and consequences of, Defendant's policies, are of great interest to SAF and Calguns' constituencies. | Undisputed. |
| 75. Defendant's policies regularly cause the expenditure of resources by SAF and Calguns as people turn to these organizations for advice and information. | Disputed. The cited declarations do not show this. Defendant's policies do not cause these organizations to spend resources. The manner in which the organizations choose to spend their resources is decided by the organizations. |

| | |
|---|---|
| 76. Defendant's policies bar the members and supporters of SAF and Calguns from obtaining numerous, if not most, handguns. | Disputed. The cited declarations do not show this. And defendant objects to those declarations as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. The evidence actually shows that numerous handguns are available to plaintiffs. (See Decl. of Stephen Lindley in Supp. of Def. Stephen Lindley's Mot. for Summ. J.) |
| 77. Defendants' policies make firearms less accessible to the public, reduce the opportunity for selection and purchase, lessen price competition, and impose additional expenses on the purchase of firearms. | Disputed. The cited declarations do not show this. And defendant objects to those declarations as lacking sufficient foundation, lacking personal knowledge and being inadmissible opinion of a lay witness. The evidence actually shows that numerous handguns are available to plaintiffs. (See Decl. of Stephen Lindley in Supp. of Def. Stephen Lindley's Mot. for Summ. J.) |

Dated: December 2, 2013

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General l

/s/ ANTHONY R. HAKL

ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant Stephen Lindley*

SA2009310413