Alan Gura, Calif. Bar No.: 178221
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

Donald E.J. Kilmer, Jr., Calif. Bar No.: 179986
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.264.8489/Fax 408.264.8487

Jason A. Davis, Calif. Bar No.: 224250
Davis & Associates
27201 Puerta Real, Suite 300
Mission Viejo, CA 92691
949.310.0817/Fax 949.288.6894

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ivan Peña, et al., ) | Case No. 2:09-CV-01185-KJM-CKD |
| ) | |
| Plaintiffs, ) | PLAINTIFFS' MEMORANDUM OF |
| ) | POINTS AND AUTHORITIES IN |
| v. ) | REPLY TO DEFENDANT'S |
| ) | OPPOSITION TO PLAINTIFFS' |
| Stephen Lindley ) | MOTION FOR SUMMARY |
| ) | JUDGMENT |
| Defendant. ) | |
| _____ ) | Date: December 16, 2013 |
| | Time: 10 a.m. |
| | Dept: Courtroom 3,15th Floor |
| | Judge: The Hon. Kimberly J. Mueller |
| | Trial Date: None |
| | Action Filed: May 1, 2009 |

Come now Plaintiffs Ivan Peña, Roy Vargas, Doña Croston, Brett Thomas, the

Second Amendment Foundation, Inc., and the Calguns Foundation, Inc., by and

through undersigned counsel, and submit their Memorandum of Points and

Authorities in Reply to Defendant's Opposition to Plaintiffs' Motion for Summary

Judgment.

1    Dated: December 9, 2013        Respectfully submitted,

2    Alan Gura, Cal. Bar No.: 178221        Donald E.J. Kilmer, Jr., Cal. Bar No. 179986
3    Gura & Possessky, PLLC        Law Offices of Donald Kilmer, A.P.C.
     105 Oronoco Street, Suite 305        1645 Willow Street, Suite 150
4    Alexandria, VA 22314        San Jose, CA 95125
     703.835.9085/Fax 703.997.7665        408.264.8489/Fax 408.264.8487
5    alan@guraposessky.com        Don @DKLawOffice.com

6    /s/ Alan Gura                          /s/ Donald E.J. Kilmer, Jr.
7    Alan Gura        Donald E.J. Kilmer, Jr.

8    Jason A. Davis, Cal. Bar No.: 224250
     Davis & Associates
9    27201 Puerta Real, Suite 300
     Mission Viejo, CA 92691
10   949.310.0817/Fax 949.288.6894        Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5

6
      I.     Not Every Second Amendment Case Requires A Means-Ends
             Standard of Review. This Case Does Not.. . . . . . . . . . . . . . . . . . . . . . . . . . 2

7

8
     II.    Defendant Fails to Rebut the Fact that the Handguns
             Plaintiffs Seek Are of the Kind in Common Use for
9
             Traditional Lawful Purposes.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10
     III.   The Handgun Rostering Requirements Fail Heightened
             Scrutiny and Violate Plaintiffs' Rights to Equal Protection.. . . . . . . . 10

11

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

3      Cases

4      *Butler* v. *Michigan*,
5              352 U.S. 380 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6      *Daniels-Hall* v. *Nat'l Educ. Ass'n*,
               629 F.3d 992 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
7
       *District of Columbia* v. *Heller*,
8              554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

9      *Gideon* v. *Wainwright*,
10             372 U.S. 335 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11     *McDonald* v. *City of Chicago*,
12             130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13     *Moore* v. *Madigan*,
               702 F.3d 933 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
14
       *Range Road Music, Inc.* v. *East Coast Foods, Inc.*,
15             668 F.3d 1148 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16     *Roe* v. *Wade*,
17             410 U.S. 113 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18     *Staples* v. *United States*,
19             511 U.S. 600 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

20     *United States* v. *Chovan*, No. 11-50107,
               U.S. App. LEXIS 23199 (9th Cir. Nov. 18, 2013). . . . . . . . . . . . . . . . . . . . . . 3, 10
21
       *United States* v. *Liles*,
22             432 F.2d 18 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

23     *United States* v. *Marzzarella*,
24             614 F.3d 85 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

25     *United States* v. *Miller*,
26             307 U.S. 174 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

27     *United States* v. *Von Willie*,
               59 F.3d 922 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
28

1

*United States* v. *Vongxay*,
   594 F.3d 1111 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2

3

Statutes, Rules and Regulations

4

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5

18 U.S.C. § 922(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

Fed. R. Evid. 201(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

Fed. R. Evid. 701.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

Fed. R. Evid. 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

10

Other Authorities

11

Instructions, ATF Form 5300.11, available at
   http://www.atf.gov/files/forms/download/
   atf-f-5300-11.pdf (last visited Dec. 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12

13

14

*McDonald* v. *City of Chicago*, N.D. Ill. No. 08-3645,
   Dkt. 34-3 (Exhibit A to summary judgment motion). . . . . . . . . . . . . . . . . . . . . . 5

15

16

Merriam-Webster Dictionary, available at
   http://www.merriam-webster.com/dictionary/pistol
   (last visited Dec. 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

17

18

Merriam-Webster Dictionary, available at
   http://www.merriam-webster.com/dictionary/revolver
   (last visited Dec. 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO
<u>DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT</u>

## INTRODUCTION

Defendant correctly states that "plaintiffs are arguing that they have a constitutional right to purchase a handgun without [the alleged] safety features." Def. Opp. Br. 6-7. Since:

- handguns, as a class of arms, are protected by the Second Amendment; *District of Columbia* v. *Heller*, 554 U.S. 570 (2008);

- 100% of handguns lack microstamping, SUF 31;

- 89% of semiautomatic handguns lack chamber loaded indicators, SUF 14; and

- 86% of semiautomatic handguns lack magazine disconnect devices, *id.*;

Plaintiffs obviously have a constitutional right to purchase handguns lacking these alleged "safety" features—and that is before considering the undisputed fact that the State admonishes people not to rely on chamber loaded indicators and magazine disconnect devices because doing so provides a dangerously false sense of security.

Defendant has no answer for why Plaintiffs cannot purchase guns, such as the one Ivan Peña seeks, that have already been "proven" safe to the state, but fell off the roster for administrative reasons; or handguns such as the High Standard revolver at issue in *Heller*, which might be perfectly safe under the roster's rules but are ineligible for testing. Nor can Defendant explain why so many people, for no sensible reason, are exempted from the roster and allowed to have, for private purposes, these supposedly "dangerous" handguns.

Indeed, Defendant's brief does not explain—and offers zero evidence—as to how it can possibly be that Dick Heller's handgun, 100% of the handguns lacking

microstamping, and the overwhelming majority of semiautomatic handguns lacking chamber loaded indicators and magazine disconnect devices, are "dangerous and unusual," rather than handguns of the kind in common use for traditional lawful purposes. Defendant amply demonstrates the legislative preference for guns to be different—but that only helps establish the current reality.

Preferring to avoid the Supreme Court's common use test altogether, Defendant offers that "no court has recognized a constitutional right to purchase any handgun of one's choice regardless of its features." Def. Opp. Br. 7 (footnote omitted). That much is true as far as it goes. But the Supreme Court is a court. It held, like the D.C. Circuit before it, that people enjoy a right to purchase handguns notwithstanding the fact that several forests were pulped advancing the proposition that handguns, owing to their design and characteristics, were simply too dangerous to permit ordinary people to have, whatever the constitution provides.

Defendant thus only perfunctorily asserts various objections to the undeniable facts that handguns, including revolvers and semi-automatics lacking the state's desired features, are in common use for lawful purposes. Unmentioned in Defendant's brief, these objections do not withstand examination. Instead, Defendant knocks down two additional straw-men arguments Plaintiffs do not make: that the Second Amendment protects all firearms regardless of features, or only the characteristics of firearms as they existed in 1791.

ARGUMENT

I.   Not Every Second Amendment Case Requires A Means-Ends
     Standard of Review. This Case Does Not.

Defendant claims that "[w]e now have certainty that [Plaintiff's first]

analytical approach," dispensing with means-ends scrutiny, "is wrong." Def. Opp. Br.

1 (citing *United States* v. *Chovan*, No. 11-50107, U.S. App. LEXIS 23199 (9th Cir.

Nov. 18, 2013)).

 *Chovan* indeed brings "certainty" that someone is "wrong," but that someone

is the Defendant, who has apparently abandoned his "substantial burden" theory of

the case. *Compare* Defendant's SJ Br. (filed Oct. 25, 2013) *with* Defendant's Opp. Br.

(filed Dec. 2, 2013). What *Chovan* did *not* do is overrule the Supreme Court's

analytical approach in *Heller*, which declined to use means-ends scrutiny to resolve

the constitutional question surrounding a handgun ban. Nor did *Chovan* overrule

*United States* v. *Vongxay*, 594 F.3d 1111 (9th Cir. 2010), which used no standard of

review to uphold the federal felon in possession ban, 18 U.S.C. § 922(g)(1), as

presumptively lawful. *See also Moore* v. *Madigan*, 702 F.3d 933 (7th Cir. 2012) (total

handgun carry ban unconstitutional without reference to standards of review).

 *Heller* and *Vongxay* represent two sides of the same coin: as with many laws

implicating constitutional rights, some gun restrictions are (un)constitutional simply

by reference to historical practice. Suppose that California were to allow individuals

to purchase any handgun they wished, but maintained, for various alleged safety

reasons, that handguns kept at home be rendered inoperable. This Court would not

apply *Chovan*'s two-step review to shoehorn such a blatantly unconstitutional law

into some means-ends standard of review, when binding precedent simply declares

such laws "unconstitutional." *Heller*, 554 U.S. at 630.

 Were Defendant correct, and the Court were required to apply means-ends

scrutiny in every Second Amendment case, then *Heller* and *Vongxay* were wrongly

decided. Means-ends scrutiny is useful in many constitutional contexts, but it has

never been made exclusively mandatory—not with respect to the Second

Amendment, or to any other aspect of fundamental rights. The Sixth Amendment

requires that the accused be provided counsel—not because of "intermediate" or

"strict" scrutiny, but because that is the Supreme Court's considered interpretation

of the Amendment. *Gideon* v. *Wainwright*, 372 U.S. 335 (1963). Abortion regulations

may be subjected to means-ends review, but abortion prohibitions are not. *Roe* v.

*Wade*, 410 U.S. 113 (1973). Myriad cases balance First Amendment and regulatory

interests, but precedent involving arbitrary prohibitions of protected speech are

more direct. *See*, *e.g. Butler* v. *Michigan*, 352 U.S. 380 (1957).

　　　*Heller* supplies the analytical framework here. Neither the Supreme Court,

nor the D.C. Circuit before it, required a means-ends standard of review to measure

Washington, D.C.'s handgun ban against the Second Amendment. This case, if

anything, presents a handgun ban. It does not matter that Defendant believes that

whatever the state bans is, by virtue of that legislative opinion, unacceptably

dangerous.[1] Nor does it matter that other arms are available. The Supreme Court

rejected both arguments in *Heller*. If the arms are protected, then however they

might be regulated, they cannot be banned; the judicial inquiry ends.

II.　　Defendant Fails to Rebut the Fact that the Handguns Plaintiffs Seek Are of the Kind in Common Use for Traditional Lawful Purposes.

　　　Because Defendant does not brief his objections to Plaintiffs' "common use"

claims, the extent of his issues with Plaintiffs' evidence is unclear. Defendant's

---

　　　[1]Surely, California cannot legislate guns into and out of constitutional protection, any more than a legislative declaration determines which books, movies, and video games fall outside the realm of traditional First Amendment protection. Defendant's argument, that the *legislature* determines what is or is not within constitutional protection, renders the Constitution meaningless.

brevity on this point—and desire to avoid the common use test—is understandable; there is something odd about the Chief of the state's Bureau of Firearms being unable to agree that handguns, including those lacking features that the legislature found absent from 89% and 86% of semiautomatic handguns, and a feature (microstamping) that does not actually exist, are arms of the kind in common use for traditional lawful purposes. The question of whether handguns lacking chamber loaded indicators, magazine disconnect devices, and microstamping are in common use for traditional lawful purposes, to say nothing of guns ineligible for testing or otherwise administratively barred, is hardly a matter of expert opinion. Rather, it is a matter of judicial notice and, in any event, the evidence on these points is conclusive.

It bears repeating that in neither *Heller* nor *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010), not one judge or justice, on the District Courts, the Courts of Appeals, or the Supreme Court, struggled with whether the plaintiffs' handguns were of the kind in common use for lawful purposes. Brett Thomas's desired High Standard revolver is the very make and model at issue in *Heller*. If the Supreme Court did not know that revolvers are handguns of the type in common use for lawful purposes, it would have remanded on that issue. *See United States* v. *Miller*, 307 U.S. 174 (1939).[2] Nor is there any doubt that semi-automatic firearms anything but common. Well before *Heller*, the Supreme Court invoked the "long tradition of widespread lawful gun ownership by private individuals in this country" to hold that

_____

[2]Otis McDonald's handgun was a semi-automatic Beretta 950. *See McDonald* v. *City of Chicago*, N.D. Ill. No. 08-3645, Dkt. 34-3 (Exhibit A to summary judgment motion). That handgun does not appear on Defendant's roster.

possession of an apparent semi-automatic rifle does not create a duty to inquire whether the firearm happens to be an illegal machine gun. *Staples* v. *United States*, 511 U.S. 600, 610 (1994).

The very fact that the Supreme Court announced a "common use" test for arms inherently requires that at least *some* understanding of which sort of guns are "common" would be within judicial notice—either "generally known within the trial court's territorial jurisdiction" or which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Supreme Court was not guessing when it assumed that revolvers and semi-automatic firearms are within common use. The facts contained in the ATF manufacturing report, a simple government survey, are plainly within judicial notice. *See Daniels-Hall* v. *Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (judicial notice of facts reported on government websites). Contrary to Defendant's suggestion, the report supplies ample proof that revolvers and semiautomatic handguns are common enough. The relevant words are "pistols" and "revolvers," which, as both are used to distinguish each other, cannot mean the same thing.

No special expertise is needed to decipher these words. A dictionary will suffice. The first full definition for "pistol" is "a handgun whose chamber is integral with the barrel; broadly :  handgun." See Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/pistol (last visited Dec. 9, 2013). A "revolver" is "a handgun with a cylinder of several chambers brought successively into line with the barrel and discharged with the same hammer." See Merriam-Webster Dictionary, available at http://www.merriam-webster.com/dictionary/revolver (last visited Dec. 9, 2013). Helpfully, the ATF defines these terms in

substantially the same way that Merriam-Webster does, referring, in the form that elicits the reported information, to "pistol" as a handgun with "a chamber(s) as an integral part(s) of, or permanently aligned with, the bore(s)," and "revolver" as "[a] projectile weapon, of the pistol type, having a breechloading chamber cylinder so arranged that the cocking of the hammer or movement of the trigger rotates it and brings the next cartridge in line with the barrel for firing." *See* Instructions, ATF Form 5300.11, available at http://www.atf.gov/files/forms/download/ atf-f-5300-11.pdf (last visited Dec. 9, 2013).

Modern non-revolver "pistols" utilize magazines, which are nearly always detachable, to feed bullets into the chamber. This, again, is not a scientific opinion beyond the ken of lay understanding, but a matter of judicial notice. Anyone who has seen a movie or television show in the last fifty years might have seen semi-automatic handguns with detachable magazines used for traditional lawful purposes—which is precisely why Defendant exempts the entertainment industry from the roster. This knowledge is similar to the knowledge possessed by any teenager that modern cars lacking a manual transmission utilize an automatic transmission. And one need not be a naval or locomotive engineer to know that modern warships do not employ sails, and that Amtrak does not run steam engines billowing smoke and ash from coal-fired boilers in regular service.

Beyond the ATF report, dictionaries, and common knowledge, Plaintiffs' declarations plainly suffice to explain these points under Fed. R. Evid. 701, as their testimony is "(a)  rationally based on [their] perception; (b) helpful to . . . determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Plaintiffs are merely describing what

firearms are in common use based on their observations. The Ninth Circuit has always allowed this type of information, relating to firearms, to be admitted. *See, e.g.*, *United States* v. *Von Willie*, 59 F.3d 922, 929 (9th Cir. 1995) (allowing officer to testify that "the MK-11 . . . was a particularly intimidating gun and he knew of drug dealers who used that specific weapon . . . These observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); *United States* v. *Liles*, 432 F.2d 18, 20 (9th Cir. 1970) ("The manager of the sporting goods section, a man who sold a wide variety of firearms, identified the weapon as common variety of revolver."); *cf. Range Road Music, Inc.* v. *East Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). It cannot be that lay witnesses may testify that drug dealers use MK-11s for their "particularly intimidating" features, but gun owners and the heads of Second Amendment groups cannot establish that revolvers and semi-automatic handguns are used for lawful purposes by the American public.

Given the background facts that handguns, revolvers and semi-automatic pistols, are in common use for traditional lawful purposes, non-rostered handguns are plainly within that set. Defendant admitted that no microstamping compliant handguns exist, and he does not know whether they ever will exist. SUF 31; Exh. P., RFA Responses 7 & 8. The Act's legislative history establishes that chamber loaded indicators and magazine disconnect devices are absent from 89% and 86%, respectively, of all semi-automatic handguns. SUF 14. And this is before Plaintiffs testified as to the broad impact of California's handgun rostering law.

Sidestepping the issue, Defendant offers various arguments taking issue with (and misconstruing) the common use test itself. Defendant should raise these issues

1  with the Supreme Court, which handed down the test in *Heller*. Defendant's

2  assertion that Plaintiffs could just as easily claim a right to "*any* firearm that might

3  be called a 'handgun,'" Def. SJ Opp. 7 n.3, is simply incorrect. If Plaintiffs claimed a

4  right to a handgun whose function meant that it were *not* the sort of handgun that

5  would be in common use for traditional lawful purposes, they would lose.

6

7         Nor does Defendant find support in the Third Circuit's rejection of a claim to

8  unserialized handguns. *United States* v. *Marzzarella*, 614 F.3d 85 (3d Cir. 2010). To

9  begin, *Marzzarella* did not and could not overrule *Heller*'s common use test.

10 Plaintiffs do *not* make *Marzzarella*'s argument that their desired handguns are

11 protected "because they were 'in common use' at the time of ratification." Def. SJ

12 Opp. 7. "[T]he Second Amendment extends, prima facie, to all instruments that

13 constitute bearable arms, even those that were not in existence at the time of the

14 founding." *Heller*, 554 U.S. at 582.

15

16        But *Marzarella* hardly helps Defendant, as it offered that the common use test

17 references a firearm's "utility:" "Heller distinguished handguns from other classes of

18 firearms, such as long guns, by looking to their functionality . . . unmarked firearms

19 are functionally no different from marked firearms." *Marzzarella*, 614 F.3d at 94.

20 "Because unmarked weapons are functionally no different from marked weapons, [18

21 U.S.C.] § 922(k) does not limit the possession of any class of firearms." *Id*. at 98-99.

22 But handguns containing the state's desired features *are* functionally different than

23 those that do not. And Defendant does not address the fact that the rostering

24 scheme bars access to many handguns of the kind in common use for administrative

25 reasons bearing no relationship to particular features.

26

27

28

1

2

III.     The Handgun Rostering Requirements Fail Heightened Scrutiny and Violate Plaintiffs' Rights to Equal Protection.

3

Defendant's heightened scrutiny and equal protection arguments may now be

4

primary rather than secondary, given *Chovan*'s foreclosure of his "substantial

5

burden" claims. But his opposition to Plaintiffs' summary judgment motion offers

6

nothing new in this regard. Plaintiffs have already addressed these claims in detail,

7

8

in their opposition to Defendant's motion. That discussion, incorporated here by

9

reference, remains before the Court without need of reiteration here. Suffice it to say

10

that when the state teaches people that certain features are dangerous, it is

11

irrational to require them in the name of safety. Nor does it make sense to allow the

12

acquisition for private use of allegedly "unsafe" handguns to privileged individuals.

13

CONCLUSION

14

15

Plaintiffs' motion for summary judgment should be granted.

16

Dated: December 9, 2013          Respectfully submitted,

17

Alan Gura, Cal. Bar No.: 178221          Donald E.J. Kilmer, Jr., Cal. Bar No. 179986
Gura & Possessky, PLLC                   Law Offices of Donald Kilmer, A.P.C.

18

105 Oronoco Street, Suite 305            1645 Willow Street, Suite 150
Alexandria, VA 22314                     San Jose, CA 95125

19

703.835.9085/Fax 703.997.7665            408.264.8489/Fax 408.264.8487
alan@guarapossessky.com                  Don @DKLawOffice.com

20

21

/s/ Alan Gura                            /s/ Donald E.J. Kilmer, Jr.

22

Alan Gura                                Donald E.J. Kilmer, Jr.

23

Attorneys for Plaintiffs

24

25

26

27

28