KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER, State Bar No. 146083
Supervising Deputy Attorney General
ANTHONY R. HAKL, State Bar No. 197335
Deputy Attorney General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-9041
 Fax: (916) 324-8835
 E-mail: Anthony.Hakl@doj.ca.gov
*Attorneys for Defendant Stephen Lindley*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IVAN PEÑA, ROY VARGAS, DOÑA CROSTON, BRETT THOMAS, SECOND AMENDMENT FOUNDATION, INC. and THE CALGUNS FOUNDATION, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**STEPHEN LINDLEY,**<br><br>Defendant. | Case No. 2:09-CV-01185-KJM-CMK<br><br>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, BY DEFENDANT STEPHEN LINDLEY**<br><br>Date:          December 16, 2013<br>Time:         10:00 a.m.<br>Dept.:         Courtroom 3, 15th floor<br>Judge:        The Hon. Kimberly J. Mueller<br>Trial Date:   None at this time<br>Action Filed: May 1, 2009 |

**TABLE OF CONTENTS**

                                                                                                                            **Page**

Introduction ............................................................................................................................. 1
Argument ................................................................................................................................ 1
      I.     *Chovan* applies to this case. ................................................................................. 1
      II.    The Unsafe Handgun Act does not burden the Second Amendment right, which is not unlimited. ........................................................................................ 2
      III.   The Act withstands constitutional scrutiny ............................................................ 4
      IV.   Plaintiffs have failed to articulate an equal protection claim. ................................ 5
Conclusion .............................................................................................................................. 5

i

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, BY DEFENDANT STEPHEN LINDLEY (2:09-CV-01185-KJM-CKD)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*City of Cleburne, Tex. v. Cleburne Living Center*
   473 U.S. 432 (1985) .................................................................................................... 5

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ............................................................................................. *passim*

*Kachalsky v. Cacace*
   817 F. Supp. 2d 235 (S.D.N.Y. 2011) ......................................................................... 4

*Nordlinger v. Hahn*
   505 U.S. 1 (1992) ........................................................................................................ 5

*Osterweil v. Bartlett*
   819 F. Supp. 2d 72 (N.D.N.Y. 2011) .......................................................................... 5

*Parker v. District of Columbia*
   478 F.3d 370 (2007) .................................................................................................... 4

*Teixeira v. County of Alameda*
   No. C 12–03288 SI, 2013 WL 707043 (N.D. Cal. 2013) ........................................... 2

*United States v. Chovan*
   No. 11-50107, --- F.3d ---, 2013 WL 6050914 (9th Cir. Nov. 18, 2013) ........... 1, 2, 4, 5

*United States v. Engstrum*
   609 F. Supp. 2d 1227 (D. Utah 2009) ........................................................................ 4

*United States v. Marzzarella*
   614 F.3d 85 (3d Cir. 2010) .......................................................................................... 3

*United States v. Miller*
   307 U.S. 174 (1939) .................................................................................................... 2

*Williams v. State*
   417 Md. 479, 10 A.3d 1167 (2011) ............................................................................. 2

# **TABLE OF AUTHORITIES**
(continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  Second Amendment ................................................................................................... *passim*

**OTHER AUTHORITIES**

James T. Dixon, *On Lemon Squeezers and Locking Devices: Consumer Product Safety
  and Firearms, A Modest Proposal*, 47 Case W. Res. L. Rev. 979 (1997) ................................. 3

Jonathan E. Lowy, *Litigating Against Gun Manufacturers*, 36 Trial 43 (Nov. 2000) ................... 3

Vernick & Teret, *New Courtroom Strategies Regarding Firearms: Tort Litigation Against
  Firearm Manufacturers and Constitutional Challenges to Gun Laws*, 36 Hous. L. Rev.
  1713 (1999) ................................................................................................................... 3

# INTRODUCTION

Plaintiffs continue to argue that there is a handgun "ban" in California, and that the "ban" is unconstitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2008). Plaintiffs' argument distorts *Heller* and the record before this Court. Plaintiffs' position is also inconsistent with the Ninth Circuit's recent decision in *United States v. Chovan*, No. 11-50107, --- F.3d ---, 2013 WL 6050914 (9th Cir. Nov. 18, 2013).

There is no merit to plaintiffs' Second Amendment and equal protection claims. Accordingly, the Court should grant defendant Stephen Lindley's motion for summary judgment in its entirety.

# ARGUMENT

## I. *CHOVAN* APPLIES TO THIS CASE.

In their opposition brief, plaintiffs acknowledge the recent decision in *Chovan*, but attempt to minimize its significance by opining that the Ninth Circuit adopted the two-step inquiry therein only "for at least some Second Amendment cases." (Pls.' Mem. of P. & A. in Opp'n to Def.'s Mot. for Summ. J ("Pls.' Opp'n") at 3.) Plaintiffs do not identify the category of Second Amendment cases to which they contend *Chovan* does apply. Thus, plaintiffs suggest – but do not come right out and say – that this Court may ignore *Chovan*.

This suggestion is misguided. As the only published decision by the Ninth Circuit explaining how Second Amendment claims should be analyzed, *Chovan* governs here. The majority opinion in *Chovan* instructs as much: "We join the Third, Fourth, Seventh, Tenth, and D.C. Circuits in holding that the two-step framework outlined above *applies to Second Amendment challenges.*" *Chovan*, 2013 WL 6050914 at *8 (italics added). Explaining that the case represents the Ninth Circuit's decision to apply a tiers of scrutiny analysis "to our Second Amendment jurisprudence" and "in Second Amendment cases," the concurring opinion also shows that the Court of Appeals understood that it was adopting an analytical framework generally applicable to Second Amendment challenges, rather than one applicable to just a subset of Second Amendment challenges. *Id.* at *15, 23 (Bea, J., concurring). This Court should adhere to *Chovan*.

**II.   THE UNSAFE HANDGUN ACT DOES NOT BURDEN THE SECOND AMENDMENT RIGHT, WHICH IS NOT UNLIMITED.**

According to plaintiffs, if this Court determines that the firearms at issue in this case are "the sorts of weapons" that were "in common use at the time," *Heller*, 554 U.S. at 627, then "the case ends." (Pls.' Opp'n at 12.) However, even if plaintiffs were able to show the guns they desire are in "common use" – which the record presented by plaintiffs does not show – they would not be entitled to judgment. This is because the Unsafe Handgun Act (UHA, or the Act) does not burden their Second Amendment rights. *See Chovan*, 2013 WL 6050914 at *8 (first question is "whether the challenged law burdens conduct protected by the Second Amendment").

Regarding the so-called "common use" test upon which plaintiffs rely, *Heller* stated: "We also recognize another important limitation on the right to keep and carry arms. [*United States v. Miller*, 307 U.S. 174 (1939)] said, as we have explained, that the sorts of weapons protected were those 'in common use at the time.'" *Heller*, 554 U.S. at 627. Thus, the "common use" test is actually a *limitation* on the Second Amendment right. But it is not the only limitation, as the Supreme Court recognized. *Id*.

More specifically, *Heller* concerned "the possession of usable handguns in the home." 554 U.S. at 627. It did not recognize an unlimited right to buy or sell handguns. *See Teixeira v. County of Alameda*, No. C 12–03288 SI, 2013 WL 707043 at *6 (N.D. Cal. 2013) ("right to sell or purchase guns" is "as yet articulated"); *see also Williams v. State*, 417 Md. 479, 10 A.3d 1167, 1169, 1177 (2011) (holding that statute prohibiting carrying handgun outside home without permit "is outside of the scope of the Second Amendment" and noting "[i]f the Supreme Court ... meant its holding to extend beyond home possession, it will need to say so more plainly"), *cert. denied*, ––– U.S. ––––, 132 S. Ct. 93, 181 L.Ed.2d 22 (2011). The UHA concerns handgun sales, not possession.

Additionally, the Supreme Court included "laws imposing conditions and qualifications on the commercial sale of arms" in its list of "presumptively lawful regulatory measures." 554 U.S. at 626 & n.26. Plaintiffs acknowledge this limitation, but argue that it applies only to "those conditions and qualifications that existed in 1791" – or perhaps, plaintiffs concede, 1868, the year

2

of the Fourteenth Amendment's ratification. (Pls.' Opp'n at 7 & fn. 3.) Either way, this argument is baseless. *See Heller*, 554 U.S. at 582 ("Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment."); *United States v. Marzzarella*, 614 F.3d 85, 93-94 (3d Cir. 2010) (rejecting argument that firearms without serial numbers are protected because "firearms in common use in 1791 did not possess serial numbers").

Plaintiffs go on to broadly argue that "nothing in American history . . . remotely presaged California's Unsafe Handgun Act." (Pls.' Opp'n at 8.) This is irrelevant. It is also wrong. The legislative history submitted by plaintiffs shows that chamber load indicators date to the 1800's. (Doc. No. 61-9 filed Oct. 25, 2013 at 11 ("there have been patents on file in the United States for chamber load indicators for handguns since the late 1800's.").)[1] Magazine disconnect devices have been around for more than a century. *See* Jonathan E. Lowy, *Litigating Against Gun Manufacturers*, 36 Trial 43 (Nov. 2000) ("The feature was designed in 1910 because of the dangerous scenario – common even then – that occurs when someone removes a pistol's magazine and then assumes that the gun is unloaded, unaware of the live round in the chamber."); Vernick & Teret, *New Courtroom Strategies Regarding Firearms: Tort Litigation Against Firearm Manufacturers and Constitutional Challenges to Gun Laws*, 36 Hous. L. Rev. 1713, 1738 (1999) ("patents for magazine safeties were first issued around the turn of the twentieth century"). In general, devices to reduce firearm accidents have been around for generations. (*See* James T. Dixon, *On Lemon Squeezers and Locking Devices: Consumer Product Safety and Firearms, A Modest Proposal*, 47 Case W. Res. L. Rev. 979, 993 (1997) (stating that the idea of producing a child-proof firearm is over a century old as evidenced by the "lemon squeezer" gun). So have firearm serial numbers, which are analogous to microstamping. *Marzzarella*, 614 F.3d at 93 n.11 (use of serial numbers arose around 1866).

Finally, and as Lindley has pointed out elsewhere, numerous varieties of handguns are widely possessed, bought and sold in California. Plaintiffs call this argument frivolous, citing the

---

[1] This citation is to the legislative history as it is labeled and numbered in the Court's CM/ECF system.

3

District of Columbia Circuit opinion in the *Heller* litigation, *Parker v. District of Columbia*, 478 F.3d 370, 376 (2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008). According to that panel opinion, "[o]nce it is determined – as we have done – that handguns are 'Arms' referred to in the Second Amendment, it is not open to the District to ban them." However, in contrast to the ordinance at issue in the *Heller* litigation, the UHA does not concern handguns categorically; it concerns handgun safety features. And in any event, the Act is hardly a "ban." It does not apply to all handguns, much less prohibit the possession and use of all handguns like the regulation in *Heller*. Moreover, in the post-*Heller* era, courts have in fact considered the available alternatives for acquiring firearms for self defense in assessing any burden imposed by a regulation. (*See* Opp'n to Pls.' Mot. for Summ. J. by Def. Stephen Lindley ("Lindley's Opp'n") at 6.)

The UHA does not burden plaintiffs' Second Amendment rights. Accordingly, this Court should end its analysis at step one of the *Chovan* inquiry and grant Lindley's motion for summary judgment.

### III. THE ACT WITHSTANDS CONSTITUTIONAL SCRUTINY

Even if the Court were to find that the UHA burdens Second Amendment rights and proceeds to step two of the *Chovan* inquiry, the UHA would withstand constitutional scrutiny. More specifically, the UHA survives the intermediate scrutiny standard applied in *Chovan*, even though the appropriate level of scrutiny for this case is likely less rigorous than the one used in *Chovan*. (*See* Lindley's Opp'n at 7-10.)

Plaintiffs argue for the application of strict scrutiny. But plaintiffs have yet to cite a case requiring the application of strict scrutiny to a firearms regulation. Lindley has identified *one* such case. *See United States v. Engstrum*, 609 F. Supp. 2d 1227, 1231-32 (D. Utah 2009) (applying strict scrutiny to statute banning persons convicted of misdemeanor domestic violence from possessing firearms); *see also Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 266 n.29 (S.D.N.Y. 2011) ("*Engstrum* appears to be the only case post-*Heller* to adopt a one-size-fits-all strict scrutiny approach").

4

REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION, BY DEFENDANT STEPHEN LINDLEY (2:09-CV-01185-KJM-CKD)

As the discussion in *Chovan* demonstrates, the overwhelming majority of Second Amendment cases post-*Heller* have rejected strict scrutiny. *See Chovan*, 2013 WL 6050914 at *5-8. Also, as the *Heller* dissent and others have noted, *Heller*'s list of presumptively lawful regulatory measures is itself inconsistent with strict scrutiny. *See Heller*, 554 U.S. at 688 (Breyer, J., dissenting) ("the majority implicitly, and appropriately, reject[ed]" a strict scrutiny standard through its list of presumptively lawful regulatory measures); *Osterweil v. Bartlett*, 819 F. Supp. 2d 72, 84 (N.D.N.Y. 2011) (applying intermediate scrutiny to handgun permit law).

### IV. PLAINTIFFS HAVE FAILED TO ARTICULATE AN EQUAL PROTECTION CLAIM.

"The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (equal protection guarantee "is essentially a direction that all persons similarly situated should be treated alike"). Despite the opportunities to brief the matter, plaintiffs have failed to identify a similarly situated class that the UHA treats differently. Thus, equal protection is not even implicated. The Court should therefore grant Lindley's motion for summary judgment on the equal protection claim.

### CONCLUSION

For these reasons, and for all of the reasons he has articulated in the record, Lindley respectfully requests that this Court grant his motion for summary judgment in its entirety.

Dated:  December 9, 2013                          Respectfully Submitted,

KAMALA D. HARRIS
Attorney General of California
TAMAR PACHTER
Supervising Deputy Attorney General

/s/ ANTHONY R. HAKL

ANTHONY R. HAKL
Deputy Attorney General
*Attorneys for Defendant
Firearms Bureau*

SA2009310413
11232572.doc