Alan Gura, Calif. Bar No.: 178221
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

Donald E.J. Kilmer, Jr., Calif. Bar No.: 179986
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.264.8489/Fax 408.264.8487

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Ivan Peña, et al., | ) | Case No. 2:09-CV-01185-KJM-CKD |
| Plaintiffs, | ) | |
| v. | ) | |
| Stephen Lindley | ) | |
| Defendant. | ) | |
| _____ | ) | |

NOTICE OF SUPPLEMENTAL AUTHORITY

Yesterday's Ninth Circuit decision in *Peruta* v. *County of San Diego*, No. 10-56971 (9th Cir. Feb. 13, 2014), attached hereto as Exhibit A, strongly supports Plaintiffs' positions.

California law provides that a license to carry a concealed handgun is the only method by which most people might carry a handgun in public for self-defense, and conditions issuance of such licenses upon, inter alia, "good cause." Cal. Penal Code § 26150. In *Peruta*, the Ninth Circuit struck down San Diego County's application of the "good cause" requirement as "[a] set of circumstances that distinguish the

applicant from the mainstream and causes him or her to be placed in harm's way," such that "concern for one's personal safety alone is not considered good cause." *Peruta*, slip op. at 3 (quotations omitted).[1]

*Peruta*'s application of the two-step Second Amendment inquiry announced in *United States* v. *Chovan*, 735 F.3d 1127 (9th Cir. 2013) is highly instructive. First, *Peruta* reiterates that the initial "scope" question is based on text and history, specifically, the original public meaning of the Constitution's language. *Peruta*, slip op. at 9-10. Considering that the "good cause" requirement applies generally to law-abiding, responsible people, "we consider the scope of the right only with respect to responsible, law-abiding citizens." *Id.* at 9 n.2. "With respect to irresponsible or non-law-abiding citizens, a different analysis—which we decline to undertake here—applies." *Id.* (citations omitted).

Following an exhaustive thirty-eight page historical survey, *Peruta* concluded the step-one analysis by determining that "the carrying of an operable handgun outside the home for the lawful purpose of self-defense, though subject to traditional restrictions, constitutes 'bear[ing] Arms' within the meaning of the Second Amendment." *Id.* at 47.

And critically, the Ninth Circuit then explained—as Plaintiffs here have always urged—that "[t]racing the scope of the right is a necessary first step in the constitutionality analysis—and sometimes it is the dispositive one." *Id.* at 48 (citations omitted).

---

[1] Although it is difficult to see what is left of the "good cause" requirement if the constitutional interest in self-defense is cause enough, the *Peruta* majority disclaimed that it had struck down the statute. *Peruta*, slip op. at 62 n.19.

> A law that "under the pretence of regulating, amounts to a destruction of the right" would not pass constitutional muster "[u]nder any of the standards of scrutiny that we have applied to enumerated constitutional rights." Put simply, a law that destroys (rather than merely burdens) a right central to the Second Amendment must be struck down.

*Id.* (quotation and citation omitted).

> [I]f self-defense outside the home is part of the core right to "bear arms" and the California regulatory scheme prohibits the exercise of that right, no amount of interest-balancing under a heightened form of means-ends scrutiny can justify San Diego County's policy.

*Id.* at 49 (citation omitted).

Recounting the various tiers of means-ends scrutiny applied in Second Amendment cases, the Ninth Circuit continued:

> [T]here is, of course, an alternative approach for the most severe cases—the approach used in *Heller* itself. In *Heller*, applying heightened scrutiny was unnecessary. No matter what standard of review to which the Court might have held the D.C. restrictions, "banning from the home the most preferred firearm in the nation to keep and use for protection of one's home and family would fail constitutional muster." A law effecting a "destruction of the right" rather than merely burdening it is, after all, an infringement under any light.

*Id.* at 51 (footnote and citations omitted). Distinguishing *Chovan*, the Ninth Circuit explained that "[i]ntermediate scrutiny is not appropriate . . . for cases involving the destruction of a right at the core of the Second Amendment." *Id.* at 52 n.15.

"It is the rare law that 'destroys' the right, requiring *Heller*-style per se invalidation, but the Court has made perfectly clear that a ban on handguns in the home is not the only act of its kind." *Id.* at 56. Accordingly, the Ninth Circuit held that San Diego's policies fail at step one—*without* calling for any means-ends scrutiny analysis. And it did so notwithstanding the fact that the prohibition on carrying handguns for self-defense was incomplete, *id.* at 2 n.1, or that there may be *other* constitutionally-protected reasons to carry handguns, such as "recreation,

hunting, or resisting government tyranny," *id.* at 16 n.4 (quotation omitted).

*Peruta* thus supports Plaintiffs' arguments that allowance for *some* constitutionally-protected arms does not sanction the prohibition of others:

> [T]he question is not whether the California scheme (in light of San Diego County's policy) allows *some* people to bear arms outside the home in *some* places at *some* times; instead, the question is whether it allows the typical responsible, law-abiding citizen to bear arms in public for the lawful purpose of self-defense.

*Id.* at 53. "*Heller* teaches that a near-total prohibition on keeping arms (*Heller*) is hardly better than a near-total prohibition on bearing them (this case), and vice versa. Both go too far." *Id.* at 57.

Likewise, here, Plaintiffs are not claiming that California's handgun rostering laws bar access to *all* handguns. That *some* handguns are allowed is beside the point. Rather, Plaintiffs claim that particular unrostered handguns are constitutionally-protected, such that barring access to *those* handguns violates their Second Amendment rights, in the precise way that Plaintiffs would exercise those rights. *Peruta* makes clear that should this Court determine that the subject handguns are within constitutional protection, a prohibition on the sale and importation of these handguns—a destruction of the right Plaintiffs claim—fails *Chovan* at step one, without applying any level of means-ends scrutiny.

Dated: February 14, 2014                                       Respectfully submitted,

| | |
|---|---|
| Donald E.J. Kilmer, Jr., Cal. Bar No. 179986 | Alan Gura, Cal. Bar No. 178221 |
| Law Offices of Donald Kilmer, A.P.C. | Gura & Possessky, PLLC |
| 1645 Willow Street, Suite 150 | 105 Oronoco Street, Suite 305 |
| San Jose, CA 95125 | Alexandria, VA 22314 |
| 408.264.8489/Fax 408.264.8487 | 703.835.9085/Fax 703.997.7665 |
| Don@DKLawOffice.com | alan@gurapossessky.com |
| | |
| /s/ Donald E.J. Kilmer, Jr. | /s/ Alan Gura |
| Donald E.J. Kilmer, Jr. | Alan Gura |

# CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

Notice of Supplemental Authority

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 14th day of February, 2014, at Alexandria, Virginia.

/s/ Alan Gura
Alan Gura
Counsel for Plaintiffs