Alan Gura, Calif. Bar No.: 178221
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

Donald E.J. Kilmer, Jr., Calif. Bar No.: 179986
Law Offices of Donald Kilmer, A.P.C.
1645 Willow Street, Suite 150
San Jose, CA 95125
408.264.8489/Fax 408.264.8487

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Ivan Peña, et al., | ) | Case No. 2:09-CV-01185-KJM-CKD |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' SUPPLEMENTAL |
| | ) | BRIEF |
| v. | ) | |
| | ) | |
| Stephen Lindley | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Come now Plaintiffs Ivan Peña, Roy Vargas, Doña Croston, Brett Thomas, the Second Amendment Foundation, Inc., and the Calguns Foundation, Inc., by and through undersigned counsel, and submit their Supplemental Brief in response to the Court's Order of June 5, 2014.

Dated: July 7, 2014                Respectfully submitted,

Alan Gura, Cal. Bar No.: 178221         Donald E.J. Kilmer, Jr., Cal. Bar No. 179986
Gura & Possessky, PLLC                  Law Offices of Donald Kilmer, A.P.C.
101 N. Columbus St., Suite 405          1645 Willow Street, Suite 150
Alexandria, VA 22314                    San Jose, CA 95125
703.835.9085/Fax 703.997.7665           408.264.8489/Fax 408.264.8487
alan@gurapossessky.com                  Don @DKLawOffice.com

/s/ Alan Gura                           /s/ Donald E.J. Kilmer, Jr.
Alan Gura                               Donald E.J. Kilmer, Jr.
                                        Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   The California Unsafe Handgun Act's ("UHA") Microstamping
     Requirement Amounts to a De Facto Ban of Unrostered Weapons
     to which the Requirement Applies.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Even if the Microstamping Requirement Does Not Amount to a
     De Facto Ban of the Unrostered Weapons to Which It Applies,
     the Extent of the Requirement's Burden on Second Amendment
     Rights is Severe.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III. No Reasonable Fit Exists Between the UHA's Testing Requirements
     and the Statute's Purposes.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.   The "Similar Gun" Exception, Cal. Penal Code § 32030. . . . . . . . . . . . . . 7

     B.   Safety Device, Firing, and Drop Safety Requirements,
          Cal. Penal Code §§ 31910(a)(1), (2), (3) and (b)(1), (2) & (3). . . . . . . . . . . 8

     C.   Magazine Disconnect Devices and Chamber Loaded Indicators,
          Cal. Penal Code §§ 31910(b)(4)-(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

3

Case 2:09-cv-01185-KJM-CKD   Document 91   Filed 07/07/14   Page 3 of 17

TABLE OF AUTHORITIES

Cases

*Bd. of Trs.* v. *Fox*,
    492 U.S. 469 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Jackson* v. *City & County of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *McGowan*,
    E.D. Cal. No. 2:12-CR-00207-TLN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Valle Del Sol Inc.* v. *Whiting*,
    709 F.3d 808 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


Statutes and Regulations

11 Cal. Code Regs. § 4049(s). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 Cal. Code Regs. § 4059(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 Cal. Code Regs. § 4060(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 922(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 922(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

27 CFR § 478.11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

501 Code Mass. Rules § 7.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

501 Code Mass. Rules § 7.03(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

501 Code Mass. Rules § 7.04(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

501 Code Mass. Rules § 7.06(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Penal Code § 32000(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Penal Code § 32000(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Penal Code § 32000(b)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Penal Code § 32015(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Penal Code § 32110(g). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Cal. Penal Code § 32110(h). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Code Md. Regs. § 29.03.03.01(B)(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Code Md. Regs. § 29.03.03.11(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.C.M.R. § 24-2323.2(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Md. Code Ann., Pub. Safety § 5-405(c)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Md. Code Ann., Pub. Safety § 5-406(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Other Authorities

Bureau of Alcohol, Tobacco, *Firearms & Explosives,*
  *Annual Firearms Manufacturing and Export Report*,
  available at https://www.atf.gov/sites/default/files/
  assets/pdf-files/ afmer_2012_final_web_report_
  17jan2014.pdf (last visited July 7, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dorothy Kenney, *Firearm Microstamp Technology: Failing Daubert*
  *and Federal Rules of Evidence 702*,
  38 Rutgers Computer & Tech L.J. 199 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PLAINTIFFS' SUPPLEMENTAL BRIEF

In response to the Court's questions, Plaintiffs respond:

I. The California Unsafe Handgun Act's ("UHA") Microstamping Requirement Amounts to a De Facto Ban of Unrostered Weapons to which the Requirement Applies.

Unrostered handguns cannot be manufactured, caused to be manufactured, imported into the state for sale, kept for sale, offered or exposed for sale, given or even lent under penalty of imprisonment. Cal. Penal Code § 32000(a). While some minor exceptions apply, *e.g.*, for law enforcement or entertainment production, *id.* §§ 32000(b)(4), 32110(h), even those exempted individuals are scrutinized and may face prosecution if they engage in the business of buying and reselling "privately" unrostered handguns. See, *e.g.*, *United States* v. *McGowan*, E.D. Cal. No. 2:12-CR-00207-TLN. Nor may Californians purchase unrostered handguns from outside the state for use in California, as federal law bars individuals from acquiring handguns outside their state of residence. 18 U.S.C. §§ 922(a)(3) and (b)(3).[1]

Accordingly, California residents simply have no meaningful access to unrostered handguns. Californians may only acquire unrostered handguns by establishing residence in another state, acquiring the handgun, and re-settling in California. Used, unrostered handguns are available only by happenstance, *e.g.*, inheritance, pawn sales, or private party transfers of handguns already in the state because they arrived while rostered, or through a law enforcement, family, or entertainment exemption.

---

[1] The Act plainly bars dealers from "importing for sale" unrostered handguns. Cal. Penal Code § 32000(a). If the UHA contained a sweeping exemption allowing for private import transfers, it would not materially advance any state interest.

As microstamping technology is not commercially available, requiring microstamping as a condition of rostering semi-automatic handguns effects a de facto ban on all semi-automatic handguns that might now be designed, as well as all previously rostered semi-automatic handgun models that have been updated (see infra).

Various reasons explain microstamping's absence from the handgun market. As two major firearms manufacturers have advised the Court, the technology is not feasible.[2] The Court's June 5 order having invited additional "factual support," Plaintiffs now add the testimony and supporting exhibits of Lawrence Keane, Secretary and General Counsel of the Sporting Arms and Ammunition Manufacturers Institute ("SAAMI"), the accredited standards development organization for the firearm industry's test methods, definitive proof loads, and ammunition performance standards.[3] Keane is "not aware of a single handgun manufacturer worldwide that has produced a functioning, commercially available semiautomatic pistol designed and equipped with [microstamping]." Keane Decl. ¶ 20. It appears no manufacturer will comply with the microstamping requirement. *Id*. "The reason is simple, microstamping does not work." *Id*.

"Independent, peer-reviewed studies, including ones by the inventor of microstamping, Todd Lizotte, have confirmed that firearm microstamping is unproven and unreliable to perform in the manner that the UHA requires." *Id*. ¶ 21.

---

[2] Even were microstamping commercially available, requiring microstamping would not materially advance the state's public safety interests. See infra.

[3] Keane also chairs SAAMI's Legislative and Legal Affairs Committee, and is the Senior Vice President, Assistant Secretary, and General Counsel to the National Shooting Sports Foundation.

According to one study, handguns that perform the highest number of readable microstamping impressions cannot pass the UHA's firing reliability test. *Id.* ¶ 22 & Exh. C. A 1988 U.C. Davis study concluded that variability in microstamping performance counter-indicates adoption of a broad microstamping mandate. *Id.* ¶ 23 & Exh. D. A National Research Council study the same year likewise concluded that "in-depth investigations on several topics are needed" before microstamping might be implemented. *Id.* ¶ 24. Over a year after California adopted its microstamping requirement, the technology's inventor conceded that "it is apparent that legitimate questions exist related both to the technical aspects, production costs, and database management associated with microstamping that should be addressed before wide scale implementation is legislatively mandated." *Id.* ¶ 25 & Exh. E.

Mr. Lizotte has since stated that "complete recognition [of microstamping impressions] is still not possible in all cases." *Id.* ¶ 26 & Exh. F.

> But the UHA requires that each of three handguns of the same model seeking to be added to the Roster not only produces complete and fully legible microstamp markings on the first two casings they fire, but also that each produces such markings on two additional casing after each has been fired over 600 times, and that the markings are double checked for accuracy. California Code of Regulations, Title 11 § 4060(h). In other words, the UHA requires that there be complete recognition in all cases during testing; a feat the independent studies demonstrate and the inventor Mr. Lizotte now admits is not possible.

*Id.* ¶ 27.

Manufacturers are also not convinced that microstamping would materially advance any state purpose.[4]

---

[4]The Court's order did not ask whether the microstamping requirement reasonably fits the UHA's goals, but the industry's belief about microstamping's lack of utility would re-enforce its opposition. And Plaintiffs do assert that microstamping, even if feasible, would fail even intermediate scrutiny.

> The Krivosta and U.C. Davis studies demonstrate that the shallow microscopic markings micro-laser engraved or etched on to the tip of a firing pin can be easily removed from the firing pin in mere seconds using something as common and simple as an emery board or sandpaper. In other words, those seeking to perform criminal acts with a handgun could easily prevent their handguns from leaving an identifying mark on casings. *See also* Dorothy Kenney, *Firearm Microstamp Technology: Failing Daubert and Federal Rules of Evidence 702*, 38 Rutgers Computer & Tech L.J. 199 (2012).

*Id.* ¶ 29.

> The firing pin is the most commonly damaged, e.g. chipped, and replaced part of a firearm. After-market replacement parts are widely available, including firearm pins. A microstamped firing pin can be removed and replaced, either as a common repair or for the purpose of evading the "technology," very quickly, easily and inexpensively.

*Id.* ¶ 30.

Plaintiffs would add that microstamping would not aid in the investigation of crimes committed with revolvers, which do not eject shell casings, or with rimfire ammunition, which is microstamping-exempted.

The state might discount or dismiss these concerns, but for purposes of this case it does not matter whether the reasons for not manufacturing microstamping handguns are good and sufficient. The firearms industry is naturally incentivized to profitably sell as many handguns as possible, but its views of microstamping are doubtless sincerely held and plainly well-grounded. These views more than adequately explain why microstamping is not a marketplace reality, and will not be any time soon, if ever. Defendant has admitted that he does not know whether microstamping will ever exist in the marketplace. Pl. SJ Exh. O, Admission 4; Pl. SJ Exh. P, Interrogatory 8.

The microstamping requirement imposes a de facto ban on the unrostered firearms to which it applies.

II.     Even if the Microstamping Requirement Does Not Amount to a De Facto Ban of the Unrostered Weapons to Which It Applies, the Extent of the Requirement's Burden on Second Amendment Rights is Severe.

The BATFE has updated the basic firearm manufacturing statistics Plaintiffs relied upon in their moving brief, at pp. 13-14. In 2012, Americans manufactured 3,487,883 semi-automatic pistols, and 667,357 revolvers. See Bureau of Alcohol, Tobacco, Firearms & Explosives, *Annual Firearms Manufacturing and Export Report*, available at https://www.atf.gov/sites/default/files/assets/pdf-files/ afmer_2012_final_web_report_17jan2014.pdf (last visited July 7, 2014). Of the semi-automatic pistols, 675,737 were chambered to .22, meaning the remainder, 2,812,146 of all 4,155,240 handguns manufactured—two-thirds—were centerfire.

None of these handguns could be rostered today in California, owing to the microstamping requirement. Those that are, will continue falling off the roster at a precipitous rate, as manufacturers make continuous improvements that fail the "similar gun" exception and trigger the microstamping requirement, barring their retesting. Older models will also continue to give way to truly newer models that cannot be tested owing to the microstamping requirement.

When Plaintiffs moved for summary judgment, the roster contained 1,273 handguns, including 883 semi-automatics, 802 of which use centerfire ammunition. Stip., Dec. 31, 2013. The roster now holds only 980 handguns, a nearly 25% decline in under a year. Of these, 735 are semi-automatics. Of these semi-automatics, only 675 appear to be centerfire (subtracting those chambered in .22), a decline of nearly 16%.

That number is quickly heading to zero. Already, as two major manufacturers have advised the Court, Californians are being denied the ability to purchase any new centerfire handgun models. Microstamping "is currently preventing scores of

manufacturers, distributors and retailers from selling many semi-automatic pistol models in the State of California that are widely available in more or less every other state of the Union . . . ." Keane Decl., ¶ 31. Microstamping

> also denies to California consumers innovations for durability, safety and reliability of handgun models. They can only purchase those handguns on the Roster. But manufacturing is not a stagnant process for any industry, including firearms manufacturing. Manufacturers must, and will, make normal enhancements and improvements to the design and manufacturing process of their pistols. What will, and already is happening over time is that California residents will not be able to purchase the newest, most durable, reliable and safer handguns on the market that are available to consumers outside of California. This is not a theoretical problem . . . Companies have actually stopped doing business in California because of that requirement, not because they wished to cease operations there.

*Id.*

Indeed, the Supreme Court rejected the idea that the Second Amendment secures only ancient arms, as "[w]e do not interpret constitutional rights that way . . . [T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms . . . ." *District of Columbia* v. *Heller*, 554 U.S. 570, 582 (2008). The Court need not wait until every last centerfire semi-automatic handgun has disappeared from California retailers to find the burden severe. The microstamping requirement's impact barring the latest, most up-to-date models is in and of itself severe.

III.   No Reasonable Fit Exists Between the UHA's Testing Requirements and the Statute's Purposes.

The UHA purportedly advances the following interests: "reducing firearm violence," "consumer safety," and "reduction of crime." Def. SJ Br., at 17. When evaluating whether a "fit" is reasonable, the law can be "not more extensive than is necessary to serve" the government's "substantial interest." *Valle Del Sol Inc.* v.

*Whiting*, 709 F.3d 808, 825 (9th Cir. 2013) (quotation omitted). "In considering the question of fit, we review the legislative history of the enactment as well as studies in the record or cited in pertinent case law," affording the government "a reasonable opportunity to experiment . . . ." *Jackson* v. *City & County of San Francisco*, 746 F.3d 953, 966 (9th Cir. 2014) (quotations omitted). "[W]e require the government goal to be substantial, and the cost to be carefully calculated." *Bd. of Trs.* v. *Fox*, 492 U.S. 469, 480 (1989). The Government bears the burden of proof. *Id*.

    A.    The "Similar Gun" Exception, Cal. Penal Code § 32030.

"[I]t is the California DOJ's position that handguns currently on the Roster will be considered 'new models' if they have the slightest modification (beyond mere cosmetics), no matter how minor." Keane Decl. ¶ 19.

> [F]or example, if a manufacturer of a semiautomatic handgun model that has been on the Roster since 2004 outsources a single, minor component part for the pistol from a different vendor who uses a different manufacturing process, e.g. metal injection molding (MIM) versus forging, to make the part, DOJ considers that handgun to be a "new model." Another example, a manufacturer figures out a metallurgical way to make a component part stronger, more durable and reliable with less metal and consequently the part's dimensions change. DOJ would deem that handgun a "new model." In both examples in order to be eligible for the Roster the semiautomatic pistol would have to be equipped with microstamping, as well as a magazine disconnect mechanism and a chamber load indicator.

*Id*.

> Microstamping thus
>
> creates a dilemma because it is a natural part of the manufacturing process of any product to make minor improvements and enhancements to a product and the manufacturing process to increase efficiencies, reduce cost, and to improve durability, safety and reliability---handguns are no exception---but handguns manufacturers cannot to do so because it is impossible for them to meet the UHA's then applicable microstamping requirements.

*Id*. ¶ 20. While the same dilemma impacts manufacturers who wish to modify an

existing model that was grandfathered before implementation of magazine disconnect devices and chamber loaded indicators if it is unfeasible to add those features to the model, microstamping's burden is impossible.

It is difficult to see how "similar gun" exception's extreme narrowness advances the state's safety goals without substantially infringing the right to access handguns. As the SAAMI/NSSF and manufacturers' declarations and amicus brief show, this exception's narrowness simply narrows consumer choice rather than entices the adoption of the state's desired technology. Moreover, the handguns being effectively banned have already been proven to be "safe" enough for indefinite sale, and presumably pass and will continue to pass any re-testing. And to the extent consumers are able to access handguns, they are accessing handguns that are not as up-to-date as they can be.

If the state's interest is to ensure that handguns maintain their function, it could simply require that updated, "similar" handguns are functionally-equivalent to already tested and approved handguns. See, *e.g.*, 501 Code Mass. Rules §§ 7.02, 7.04(2). Or, the state could allow retesting of an essentially updated model, without requiring any substantially new features. The current practice, however, serves only to arbitrarily and opportunistically prohibit handguns already proven "safe."

B.  Safety Device, Firing, and Drop Safety Requirements, Cal. Penal Code §§ 31910(a)(1), (2), (3) and (b)(1), (2) & (3).

Although Plaintiffs do not challenge the safety device, firing, and drop safety testing requirements as such, these requirements do not reasonably fit the statute's purposes given the manner in which the roster is compiled.

Many handguns that might well pass these requirements cannot be submitted for testing, because Defendant accepts handguns for testing only from a current manufacturer or importer. 11 Cal. Code Regs. § 4059(c). But public safety cannot be advanced by *refusing* to test handguns for compliance with the UHA's requirements. In no way can this prohibition on the consideration of handguns for testing reasonably fit the UHA's purposes.

Handgun roster laws are already exceedingly rare before considering that neither of the other state handgun rostering laws so restricts testing submissions.[5] In Maryland, "any person" may petition the Handgun Roster Board to roster a handgun. Md. Code Ann., Pub. Safety § 5-405(c)(2); Code Md. Regs. §§ 29.03.03.01(B)(10), 29.03.03.11(A). Massachusetts considers firearms for placement on its roster upon receiving reports from approved independent laboratories. 501 Code Mass. Rules § 7.03(1). Thereafter, "a person" may appeal the decision to approve or reject a firearm's rostering. *Id.* § 7.06(1). California should likewise be open to testing any handgun for compliance with the safety device, firing, and drop safety requirements.

It also serves no public safety purpose to remove fully-tested, compliant handguns from the roster merely because a manufacturer, importer, or other "responsible person,"[6] has not paid the annual $200 fee. 11 Cal. Code Regs. § 4071(d). Again, neither Maryland nor Massachusetts appear to require an annual fee to

---

[5]The District of Columbia does not independently create or maintain a handgun roster, other than by referencing those of other states.

[6]"'Responsible party' includes, but is not limited to, firearm manufacturers/importers and law enforcement agencies." 11 Cal. Code Regs. § 4049(s).

maintain handguns on their rosters, let alone from a narrow set of entities which, in some cases, may no longer exist. The District of Columbia, which seeks to mimic California's roster, allows the sale of handguns that were "removed from the California Roster for any reason not related to the pistol's safety." D.C.M.R. § 24-2323.2(b).

The UHA itself acknowledges that non-payment is a dubious ground for exclusion from the roster. Consumers whose handguns are dropped from the roster for non-payment during the purchasing process may complete their purchases, while those whose handguns are dropped for having failed re-testing may not take their handguns home. Cal. Penal Code § 32015(b)(3).

Having tested and certified a handgun as "not unsafe," the state's interest is complete. The government is not ordinarily entitled to infringe a consumer's fundamental constitutional right because it lacks ready access to its preferred funding mechanism. It is manifestly unreasonable to punish consumers by limiting their access to constitutionally-protected arms, on grounds that the arms are "unsafe," when the state knows full and well that those arms are indeed "safe."

These impediments to accessing handguns that have already proven safe are even less reasonable considering that all handguns automatically age-out of the UHA's requirements upon becoming "curios and relics." Cal. Penal Code §§ 32000(b)(3), 32110(g).[7] The UHA thus advantages older, used handguns, which may be less reliable, over newly manufactured handguns, particularly as the "similar gun" exception's inflexibility shrinks the roster. Of course California had to make

---

[7] The UHA adopts the federal definition of curios and relics, which include any firearm that is fifty years old. 27 CFR § 478.11.

some allowance for handguns existing at the time of the roster's adoption that could not be immediately tested, but Maryland demonstrates a more reasonable approach to this issue, exempting from the rostering requirements all handguns manufactured prior to 1985. See Md. Code Ann., Pub. Safety § 5-406(a)(2). Of course, were California more open to allowing people to submit handguns for testing, an exemption for older handguns, such as that sought by Plaintiff Thomas, would be less pressing.

C.   Magazine Disconnect Devices and Chamber Loaded Indicators, Cal. Penal Code §§ 31910(b)(4)-(6).

As Glock advised the Court, "the overwhelming majority of law enforcement agencies require pistols that do not have a magazine disconnect mechanism. In addition to GLOCK pistols, the majority of semiautomatic pistols sold today do not include a magazine disconnect mechanism because of its significant disadvantages." Glock Amicus, at 3. Without a magazine disconnect device, a handgun may still be fired if the magazine is lost or damaged, or if the user is in the process of changing magazines, *id.*—all circumstances that might (and do) occur under duress. It is not at all clear that these devices hurt rather than enhance safety, and tellingly, California law enforcement is exempted from the roster.

Chamber loaded indicators might be misunderstood or malfunction. And reliance on mechanical safety devices such as these may induce irresponsible, unsafe gun handling practices and habits. For these reasons, at least, the state teaches that "[a]ny machine can malfunction. A firearm is no different," SUF 19, and that one must "[t]reat all guns as if they are loaded." SUF 21, 22. It bears repeating that the state's specific instructions for unloading a semi-automatic handgun contained in its

gun safety study guide provides that mechanical safety mechanisms should not be trusted. SUF 23. Plainly, the state cannot meet a burden of proof requiring that magazine disconnect device and chamber loaded indicator mandates "reasonably fit" its safety rationale when the state requires that handgun consumers learn to ignore these features, for fear that they would provide a false sense of security.

## CONCLUSION

The Court should enter summary judgment for Plaintiffs.

Dated: July 7, 2014             Respectfully submitted,

| | |
|---|---|
| Alan Gura, Cal. Bar No.: 178221 | Donald E.J. Kilmer, Jr., Cal. Bar No. 179986 |
| Gura & Possessky, PLLC | Law Offices of Donald Kilmer, A.P.C. |
| 101 N. Columbus St., Suite 405 | 1645 Willow Street, Suite 150 |
| Alexandria, VA 22314 | San Jose, CA 95125 |
| 703.835.9085/Fax 703.997.7665 | 408.264.8489/Fax 408.264.8487 |
| alan@gurapossessky.com | Don @DKLawOffice.com |
| /s/ Alan Gura | /s/ Donald E.J. Kilmer, Jr. |
| Alan Gura | Donald E.J. Kilmer, Jr. |
| | Attorneys for Plaintiffs |

# CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2014, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

Plaintiffs' Supplemental Brief, Declaration of Lawrence Keane, and Supporting Exhibits

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 7th day of July, 2014, at Alexandria, Virginia.

/s/ Alan Gura
Alan Gura
Counsel for Plaintiffs